TROUTMAN SANDERS LLP
Charanjit Brahma, CA Bar No. 204771
charanjit.brahma@troutmansanders.com
Mark C. Mao, CA Bar No. 236165
mark.mao@troutmansanders.com
580 California Street
Suite 1100
San Francisco, CA 94104
Telephone: 415.477.5700
Facsimile: 415.477.5710

TROUTMAN SANDERS LLP
Justin Michael Barnes, CA Bar No. 217517
justin.barnes@troutmansanders.com
11682 El Camino Real
Suite 400
San Diego, CA 92130-2092
Telephone: 858.509.6000
Facsimile: 858.509.6040

Attorneys for Defendant Pacific Surf Designs, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLOWRIDER SURF, LTD., a Canadian corporation; and SURF WAVES, LTD., a company incorporated in the United Kingdom,<br><br>Plaintiffs,<br><br>v.<br><br>PACIFIC SURF DESIGNS, INC., a Delaware corporation,<br><br>Defendant. | Case No. 3:15-cv-01879<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT PACIFIC SURF DESIGN'S MOTION TO COMPEL DISCOVERY** |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

PSD moves to compel the production of information and documents related to Plaintiffs' abandonment and expiration of both asserted patents, as well as Plaintiffs' production of all documents that hit on PSD's ESI searches.

First, PSD served on Plaintiffs Interrogatory No. 1 and Requests for Productions Nos. 1-3 more than seven months ago to determine facts and information related to the expiration of both asserted patents. Such information is directly related to laches, equitable estoppel, and enforceability of the asserted patents, issues raised by PSD at the outset of the case.[1]

The revival issue was the basis of the very first discovery requests from PSD. Yet Plaintiffs have refused to provide *any discovery* related to these topics, ignoring the broad relevance standards set forth by Fed. R. Civ. P. 26. Although these discovery requests plainly relate to counterclaims and defenses PSD has sought leave to add (which motion is pending), they also relate to PSD's originally asserted defenses, overcoming any relevance argument.

Next, PSD seeks to compel Plaintiffs to produce all documents that hit on the parties agreed-upon ESI search terms. Despite the parties initially negotiating and agreeing to five search terms for each custodian, Plaintiffs' initial ESI request contained **23 search terms.** In an effort to avoid Court intervention, the parties agreed to 18 search terms for each custodian. Each search term is narrowly-tailored to specific issues in this case and therefore, any hits are ***presumptively*** relevant and responsive. Rather than produce such hits, however, Plaintiffs unilaterally seek to review further each hit to subjectively determine relevance. This culling of

---

[1] Related to both issues raised in this motion, PSD also seeks to compel Plaintiffs to include search terms Plaintiffs previously agreed to in its ESI searches, including reviv*, abandon*, expire*, "maintenance fee", "late fee", and "patent fee." If the Court compels Plaintiffs to respond to Interrogatories No. 1 and produce documents in response to Request for Production Nos. 1-3, then those terms should also be included in the ESI searches.

documents by Plaintiffs concerns PSD, however, because Plaintiffs' relevance review thus far has limited its document production to **1,537 pages of documents**, despite holding itself out to be "a global leader in waterpark design, attractions, and rides for over thirty years." D70, 2:25-26.

## II. FACTUAL BACKGROUND

Plaintiffs filed this action on August 24, 2015 alleging infringement of U.S. Patent Nos. 6,491,589 (the "'589 patent") and 8,088,016 (the "'016 patent"). D1. Plaintiffs previously sued PSD for infringement of both asserted patents on May 1, 2014, voluntarily dismissing both suits on June 30, 2014. *See Flowrider Surf Ltd. v. Alleshouse et al.*, Case No. 14cv1110 GPC BLM (S.D. Cal. May 1, 2014); *Surf Waves Ltd. v. Pacific Surf Designs, Inc. et al.*, Case No. 14cv1108 BEN JMA (S.D. Cal. May 1, 2014). Moreover, both asserted patents expired for failure to pay maintenance fees – the '589 patent on December 10, 2014, and the '016 patent on January 3, 2016 (during the pendency of this action). D50, 3:8-13. In reviving the asserted patents, Plaintiffs' counsel provided a sworn declaration stating that the entire period of delay in payment of the maintenance fee was "unintentional." *Id.* at 3:10-15.  PSD, however, disputes this characterization.  *See* D57.

On October 19, 2015, PSD served its Answer and Counterclaims, alleging defenses of laches and equitable estoppels among others.  D10-1, 7:4-28; 8:1-5.

### A. PSD's Discovery Relating To Laches And Equitable Estoppel

PSD served its First Set of Interrogatories and Requests for Production on January 25, 2016, portions of which are directed at Plaintiffs' revival of the asserted patents. Ex. A.[2]  Interrogatory No. 1 states:

> State all facts relating to Your payment and/or failure to pay maintenance fees for the Asserted Patents including, without limitation, the dates on which all maintenance fee payments were

---

[2] All referenced exhibits are attached to the accompanying Declaration of Anup M. Shah.

made and the Person(s) involved in making such payments, the cause(s) of the entire delay in paying any maintenance fee, date(s) on which the failure to timely pay any maintenance fee was discovered and the Person(s) who discovered or had knowledge of such failure, the nature of any investigation into the cause of any delay in the payment of a maintenance fee and the Person(s) who conducted such investigation, the basis for any conclusion that the entire delay in paying a maintenance fee was unintentional or unavoidable, and all efforts to revive the Asserted Patents and the Person(s) involved in such efforts.

*Id.* at 4. PSD's relevant Requests for Productions follow:

REQUEST FOR PRODUCTION OF DOCUMENTS NO. 1:

All Documents relating to Your Petition To Revive the '589 Patent Under 37 CFR 1.378 dated February 20, 2015 or Your Renewed Petition To Revive the '589 Patent Under 37 CFR 1.378 dated August 11, 2015 and their preparation and submission, including any investigation into the cause of the entire delay in payment of maintenance fees for the '589 Patent.

REQUEST FOR PRODUCTION OF DOCUMENTS NO. 2:

All Documents relating to Your payment or failure to pay any maintenance fee for any of the Asserted Patents, including documents relating to any delay in payment, regardless of whether such delay was intentional or unintentional.

REQUEST FOR PRODUCTION OF DOCUMENTS NO. 3:

All Documents relating to any inquiry made by You to ascertain whether the delay in paying any maintenance fee(s) was unintentional or intentional.

*Id.* at 11.

On March 9, 2016, Plaintiffs responded by refusing to respond to Interrogatory No. 1 and Request Nos. 1-3, stating that "PSD has not alleged inequitable conduct with respect to the Patents-in-Suit, and therefore, the circumstances regarding the expiration of and/or Plaintiffs' revival of the '589 Patent are not relevant to any claim or defense in this case." Ex. B, at 19, 23-25.

During the meet and confer process, PSD explained that these requests are also relevant to PSD's laches and equitable estoppel defenses. Ex. F. Plaintiffs maintained their refusal to produce any responsive documents.

### B. ESI Discovery Requests

On November 20, 2015, after conducting a Fed. R. Civ. P. 26(f) conference, the parties notified the Court that they agreed to produce ESI in accordance with the District's Model Order Governing Discovery of ESI ("ESI Order"). D19 at 4:16-22. The ESI Order allows the parties to propound five search terms per custodian, up to five custodians. ESI Order, ¶ 11.

On March 28, 2016, Plaintiffs sent to PSD their initial ESI requests, requesting 23 search terms for each identified custodian. Ex. C. PSD objected on this basis, among others. Ex. D. During the meet and confer process, the parties ultimately agreed on 18 search terms per custodian. Ex. E.

Despite propounding many document requests to date, Plaintiffs have produced only 1537 pages of documents. Accordingly, PSD agreed to the expanded search terms to remedy Plaintiffs' dearth of documents resulting from its own searches and relevance review.

### III. ARGUMENT

As set forth below, PSD seeks to compel Plaintiffs to provide responses and documents to Interrogatory No. 1 and Requests for Production Nos. 1-3, and to produce documents in response to PSD's ESI requests without further culling.

### A. Plaintiffs Should Be Compelled To Provide Responses To The Revival Discovery

First, Plaintiffs should be compelled to provide a response to Interrogatory No. 1 and Requests for Production Nos. 1-3. Although those requests plainly relate to PSD's inequitable conduct and revival counterclaims and defenses that the Court has not yet allowed into the case, *they also relate to PSD's defenses of laches and equitable estoppel that are currently part of the case*.

PSD raised the defenses of laches and equitable estoppel in its original Answer and Counterclaims on October 19, 2015. D10-1, 7:4-28; 8:1-5.

Equitable estoppel requires PSD to demonstrate that Plaintiffs, through misleading conduct, led PSD "to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer." *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992). Such conduct can "include specific statements, action, inaction, or silence where there was an obligation to speak". *Id*. For the laches defense, PSD "must prove that plaintiff unreasonably delayed in filing suit from the time plaintiff knew or should have known of the infringement and that there was resulting prejudice to the defendant." *Lucent Techs. Inc. v. Gateway, Inc.*, 470 F. Supp. 2d 1187, 1190 (S.D. Cal. 2007) (citing *Halstead v. Grinnan*, 152 U.S. 412, 417 (1894) and *Aukerman*, 960 F.2d at 1032). It is precisely this prejudice that detrimentally affects "the defendant's ability to put on a full and fair defense." *Lucent Techs. Inc. v. Gateway, Inc.*, 470 F. Supp. 2d 1187, 1190 (S.D. Cal. 2007).

The requests at-issue are directly relevant to both of these defenses. For example, the very fact that litigation had previously ended between the parties for the same patents and then shortly thereafter, Plaintiffs intentionally (as PSD suspects) permitted them to expire reasonably supports PSD's defense that "patentee does not intend to enforce its patent against the alleged infringer." *A.C. Aukerman*, 960 F.2d at 1028. Moreover, information responsive to the revival

requests could well serve to show that the delay caused by Plaintiffs was "unreasonable and inexcusable." *Id.* at 1028. Further, whether or not Plaintiffs intentionally allowed the asserted patents to expire is relevant to the "misleading conduct" showing of PSD's defense.

Plaintiffs' response has been to argue that the requests are not relevant *in view of PSD's inequitable conduct counterclaims*. Ex. B, at 19, 23-25. But Plaintiffs have not and cannot dispute that the requests are relevant to PSD's current defenses as set forth above. In addition, Plaintiffs have argued that *all relevant documents and information* would be privileged. By refusing to disclose on the basis of relevance, however, Plaintiffs are not obligated to disclose any alleged bases of privilege on a privilege log, thereby foreclosing PSD's ability to challenge the accuracy of such positions. Moreover, Plaintiffs cannot rely on such information to unilaterally claim that the asserted patents are valid and enforceable, while claiming that the underlying facts cannot be disclosed. Simply put, facts are not privileged and Plaintiffs use of privilege as both "a sword and a shield" is misplaced. *In re Seagate Technology*, LLC, 497 F. 3d 1360, 1371 (Fed. Cir. 2007). Accordingly, Plaintiffs should not be allowed to continue to forestall discovery that is now long overdue.

### B. Plaintiffs Should Be Compelled To Produce ESI Hits Without Further Relevance Review

Despite holding itself out as "a global leader in waterpark design, attractions, and rides for over thirty years," Plaintiffs have thus far produced only 1537 pages of documents in response to PSD's 39 requests for production. As a result, PSD agreed to increase the previously-agreed upon number of search terms from five to eighteen so that it could obtain pertinent documents it needs to defend itself. *See* Ex. E.

As the parties were agreeing upon *relevant* search terms, however, Plaintiffs thereafter stated that they would perform an additional culling based on

"relevance." This additional, subjective review is not contemplated by the ESI Order, however, and further delays hinders PSD's discovery efforts.[3]

Plaintiffs' self-imposed guidelines stray beyond, and frustrate, the governing ESI Order. The ESI Order contemplates that "[t]he parties will cooperate to identify the proper custodians, proper search terms and proper time frame." ESI Order, ¶ 10. Additionally, the ESI Order states that "[e]mail production requests will only be propounded for specific issues, rather than general discovery of a product or business." *Id.* at ¶ 8. Plaintiffs therefore waived any arguments that the agreed-upon search terms were too broad when they agreed to the search terms. Simply because a particular term yields many hits does not mean it then becomes broad.[4] This additional level of review that Plaintiffs are self-imposing is unnecessary and outside the terms of the ESI Order.

In resisting production of all documents, Plaintiffs' position is perplexing. First, Plaintiffs do not say that they do not have or cannot locate responsive documents since they admit the documents indeed exist. Second, Plaintiffs state that PSD's request is too burdensome or too broad. However, this position is nonsensical as the burden only falls on Plaintiffs because they are self-imposing a review of each document before any are produced. Instead, if the responsive documents were produced, all costs and burden would fall squarely on PSD as the reviewer. Rather than offer a legitimate basis for opposing this discovery, it appears Plaintiffs do not want PSD to see these electronic files—files which would supplement Plaintiffs' scarce production to-date.

Plaintiffs generally describe PSD as a "direct competitor" but have failed to provide even a single document corroborating that they have competed in even a single bid, let alone the "at least separate projects" to which they point. Without

---

[3] To the extent Plaintiffs are concerned about producing privileged documents, PSD does not object to Plaintiffs applying a privilege screen. Indeed, PSD told Plaintiffs that it will do the same for its own ESI production.
[4] Indeed, PSD has agreed to produce results for overbroad terms such as "refurbish" as well as product names such as "Makaha" and "ProFlow".

producing documents responsive to PSD's production requests, basic information remains lacking such as cost to manufacture, shipping costs, customers, and even information to show that the parties are in fact competitors. If Plaintiffs are left to self-impose a subjective "relevance" review, presumably relevant and responsive documents may be withheld as it appears they have been withheld in response to PSD's 39 document requests. Stated differently, the dearth of any production so far gives PSD a justifiable concern that in doing a "relevance" culling on ESI materials, PSD will not receive the full scope of materials anticipated by Rule 26 and this Court's ESI protocol.

## IV. CONCLUSION

Due to the factually intensive nature of the parties' claims, it is essential that PSD obtain answers to the Interrogatories, Requests for Production, and its ESI requests in order to establish the fundamental elements of the case, formulate its defense, and narrow issues for trial. Consequently, PSD's motion to compel should be granted. For the foregoing reasons, PSD respectfully requests that the Court grant its Motion to Compel Discovery.

Dated: September 9, 2016

RESPECTFULLY SUBMITTED,

TROUTMAN SANDERS LLP

By: */s/ Anup M. Shah*
Anup M. Shah
Attorneys for Defendant

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on September 9, 2016, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any counsel of record who have not consented to electronic service through the Court's CM/ECF system will be served by electronic mail, first class mail, facsimile and/or overnight delivery.

>    */s/ Anup M. Shah*
>    Anup M. Shah