**GREENBERG TRAURIG, LLP**
J. Rick Taché (CA Bar No. 195100)
    (tacher@gtlaw.com)
Shaun A. Hoting (CA Bar No. 260656)
    (hotings@gtlaw.com)
Erikson C. Squier (CA Bar No. 275274)
    (squiere@gtlaw.com)
Leanna C. Costantini (CA Bar No. 294028)
    (costantinil@gtlaw.com)
3161 Michelson Drive, Suite 1000
Irvine, CA 92612
Telephone:   (949) 732-6500
Facsimile:    (949) 732-6501

Attorneys for Plaintiffs:
FlowRider Surf, Ltd. and
Surf Waves Ltd.

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLOWRIDER SURF, LTD., a Canadian corporation, and SURF WAVES, LTD., a company incorporated in the United Kingdom; <br><br> Plaintiffs, <br><br> vs. <br><br> PACIFIC SURF DESIGNS, INC., a Delaware corporation; <br><br> Defendant. | CASE NO. 3:15-CV-01879-BEN-BLM <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL DEFENDANT'S DISCOVERY RESPONSES** <br><br> The Honorable Barbara L. Major |

Plaintiffs FlowRider Surf, Ltd., and Surf Waves, Ltd., hereby move this Court to compel Defendant Pacific Surf Designs, Inc., to respond to Interrogatory Nos. 2, 3, and 9, and Requests for Production Nos. 21, 41, and 44-45.  The Motion  is based upon this Notice, the attached Memorandum of Points and Authorities, the Declarations of Shaun A. Hoting and Leanna C. Costantini and the Exhibits referenced therein.

DATED:  September 9, 2016                **GREENBERG TRAURIG, LLP**

                                          By  _/s/ Leanna C. Costantini_
*Attorneys for Plaintiffs*                J. Rick Taché (CA Bar No. 195100)
                                          Shaun A. Hoting (CA Bar No. 260656)
                                          Erikson C. Squier (CA Bar No. 275274)
                                          Leanna C. Costantini (CA Bar No. 294028)

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   FACTS ...................................................................................................2

      A.    PSD's Responses to Whitewater's Discovery Requests ...............2
      B.    Whitewater's Meet and Confer Efforts .......................................4

III.  ARGUMENT .........................................................................................6

      A.    PSD should be Compelled to Produce Information Relating to PSD's
            Foreign Sales (RFP Nos. 44-45; Interrogatories 2-3) .................7
      B.    PSD should be Compelled to Produce Information Relating to PSD's
            Refurbishment of Surf Rides (RFP Nos. 21, 44-45; Interrogatories 2-
            3)...............................................................................................9

            1.    PSD is potentially liable for direct or contributory infringement
                  based on Flow Services' refurbishments ...........................10
            2.    *Aro Manufacturing* supports discovery of information regarding
                  PSD's refurbishment of surf rides ....................................11

      C.    PSD should be Compelled to Produce Information Relating to PSD's
            Patent Applications (RFP No. 41; Interrogatory No. 9) ...............14

IV.   CONCLUSION......................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*3Com Corp. v. D-Link Sys., Inc.*,
No. C 03-2177 VRW, 2007 WL 949596 (N.D. Cal. Mar. 27, 2007) ...........................9

*3D Sys., Inc. v. Aarotech Labs., Inc.*,
160 F.3d 1373 (Fed. Cir. 1998) .......................................................................................8

*A. Stucki Co. v. Worthington Indus., Inc.*,
849 F.2d 593 (Fed. Cir. 1988) .......................................................................................11

*Apple Inc. v. Int'l Trade Comm'n*,
725 F.3d 1356 (Fed. Cir. 2013) .......................................................................................9

*Aro Manufacturing Co. v. Convertible Top Replacement Co.*,
365 U.S. 336 (1961)..........................................................................................5, 11, 12

*Aro Mfg. Co. v. Convertible Top Replacement Co. (Aro Mfg. II)*,
377 U.S. 476 (1964)......................................................................................................13

*Audatex N. Am. Inc. v. Mitchell Int'l, Inc.*,
No. 13cv1523-BEN (BLM), 2014 WL 4961437 (S.D. Cal. Oct. 3, 2014) ................17

*Blankenship v. Hearst Corp.*,
519 F.2d 418 (9th Cir. 1975) ...........................................................................................7

*Caliper Technologies Corp. v. Molecular Devices Corp.*,
213 F.R.D. 555 (N.D. Cal. 2003)............................................................................15, 16

*Canon, Inc. v. GCC Int'l Ltd.*,
263 F. App'x 57 (Fed. Cir. 2008) ..................................................................................12

*Carnegie Mellon Univ. v. Marvell Tch. Grp.*,
Ltd., 807 F.3d 1283 (Fed. Cir. 2015)...............................................................................9

*CLS Bank Int'l v. Alice Corp. Pty.*,
667 F. Supp. 2d 29 (D.D.C. 2009) ...................................................................................7

*Deepsouth Packing Co. v. Laitram Corp.*,
406 U.S. 518 (1972)..........................................................................................................8

*Duran v. Cisco Systems, Inc.*,
258 F.R.D. 375 (C.D. Cal. 2009) .....................................................................................7

*FMC Corp. v. Up-Right, Inc.*,
No. C 92-321 SC, 1993 U.S. Dist. LEXIS 17182 (N.D. Cal. Jan. 8, 1993)................13

*Fortinet, Inc. v. Palo Alto Networks, Inc.*,
   No. C-09-00036 RMW, 2010 WL 4608250 (N.D. Cal. Nov. 5, 2010)........................10

*Frank Music Corp. v. MGM, Inc.*,
   886 F.2d 1545 (9th Cir. 1989) ...........................................................................11

*Fuji Photo Film Co. v. ITC*,
   474 F.3d 1281 (Fed. Cir. 2007) .........................................................................13

*Husky Injection Molding Sys. v. Electra Form Inc.*,
   No. C-3-98-237, 2000 U.S. Dist. LEXIS 22015 (S.D. Ohio Feb. 9, 2000)................12

*Imagexpo, L.L.C. v. Microsoft Corp.*,
   299 F. Supp. 2d 550 (E.D. Va. 2003) ...................................................................8

*Jorst v. D'Ambrosio Bros. Inv. Co.*,
   No. C 00-03646 CRB, 2001 WL 969039 (N.D. Cal. Aug. 13, 2001) .........................13

*Leasure v. Willmark Communities, Inc.*,
   No. 11-cv-0443-L (DHB), 2012 WL 4361555 (S.D. Cal. Sept. 21, 2012) .................16

*Microsoft Corp. v. AT & T Corp.*,
   550 U.S. 437 (2007)...........................................................................................8

*Morvil Tech., LLC v. Ablation Frontiers, Inc.*,
   No. 10-CV-2088-BEN (BGS), 2012 WL 1965385 (S.D. Cal. May 31, 2012) ...........................................................................................................15

*Murata Mfg. Co. v. Bel Fuse, Inc.*,
   422 F. Supp. 2d 934 (N.D. Ill. 2006).....................................................................9

*National Union Fire Ins. Co. v. Continental Ill. Corp.*,
   116 F.R.D. 78 (N.D. Ill. 1987).............................................................................16

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978)............................................................................................6

*Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*,
   254 F.R.D. 568 (N.D. Cal. 2008)................................................................6, 8, 10

*Richmark Corp. v. Timber Falling Consultants*,
   959 F.2d 1468 (9th Cir. 1992) ...........................................................................15

*United States v. Boyce*,
   148 F. Supp. 2d 1069 (S.D. Cal. 2001) ...............................................................17

*Wesley Jessen Corp. v. Bausch & Lomb, Inc.*,
   256 F. Supp. 2d 228 (D. Del. 2003)......................................................................8

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
   876 F. Supp. 2d 857 (S.D. Tex. 2012)...................................................................8

iii

*Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*,
    No. 10-0541-LAB(WVG), 2011 WL 5525990 (S.D. Cal. Nov. 14, 2011)............15, 16

**Federal Statutes**

35 U.S.C. § 271(a) ...........................................................................................7, 8

35 U.S.C. § 271(f) .................................................................................................8

**Rules**

Fed. R. Civ. P. 26(b)(1)........................................................................................6

Fed. R. Civ. P. 33(a)(2).......................................................................................17

Patent L.R. 3.6(2) ...............................................................................................10

# I.    <u>INTRODUCTION</u>

The discovery requests that are the subject of this Motion to Compel are basic requests for information regarding sales of the Accused Products by Defendant Pacific Surf Design, Inc. ("PSD") and its patents related to the Accused Products.  Consistent with its strategy to delay this case, however, PSD has adopted a warped view of relevance and refused to disclose documents that Plaintiffs are entitled to in order to prosecute their infringement case.  Plaintiffs FlowRider Surf, Ltd. and Surf Waves Ltd. (collectively, "Whitewater") have gone out of their way over the last seven months to work with PSD to avoid unnecessary court intervention, including by providing extensive supporting case law.  Unfortunately, PSD continues to refuse to disclose highly relevant, non-privileged information regarding its potential infringement, thereby necessitating the instant Motion.

First, PSD has unilaterally decided that its refurbishment of surf rides and its foreign sales of the Accused Products do not infringe the Asserted Patents, and therefore are irrelevant and not subject to disclosure.  PSD has touted in various court filings that it has made only one sale of the Accused Products—while at the same time withholding potential evidence to rebut that assertion.  PSD's strained view of relevance is not supported by the law.  Contrary to PSD's contention, PSD's refurbishments and foreign sales can infringe the Asserted Patents (directly or indirectly), and it is for the Court – not PSD – to make that determination.  Moreover, regardless of whether these sales are ultimately deemed to infringe, PSD's foreign sales and refurbishments are relevant to determining a reasonable royalty and rebutting a prima facie showing of obviousness.

In addition to basic sales information, PSD has refused to disclose any of its pending patent applications – which undisputedly relate to the accused products – claiming that they are irrelevant and confidential.  Again, PSD's relevance objection lacks merit, as courts in this and other districts agree that a defendant's patent applications are directly relevant to issues of willful infringement, prior art, equivalency, and claim construction.  Further, PSD's confidentiality concerns are adequately protected

1

by the protective order entered in this case, and, in any event, were waived because they were not raised in PSD's responses.

PSD's foreign sales, refurbishments, and pending patent applications are highly relevant to this case, and PSD cannot satisfy its burden to demonstrate that their disclosure is not warranted.  Accordingly, Whitewater respectfully requests that the Court compel PSD to provide documents and information responsive to Requests for Production Nos. 21, 41, 44-45, and full and complete responses to Interrogatories 2-3, and 9.

## II.   FACTS

### A.     PSD's Responses to Whitewater's Discovery Requests

Whitewater propounded its first set of requests for production ("RFPs") and its first set of interrogatories ("Interrogatories") on December 21, 2015.  (Decl. of Shaun Hoting ("Hoting Decl.") ¶ 2, Exs. A-B.)  Whitewater's requests sought information related to PSD's infringing conduct identified in the Complaint, as well as PSD's defenses asserted in PSD's Answer.  (*See id.*)

After Whitewater granted PSD's request for a two-week extension to respond, PSD served severely deficient responses and objections to the discovery requests on February 8, 2016.[1]  (*Id.* ¶ 3, Exs. C-D.)  PSD's responses consisted largely of boilerplate objections, including regarding key terms that Whitewater had defined in its requests. For example, Whitewater defined the terms "PSD," "Defendant," "You," and "Your" to include "any officers, directors, partners, associates, (current and former) employees, staff members, agents, representatives, attorneys (including its counsel of record in this litigation), subsidiaries (foreign or domestic), parents, affiliates, divisions, successors, predecessors, and any other related entities of Pacific Surf Designs, Inc."  (*Id.*, Ex. A at 2:10-15, Ex. B at 2:10-15.)  PSD objected to this definition as overly broad, vague, and

---

[1] Although PSD's initial responses were deficient in several respects, the deficiencies described herein relate only to those requests that the parties were unable to resolve through meeting and conferring.

1  ambiguous, and redefined the terms to mean only "Defendant Pacific Surf Designs,

2  Inc."—though PSD failed to state in its response whether it is withholding responsive

3  documents or information based on its revised definition.  (*Id.*, Ex. C at 3:14-21, Ex. D at

4  3:14-21.)

5      PSD also objected to Plaintiffs' definition of "Accused Products" as overly broad,

6  vague, and ambiguous to the extent the term includes "Defendant's refurbishment of any

7  surfing rides, and any other waterslide or surfing products that Defendant manufactures,

8  uses, sells, offers for sale, and/or imports that incorporate nozzle covers and/or curved

9  sidewalls."  (*Id.*, Ex. C at 3:22-27, Ex. D at 22-27.)  Again, PSD failed to state in its

10 response whether it was withholding responsive documents or information based on its

11 objection to this term.  (*Id.*)

12     Apart from its boilerplate objections, PSD's responses were severely lacking in

13 substance.  PSD's document production was less than 500 documents, which entailed

14 hundreds of pages of PSD's advertising images and pictures of waterpark magazine

15 articles.  (Decl. of Leanna Costantini ("Costantini Decl.") ¶¶ 2-3.)  In its document

16 production and interrogatory responses, PSD produced information relating to only two

17 of its sales in the United States.  PSD provided no information regarding any foreign

18 sales or offers for sale of the Accused Products.  (*Id.* ¶ 3; Hoting Decl., Ex. D at 8-11

19 [Responses to Interrogatories 2-3].)  PSD also provided no information related to any of

20 its surf ride refurbishments done in connection with Flow Services—a company formed

21 and apparently controlled by PSD's CEO Yong Yeh.  (Costantini Decl. ¶ 3; Hoting Decl.,

22 Ex. D at 8-11 [Responses to Interrogatories 2-3].)  Finally, PSD did not produce any of

23 its patent applications, and it provided no response to Whitewater's interrogatory

24 requesting PSD to identify any pending patent applications that it contends cover the

25 Accused Products.[2]  (Costantini Decl. ¶ 3; Hoting Decl., Ex. D at 18-19 [Response to

26 Interrogatory 9].)

27 _____

28 [2] PSD supplemented its responses to the interrogatories regarding PSD's sales and its
   patent applications; however, those responses still failed to provide any information

3

### B.     Whitewater's Meet and Confer Efforts

Whitewater initiated its meet and confer efforts regarding PSD's discovery responses in a letter dated February 19, 2016.  (Hoting Decl. ¶ 5, Ex. H.)  In its letter, Whitewater explained, with legal support, that PSD's boilerplate objections were without merit and the documents that PSD expressly refused to produce were, in fact, relevant and discoverable.  (*Id.*)  Whitewater also requested that PSD identify whether it was withholding other responsive documents based on its objections to Whitewater's defined terms.  (*Id.*)  In a subsequent letter dated February 26, 2016, Whitewater identified, request by request, the specific deficiencies in PSD's interrogatory responses, and explained, with legal support, that the information sought was relevant and discoverable. (Hoting Decl. ¶ 5, Ex. I.)  Further, Whitewater offered to narrow the scope of the interrogatories for which PSD stated it would meet and confer.  (*Id.*)

PSD responded to Plaintiffs' initial meet and confer letter on March 1, 2016.  In its letter, counsel for PSD balked at Whitewater's attempt to engage in a thorough dialogue regarding PSD's discovery responses.  (Hoting Decl. ¶ 6, Ex. J.)  Instead, PSD simply claimed that it had not withheld any "relevant" documents, wholly evading the question of whether it had withheld *responsive* documents.  (*Id.*)  In the weeks that followed, Whitewater engaged in several calls and letter correspondence with PSD's counsel in attempt to get clarity about whether and what responsive documents PSD was withholding.  (*Id.* ¶ 7; *see id.*, Ex. O.)  With respect to the requests that PSD expressly stated it would not produce, Whitewater continued to attempt to resolve the disputes without court intervention by providing further case law and analysis that Whitewater is entitled to such information.  (*Id.* ¶ 7.)  However, further delaying resolution of PSD's

regarding sales other than the two sales disclosed in its initial document production. (Hoting Decl. ¶ 4, Ex. F at 14:17-27, 17:1-5, Ex. G at 14:20-15:2, 18:8-17.)  In addition, PSD's supplemental interrogatory responses failed to provide any information about its patent applications.  (*Id.*, Ex. F at 26:15-19.)

4

discovery responses, PSD did not provide a definite answer regarding the documents it was withholding until May 4, 2016, in an email from PSD's counsel.  (*Id.*, Ex. K.)

Having thoroughly conferred on all of the disputed documents and interrogatory responses, Whitewater first contacted the Court's chambers to schedule its motion to compel upon receipt of PSD's May 4 email.  (*Id.* ¶ 8.)  On May 19, 2016, the parties conducted a teleconference with chambers regarding PSD's discovery responses.  During the call, PSD changed its position regarding why it believed it was not required to produce information relating to Flow Services.  (*Id.*)  PSD had previously claimed that information relating to its refurbishment work in connection with Flow Services was irrelevant because Whitewater had not alleged contributory infringement in its infringement contentions (disregarding the fact that Whitewater had done so in its Complaint).  (*See id.*, Ex. J.)  During the call, however, PSD claimed that it was not required to produce *any* information regarding its refurbishments of surf rides—not just those done in connection with Flow Services—because it claimed that a U.S. Supreme Court case, *Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 365 U.S. 336 (1961), precluded all claims of infringement based on refurbishment.  (Hoting Decl. ¶ 8.)

In addition, in the correspondence leading up to the call with chambers, PSD had maintained that it was not required to produce responsive information regarding its relationship with ProSlide, one of Whitewater's competitors in the sheet wave water ride industry.  (*Id.* ¶ 9.)  PSD claimed that Whitewater was not entitled to documents related to Proslide because Proslide is "not a party to the case or the basis for any allegation of infringement contained in Whitewater's infringement contentions."  (*Id.*, Ex. L; *see also id.*, Ex. D at 19:14-26 [Response to Interrogatory 10].)  During the call with the Court's chambers, however, counsel for PSD falsely claimed that it had already produced the responsive information regarding ProSlide.[3]

---

[3] PSD did not produce information responsive to Whitewater's requests regarding ProSlide until the day after the call with chambers, only after Whitewater asked PSD to

1    Finally, PSD claimed that it would also have issues to raise in a motion to compel

2    regarding Whitewater's discovery responses. (*Id.* ¶ 10.) Because of PSD's changed

3    positions and its purported issues with Whitewater's discovery responses, chambers

4    instructed the parties to meet and confer further and to wait to bring a motion to compel

5    until all of PSD's issues were ripe for review as well. (*Id.*)

6    Although Whitewater immediately conferred with PSD regarding the new issues

7    raised during the call with chambers (*see* Hoting Decl., Ex. M), PSD delayed its meet and

8    confer efforts regarding Whitewater's responses. From the beginning, Whitewater was

9    upfront about the documents and information it would not agree to produce, as well as its

10   reasons for withholding such information. (*Id.* ¶ 11.) For all requests that PSD asked

11   Whitewater for additional documents or information, Whitewater complied, with the

12   exception of one category of information.[4] (*Id.*) Unfortunately, PSD made no attempt to

13   confer regarding several of its requests until as recently as June 24, 2016, nearly three

14   months after Whitewater served its initial responses on April 6, 2016. (*Id.*)

15   After PSD had finally exhausted all of its discovery demands, Whitewater initiated

16   another call with chambers on August 10, 2016, scheduling the instant Motion to

17   Compel. (*Id.* ¶ 12.)

18   **III.   ARGUMENT**

19   Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery

20   regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.

21   R. Civ. P. 26(b)(1). The definition of relevancy, for purpose of discovery, "has been

22   construed broadly to encompass any matter that bears on, or that reasonably could lead to

23   other matter that could bear on, any issue that is or may be in the case." *Oppenheimer*

24   _____

25   provide the Bates number for the document that it represented to chambers that it
     produced. (Hoting Decl. ¶ 9, Exs. M-N.)

26   [4] Specifically, Whitewater has not complied with PSD's demands for privileged and
     irrelevant discovery regarding Whitewater's maintenance fee payments, which will be

27   discussed in detail in Whitewater's opposition to PSD's motion to compel that is

28   scheduled to be filed at the same time as this Motion.

1  *Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Phoenix Solutions Inc. v. Wells*

2  *Fargo Bank, N.A.*, 254 F.R.D. 568, 575 (N.D. Cal. 2008) ("The scope of discovery

3  permissible under Rule 26 should be liberally construed; the rule contemplates discovery

4  into any matter that bears on or that reasonably could lead to other matter that could bear

5  on any issue that is or may be raised in a case.").  Consistent with the goal of broad

6  discovery, "[t]he party who resists discovery has the burden to show discovery should not

7  be allowed, and has the burden of clarifying, explaining, and supporting its objections."

8  *Duran v. Cisco Systems, Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009) (citing *Blankenship*

9  *v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

10      As set forth below, information regarding PSD's foreign sales, refurbishment of

11  surf rides, and pending patent applications are highly relevant to the claims and defenses

12  in this case, and PSD cannot satisfy its burden to demonstrate that this discovery should

13  not be allowed.  As such, PSD should be compelled to provide full responses to Request

14  for Production Nos. 21, 41, 44-45, and Interrogatories 2-3, 9.

15      **A.**    **PSD should be Compelled to Produce Information Relating to PSD's**

16          **Foreign Sales (RFP Nos. 44-45; Interrogatories 2-3)**

17      Requests for Production Nos. 44-45 and Interrogatories 2-3 all request detailed

18  sales information regarding the Accused Products, including documents and information

19  relating to PSD's foreign sales activities.  (*See* Hoting Decl., Ex. A at 13-14, Ex. B. at 7-

20  8.)  To date, PSD has disclosed information for only two of its U.S. sales.  (Costantini

21  Decl. ¶ 3.)  PSD claims that none of its foreign sales of the accused products constitute

22  infringement, and therefore, it is not required to disclose such information.  (*See* Hoting

23  Decl. ¶13, Ex. O at 1.)

24      PSD's relevance objection lacks merit.  First, contrary to PSD's contention,

25  information regarding PSD's foreign sales could lead to evidence regarding PSD's

26  infringement.  Under 35 U.S.C. § 271(a), offers made within the United States to sell an

27  infringing product to an overseas buyer constitutes direct infringement.  *See, e.g.*, *CLS*

28  *Bank Int'l v. Alice Corp. Pty.*, 667 F. Supp. 2d 29, 37 (D.D.C. 2009) (denying summary

7

1  judgment of no infringement where the activity pertaining to the offer and sale took place

2  in the United States, notwithstanding that all of the steps of a accused method were

3  performed abroad); *Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 256 F. Supp. 2d 228,

4  235 (D. Del. 2003) (finding that defendant would be in violation of injunction prohibiting

5  further infringement if defendant made offer within the United States to sell infringing

6  products to overseas buyers).  *See also 3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d

7  1373, 1379 (Fed. Cir. 1998) (stating that the "offers to sell" language in Section 271(a) is

8  "hollow" if potential infringers could escape liability for the type of contact defendant

9  engaged in, *i.e.,* sending promotional letters, order solicitations, and price quotations to

10  potential purchasers of a patented invention).

11  　　　Further, 35 U.SC. § 271(f) imposes liability for supplying from the United States a

12  patented invention's components, even if the patented product is made and sold in

13  another country.  *See Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 439-40 (2007)

14  ("Section 271(f) was a direct response to a gap in U.S. patent law revealed by *Deepsouth*

15  *Packing Co. v. Laitram Corp.,* 406 U.S. 518 [(1972)], where the items exported were kits

16  containing all the physical, readily assemblable parts of a machine (not an intangible set

17  of instructions), and those parts themselves (not foreign-made copies of them) would be

18  combined abroad by foreign buyers.").  *See, e.g., WesternGeco L.L.C. v. ION*

19  *Geophysical Corp.*, 876 F. Supp. 2d 857, 899-900 (S.D. Tex. 2012) (denying summary

20  judgment of non-infringement where accused infringer supplied components of patent

21  that were combined abroad by foreign buyers); *Imagexpo, L.L.C. v. Microsoft Corp.*, 299

22  F. Supp. 2d 550, 553 (E.D. Va. 2003) (denying motion *in limine* to bar plaintiff from

23  seeking damages for products made outside the United States where defendant supplied

24  the components).

25  　　　Regardless of whether PSD's foreign sales are ultimately deemed to infringe the

26  Asserted Patents, PSD may not unilaterally make such a determination for the purposes

27  of complying with its discovery obligations.  Relevance for discovery includes "any

28  matter that bears on or that *reasonably could lead to* other matter that could bear on any

8

issue that is *or may be raised in a case*." *Phoenix Solutions Inc.*, 254 F.R.D. at 575 (emphasis added).  Whitewater is entitled to review the documents to make its own determination about whether to pursue claims of infringement based on PSD's foreign sales.  If PSD wishes to argue that its actions do not amount to infringement, it may do so at trial.

Moreover, apart from PSD's infringement, PSD's foreign sales information is relevant to "determining a reasonable royalty and rebutting a prima facie showing of obviousness." *3Com Corp. v. D-Link Sys., Inc.*, No. C 03-2177 VRW, 2007 WL 949596, at *4 (N.D. Cal. Mar. 27, 2007); *Murata Mfg. Co. v. Bel Fuse, Inc.*, 422 F. Supp. 2d 934, 945 (N.D. Ill. 2006) (compelling production of foreign sales information in patent infringement suit).  Indeed, the Federal Circuit has recognized that foreign sales are relevant to measuring damages.  *See Carnegie Mellon Univ. v. Marvell Tch. Grp.*, Ltd., 807 F.3d 1283, 1306 (Fed. Cir. 2015) ("[O]nce one extends the extraterritoriality principle to confining how *damages* are calculated, it makes no sense to insist that the action respecting the product being used for measurement itself be an *infringing* action.").  Further, PSD has placed its foreign sales directly at issue by asserting an invalidity defense of obviousness (*see* ECF No. 13 at 6), as objective evidence of secondary considerations of non-obviousness, such as the commercial success of the patented products, are "essential components" of the obviousness inquiry.  *Apple Inc. v. Int'l Trade Comm'n*, 725 F.3d 1356, 1375 (Fed. Cir. 2013).  Whitewater is entitled to documents that PSD has that may bear upon this inquiry.

Accordingly, PSD should be compelled to produce documents responsive to Whitewater's Requests for Production Nos. 44-45 and Interrogatories 2-3, including detailed information regarding its foreign sales and offers for sale.

### B.   PSD should be Compelled to Produce Information Relating to PSD's Refurbishment of Surf Rides (RFP Nos. 21, 44-45; Interrogatories 2-3)

Requests for Production Nos. 44-45 and Interrogatories 2-3 request detailed sales information regarding the Accused Products.  (*See* Hoting Decl., Ex. A at 13-14, Ex. B.

9

at 7-8.)  Whitewater's requests defined "Accused Products" to include "Defendant's refurbishment of any surfing rides, and any other waterslide or surfing products that Defendant manufactures, uses, sells, offers for sale, and/or imports that incorporate nozzle covers and/or curved sidewalls."  (*Id.* at 2:19-26.)  This definition is consistent with Whitewater's allegation in the Complaint and its infringement contentions that Whitewater's refurbishment of surf rides infringes U.S. Patent No. 6,491,589 (the "'589 Patent").  (*See* ECF No. 1 ¶ 15, 20; ECF No. 70-4, Ex. A at 3:12-14.)

In addition to requests regarding PSD's sales, information regarding PSD's refurbishment of surf rides is responsive to RFP No. 21, which seeks documents related to PSD's relationship with Flow Services, the company through which PSD refurbishes surf rides.  (*See* Hoting Decl., Ex. A at 9.)

## 1. PSD is potentially liable for direct or contributory infringement based on Flow Services' refurbishments

PSD initially refused to produce information relating to Flow Services on the grounds that Whitewater did not allege contributory or induced infringement in its Infringement Contentions.  (Hoting Decl. ¶ 8; *see id.*, Ex. J.)  This argument, however, fails on multiple grounds.

First, the bounds of discovery are not circumscribed by Whitewater's infringement contentions.  *Phoenix Solutions Inc.*, 254 F.R.D. at 575 (Relevance for discovery includes "any matter that bears on or that reasonably could lead to other matter that could bear on any issue that is or may be raised in a case.").  Whitewater alleged in the Complaint that PSD's infringing conducted included not only direct infringement, but also that PSD was "inducing others to do the same" and "contributing to the manufacture, import, use, sale, or offer for sale of products that infringe one or more claims of the Patents-in-Suit." (ECF No. 1 at ¶ 21.)  Indeed, discovery of new information regarding PSD's potential contributory or induced infringement is precisely the grounds that would provide cause for Whitewater to amend its infringement contentions.  *See* Patent L.R. 3.6(2); *see, e.g.*, *Fortinet, Inc. v. Palo Alto Networks, Inc.*, No. C-09-00036 RMW, 2010 WL 4608250, at

10

1   *1 (N.D. Cal. Nov. 5, 2010) (allowing plaintiff to amend its infringement contentions

2   after newly discovery evidence of infringement).

3        Moreover, PSD is likely to be deemed directly liable for Flow Services'

4   infringement, and thus a claim for contributory or induced infringement based on Flow

5   Services' direct infringement is not necessary in this case.  Based on information

6   produced in discovery, PSD and Flow Services appear to be in all material respects the

7   same entity.  For example, both companies were both founded by PSD's CEO Yong Yeh,

8   and the companies share the same business address.  (*See* Hoting Decl. ¶ 14, Exs. P-R.)

9   Under such circumstances, Flow Services' direct infringement can and should be imputed

10   to PSD.  *See, e.g., A. Stucki Co. v. Worthington Indus., Inc.*, 849 F.2d 593, 596 (Fed. Cir.

11   1988) (holding that parent company's ability to control a subsidiary and stop alleged

12   infringement required imputing liability on the parent); *see also Frank Music Corp. v.*

13   *MGM, Inc.*, 886 F.2d 1545, 1553 (9th Cir. 1989) (holding that a parent was jointly liable

14   for a subsidiary's copyright infringement where the two shared a "substantial and

15   continuing relationship").

16       **2.**    *Aro Manufacturing* **supports discovery of information regarding**

17          **PSD's refurbishment of surf rides**

18        PSD also claims that any information about PSD's refurbishment of surf rides, not

19   just those done under the Flow Services name, is not discoverable.  (*See* Hoting Decl. ¶

20   8.)  According to PSD, its refurbishments are irrelevant because its refurbishments do not

21   infringe under *Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 365 U.S. 336

22   (1961).  (*Id.*)  Contrary to PSD's contention, however, *Aro Mfg.* does not govern the

23   discovery in this case.  Moreover, even if *Aro Mfg.* applied, that case only supports that

24   Whitewater is entitled to this discovery.

25        The only question before the Court in *Aro Mfg.* was whether a defendant's

26   manufacture and sale of an *unpatented element* of a patent constituted contributory

27   infringement—more specifically, whether purchasers of a specially cut fabric for use in a

28   patented automobile convertible top had used the fabric for a permissible "repair" or an

impermissible "reconstruction" of the patented combination.  *Id.* at 339-340.  In finding

that the replacement fabric did not directly infringe the patent in suit, the court explained

that "[m]ere replacement of individual unpatented parts . . . is no more than the lawful

right of the owner to repair his property."  *Id.* at 345.  Importantly, the Court noted that

the replacement of unpatented elements could comprise an impermissible reconstruction,

where such reconstruction amounts to a "true reconstruction of the entity as to 'in fact

make a new article,' after the entity, viewed as a whole, has become spent."  *Id.*; *see also*

*Canon, Inc. v. GCC Int'l Ltd.*, 263 F. App'x 57, 62 (Fed. Cir. 2008) (finding that the

replacement of the toner cartridge for printers would constitute impermissible

reconstruction because it would essentially be a "second creation of the patented entity");

*Husky Injection Molding Sys. v. Electra Form Inc.*, No. C-3-98-237, 2000 U.S. Dist.

LEXIS 22015 (S.D. Ohio Feb. 9, 2000) (finding infringement when company sold

conversion kits that used the patent holder's process on plastic molding machinery and

machine holders purchased the conversion kit not as a repair, but to change what their old

machines could do).

　　　　Unlike the replacement fabric in *Aro Mfg.*, PSD's refurbishment of surf rides

entails the replacement of, not an unpatented element of the invention of '589 Patent, but

rather the very invention of '589 Patent.  Based on the limited information available

given PSD's refusal to provide discovery on the topic, PSD's refurbishment appears to

include the sale and installation of padded nozzle covers to replace old nozzle covers on

sheet wave surf rides.  (*See* Hoting Decl. ¶ 15, Exs. S-U.)  The '589 Patent, entitled

"Mobile Water Ride Having Sluice Slide-Over Cover," relates to a sheet-flow water ride

that provides an upward flow of water upon an inclined ride surface, allowing riders to

perform surfing maneuvers.  (ECF No. 1, Ex. 1.)  Independent claim 17 of the '589

Patent teaches and claims a padded cover overlying the water-injecting components (e.g.,

nozzles), which significantly reduces the size and cost of sheet-wave rides, and improves

1  rider safety and enjoyability.[5]  (*Id.* at 24.)  Thus, as alleged in the Complaint and

2  Whitewater's infringement contentions, PSD refurbishes surf rides in a manner that

3  directly infringes Claim 17 of the '589 Patent.  (*See* ECF No. 1 ¶ 15, 20; ECF No. 70-4,

4  Ex. A at 3:12-14.)

5        Moreover, even assuming that PSD's refurbishments were directed at unpatented

6  elements of the Asserted Patents, "the drawing of the line between repair and

7  reconstruction is an inherently fact-based, individualized process."  *See FMC Corp. v.*

8  *Up-Right, Inc.*, No. C 92-321 SC, 1993 U.S. Dist. LEXIS 17182, at *17 (N.D. Cal. Jan. 8,

9  1993) (denying cross-motions for summary judgment on infringement because the

10  determination of whether defendant's actions constitute repairs or reconstruction was a

11  fact-based inquiry).  Thus, PSD's insistence that all discovery be foreclosed on this topic

12  and that PSD is allowed to withhold documents and information addressing the full

13  nature of PSD's refurbishments is not warranted.  In addition, to the extent that PSD's

14  refurbishments were done on any unlicensed structures, PSD would be liable for

15  infringement regardless of whether it was deemed a "repair."  As the Court stated in *Aro*

16  *Mfg. Co. v. Convertible Top Replacement Co. (Aro Mfg. II)*, 377 U.S. 476, 480 (1964),

17  "[t]he reconstruction-repair distinction is decisive, [] only when the replacement is made

18  in a structure whose original manufacture and sale have been licensed by the patentee . . .

19  ; when the structure is unlicensed, . . . the traditional rule is that *even repair constitutes*

20  *infringement*." (emphasis added).[6]

21  _____

22  [5] Claim 17 reads in full: "A cover for a water ride sluice gate from which a flow of water

23  jets out, comprising a contoured flexible pad, a connector configured to removably affix
   the cover to said sluice gate, a flexible tongue at a downstream end of the cover, the

24  tongue configured to extend over the water that jets from said sluice gate, and a generally
   flat portion at an upstream end of the cover, said tongue being urged downward against

25  the flow of water jetting from said sluice gate."  (ECF No. 1, Ex. 1 at 24.)

26  [6] In addition, whether PSD is entitled to assert a permissible repair defense is
   questionable, at best, given that PSD asserted no such defense in its answer (*see* ECF No.

27  13).  *See Fuji Photo Film Co. v. ITC*, 474 F.3d 1281, 1293 (Fed. Cir. 2007) ("Repair is an
   affirmative defense to a claim of infringement."); *Jorst v. D'Ambrosio Bros. Inv. Co.*, No.

28  C 00-03646 CRB, 2001 WL 969039, at *9 (N.D. Cal. Aug. 13, 2001) ("A defendant

13

1    But again, regardless of whether PSD's refurbishments are ultimately deemed to

2  infringe the Asserted Patents, PSD may not unilaterally make this determination for the

3  purposes complying with its discovery obligations.  If PSD wishes to argue that its

4  actions do not amount to infringement, it may do so at trial; however, Whitewater is

5  entitled to discovery to make its case.  Accordingly, PSD's responses to Request for

6  Production Nos. 44-45 and Interrogatories 2-3 are deficient, and PSD should be

7  compelled to produce all responsive documents and information.

8    **C.**    **PSD should be Compelled To Produce Information Relating to PSD's**

9         **Patent Applications (RFP No. 41; Interrogatory No. 9)**

10    Documents and information relating to PSD's patent applications are responsive

11  Request for Production Nos. 41 and Interrogatory 9.

12    Request No. 41 initially sought all "PSD issued patents, pending patent

13  applications, abandoned, or otherwise inactive patent applications that relate to any

14  waterslides."  (Hoting Decl., Ex. A at 13.)  In its Responses, PSD lodged several

15  boilerplate objections, and refused to produce documents on the grounds that the request

16  sought documents that are publicly accessible to Plaintiffs.  (Hoting Decl., Ex. C at

17  29:26-30:13.)  PSD made no confidentiality objection.  (*See id.*)  In Whitewater's initial

18  meet and confer letter, Whitewater offered to narrow the request to call for only PSD's

19  pending patent applications, which are not publicly available.  (Hoting Decl., Ex. H at 6.)

20  PSD has, however, continued to refuse to produce documents responsive to this request,

21  claiming that they are not relevant.  (*Id.*, Ex. J at 2.)

22    Again, PSD's relevancy objection is disingenuous.  PSD manufactures only two

23  types of products – the ProFlow line and the Supertube, both of which are alleged to

24  infringe the Asserted Present, and which PSD advertises as practicing PSD's issued or

25  pending patents.  (*See* Hoting Decl. ¶ 16, Exs. V-W.)  Understanding how PSD uses

26  terms and technology with respect to its patents in comparison to its statements and

27

28  waives an affirmative defense where the defendant fails to plead that defense in its
    answer.").

14

1  characterizations of the exact same products accused of infringement in this case is well

2  within the bounds of relevant discovery.  *See Zest IP Holdings, LLC v. Implant Direct*

3  *Mfg.*, LLC, No. 10-0541-LAB(WVG), 2011 WL 5525990, at *1 (S.D. Cal. Nov. 14,

4  2011) ("Relevant evidence regarding willful infringement, prior art, and equivalency may

5  be present within [a defendant's] patent applications."); *Caliper Technologies Corp. v.*

6  *Molecular Devices Corp.,* 213 F.R.D. 555, 562 (N.D. Cal. 2003) ("Many courts have

7  concluded that [pending, abandoned, and issued patent] applications are relevant because

8  they may contain information or admissions that clarify, define or interpret the claims of

9  the patent in suit.").

10      Moreover, PSD has identified in its invalidity contentions various prior art that

11  PSD contends renders the Asserted Patents invalid.  To the extent that any such prior art

12  is mentioned in PSD's patent applications for the accused products, how PSD

13  characterizes them is highly relevant to the scope of the prior art – particularly if such

14  admissions contradict PSD's statements in this case.  *See Morvil Tech., LLC v. Ablation*

15  *Frontiers, Inc.*, No. 10-CV-2088-BEN (BGS), 2012 WL 1965385, at *2 (S.D. Cal. May

16  31, 2012) (finding that defendant's pending patent applications that mention the inventor

17  of the patent at issue or any prior art reference relied on by defendant in its invalidity

18  contentions were "directly relevant" to the case).

19      Finally, PSD has waived any confidentiality objection to disclosure of its pending

20  patent application by failing to assert it in its responses.  *See Richmark Corp. v. Timber*

21  *Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a

22  failure to object to discovery requests within the time required constitutes a waiver of any

23  objection").  Further, the protective order entered by this Court on December 18, 2015

24  (ECF No. 24), allows for the designation of "CONFIDENTIAL – FOR COUNSEL

25  ONLY" materials (ECF No. 23 ¶ 5), eliminating any potential harm from PSD's

26  disclosures of this information.  *See Morvil*, 2012 WL 1965385, at *2 (finding that

27  protective order adequately addressed confidentiality concerns regarding disclosure of

28

1  pending patent applications); *Zest IP Holdings*, 2011 WL 5525990, at *1-2 (same);

2  *Caliper Techs.*, 213 F.R.D. at 562 (same).

3       In addition to production of its pending patent applications, PSD's response to

4  Interrogatory No. 9 is also required.  Interrogatory No. 9 initially asked PSD to identify

5  whether it contends that any of the Accused Products are covered by any issued patents

6  or pending, abandoned, or inactive patents, and to identify the aspect of the Accused

7  Products covered.  (Hoting Decl., Ex. B at 10.)  In response, PSD lodged several

8  boilerplate objections and refused to answer the Interrogatory.  (*Id.*, Ex. D at 18:21-19:4.)

9  During the parties meet and confer, PSD claimed that this interrogatory requires an

10  investigation that PSD is not required to do, and that it seeks privileged information.

11  (*See id.*, Ex. O at 1.)

12       In an attempt to compromise, Whitewater narrowed the scope to the patent or

13  patent applications "belonging or assigned to PSD."  (*Id.*, Ex. O at 3-4.)  Still, PSD

14  refused to provide any response, claiming that the information is either privileged or

15  irrelevant and that Whitewater could obtain the answer through a deposition.  (*Id.* at 1.)

16  On May 27, 2016, PSD served a supplemental response to this interrogatory, but its

17  response continued to evade the question.[7]  (*Id.*, Ex. F at 26:15-19.)

18       As an initial matter, PSD may not unilaterally decide the method through which

19  Whitewater can obtain discoverable information.  *Leasure v. Willmark Communities,*

20  *Inc.*, No. 11-cv-0443-L (DHB), 2012 WL 4361555, at *6 (S.D. Cal. Sept. 21, 2012)

21  ("Plaintiffs are entitled to pursue appropriate discovery in the manner they choose.");

22  *National Union Fire Ins. Co. v. Continental Ill. Corp.*, 116 F.R.D. 78, 83 (N.D. Ill. 1987)

23  (rejecting suggestion that the party seeking discovery proceed by depositions rather

24  interrogatories and document requests because "Depositions are themselves expensive.

25  They are a singularly unsuitable (because inefficient and therefore costly) method for

26  information gathering if the questioner is compelled to depose witnesses . . .  without any

27

28

[7] PSD's supplemental response states that "PSD states that it does not mark any Accused Product with a patent number."  (Hoting Decl., Ex. F. at 26:18-19.)

16

background information.").  Thus, PSD's assertion that a response to this interrogatory could be obtained in a deposition is not grounds to avoid complying with its discovery obligations.

PSD's privilege objection to Interrogatory No. 9 similarly lacks merit.  "[A]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact."  Fed. R. Civ. P. 33(a)(2); *see* Notes of Advisory Committee on Rules (1970) Amendment to Subdivision (b) ("As to requests for opinions or contentions that call for the application of law to fact, they can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery."  Nor are such interrogatories objectionable on the ground that they encroach on attorney work product.  *See United States v. Boyce*, 148 F. Supp. 2d 1069, 1086 (S.D. Cal. 2001); *see also Audatex N. Am. Inc. v. Mitchell Int'l, Inc.*, No. 13cv1523-BEN (BLM), 2014 WL 4961437, at *2 (S.D. Cal. Oct. 3, 2014) (compelling defendant to answer a non-infringement contention interrogatory).

PSD's pending patent applications are directly relevant to the issues of infringement, invalidity, claim construction, willfulness, prior art and equivalency, and its opinion about whether the Accused Products are covered by such products are not privileged.  An order compelling PSD to provide complete responses to RFP No. 41 and Interrogatory 9 is, therefore, warranted.

///
///
///
///
///
///
///
///
///

17

IV.   **<u>CONCLUSION</u>**

For the foregoing reasons, Whitewater respectfully requests that the Court compel PSD to provide full and complete responses to Request for Production Nos. 21, 41, 44-45, and Interrogatories 2-3, 9.

DATED:  September 9, 2016         **GREENBERG TRAURIG, LLP**

By   */s/ Leanna C. Costantini*

*Attorneys for Plaintiffs*         J. Rick Taché (CA Bar No. 195100)
Shaun A. Hoting (CA Bar No. 260656)
Erikson C. Squier (CA Bar No. 275274)
Leanna C. Costantini (CA Bar No. 294028)

## CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE:**

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is **3161 Michelson Drive, Suite 1000, Irvine, CA 92612.**

On September 9, 2016, I caused to be electronically filed the following documents, described as:

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL DEFENDANT'S DISCOVERY RESPONSES;**

**DECLARATION OF SHAUN A. HOTING IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEFENDANT'S DISCOVERY RESPONSES**

**DECLARATION OF LEANNA C. COSTANTINI IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEFENDANT'S DISCOVERY RESPONSES**

**EXHIBITS A-W**

with the Clerk of the United States District Court of the Central District of California, using the CM/ECF System.  The Court's CM/ECF System will send an e-mail notification of the foregoing filing to the following parties and counsel of record who are registered with the Court's CM/ECF system:

| | |
|---|---|
| **Justin M. Barnes** | **Anup M. Shah** |
| **TROUTMAN SANDERS, LLP** | **TROUTMAN SANDERS, LLP** |
| **11682 El Camino Real, Suite 400** | **301 S. College Street, Suite 3400** |
| **San Diego, CA  92130** | **Charlotte, NC  28202** |
| **Tel.  (858) 509-6000** | **Tel.  (704) 998-4089** |
| **Fax  (858) 509-6040** | **Fax  (704) 998-4051** |
| **Justin.barnes@troutmansanders.com** | **anup.shah@troutmansanders.com** |

☒ **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on September 9, 2016, at Irvine, California.

/s/   Leanna C. Costantini
Leanna C. Costantini