UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLOWRIDER SURF, LTD., et al.,<br><br>                              Plaintiffs,<br><br>v.<br><br>PACIFIC SURF DESIGNS, INC.,<br><br>                              Defendant.<br>_____<br><br>AND RELATED COUNTERCLAIMS | Case No.:  15cv1879-BEN (BLM)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL PLAINTIFFS' DISCOVERY RESPONSES**<br><br>**[ECF No. 76].** |

      Currently before the Court is Defendant's September 9, 2016 "Motion to Compel Discovery" [ECF No. 76-1 ("Mot.")], Plaintiffs' September 16, 2016 opposition to the motion [ECF No. 87 ("Oppo.")], and Defendant's September 23, 2016 reply [ECF No. 91 ("Reply")].  Having considered the briefing submitted by the parties and having reviewed all of the supporting

exhibits, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for the reasons set forth below.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 24, 2015, Plaintiffs FlowRider Surf Ltd. ("FlowRider") and Surf Waves, Ltd. ("Surf Waves")[1] filed this suit against Defendant Pacific Surf Designs ("PSD") for patent infringement. ECF No. 1. FlowRider is the exclusive global licensee of U.S. Patent No. 6,491,589 (the "'589 Patent") entitled "Mobile Water Ride Having Sluice Slide-Over Cover," issued on December 10, 2002. Id. at 3. The '589 Patent is "generally directed to a simulated wave water ride attraction having one or more water covers for ensuring the safety of riders and lowering the risk of injury or interference with ride operation." Id. Plaintiff Surf Waves owns the U.S. Patent No. 8,088,016 (the "'016 Patent"), entitled "Half-Pipe Water Ride," issued on January 3, 2012. Id. The '016 Patent is "generally directed to a half-pipe water ride including a substantially flat middle section, a first curved sidewall, and a second curved sidewall opposite to the first curved sidewall." Id.

Defendant competes with Plaintiffs in the waterpark rides industry. Plaintiffs accuse Defendant of making and selling infringing waterpark rides. Specifically, Plaintiffs assert that Defendant "makes, has made, imports, uses, offers for sale and/or sells products that infringe one or more claims" of the patents-in-suit, including "ProFlow Single," "ProFlow Double," "ProFlow Triple," "ProFlow Quad," "ProFlow Mini Single," "ProFlow Mini Double," "ProFlow Quarterpipe," "ProFlow Halfpipe," "Supertube," and Defendant's unnamed refurbishment of surfing rides (the "Accused Products."). Id. at 4. On October 22, 2015, Defendant counter-

---

[1] Flow Rider and Surf Waves are wholly owned subsidiaries of Whitewater West Industries, Ltd. ("Whitewater"). See ECF No. 88 at 1.

1   claimed denying infringement of the '589 Patent and '016 Patent ("the Asserted Patents"), and

2   alleging that both patents are invalid.  ECF No. 13 at 8-10.

3   **<u>LEGAL STANDARD</u>**

4   The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

5   Parties may obtain discovery regarding any nonprivileged matter that is relevant
6   to any party's claim or defense and proportional to the needs of the case,
    considering the importance of the issues at stake in the action, the amount in
7   controversy, the parties' relative access to relevant information, the parties'
    resources, the importance of the discovery in resolving the issues, and whether
8   the burden or expense of the proposed discovery outweighs its likely benefit.
    Information within this scope of discovery need not be admissible in evidence to
9   be discoverable.

10  Fed. R. Civ. P. 26(b)(1).

11  District courts have broad discretion to determine relevancy for discovery purposes.  <u>See</u>

12  <u>Hallett v. Morgan</u>, 296 F.3d 732, 751 (9th Cir. 2002).  District courts also have broad discretion

13  to limit discovery to prevent its abuse.  <u>See</u> Fed. R. Civ. P. 26(b)(2) (instructing that courts must

14  limit discovery where the party seeking the discovery "has had ample opportunity to obtain the

15  information by discovery in the action" or where the proposed discovery is "unreasonably

16  cumulative or duplicative," "obtain[able] from some other source that is more convenient, less

17  burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

18  A party may request the production of any document within the scope of Rule 26(b).

19  Fed. R. Civ. P. 34(a).  "For each item or category, the response must either state that inspection

20  and related activities will be permitted as requested or state with specificity the grounds for

21  objecting to the request, including the reasons."  <u>Id.</u> at 34(b)(2)(B).  The responding party is

22  responsible for all items in "the responding party's possession, custody, or control."  <u>Id.</u> at

23  34(a)(1).  Actual possession, custody or control is not required.  Rather, "[a] party may be

3

1   ordered to produce a document in the possession of a non-party entity if that party has a legal

2   right to obtain the document or has control over the entity who is in possession of the

3   document." <u>Soto v. City of Concord</u>, 162 F.R.D. 603, 619 (N.D. Cal. 1995).

4          An interrogatory may relate to any matter that may be inquired under Rule 26(b).  Fed.

5   R. Civ. P. 33(a)(2).   "The grounds for objecting to an interrogatory must be stated with

6   specificity," and any interrogatory not objected to must be answered fully in writing under oath.

7   Fed. R. Civ. P. 33(b)(4).

8          Pursuant to Federal Rule of Civil Procedure 37, "a party may move for an order compelling

9   disclosure or discovery."  Fed. R. Civ. P. 37(a)(1).  The party seeking to compel discovery has

10   the burden of establishing that its request satisfies the relevance requirement of Rule 26.  <u>Soto</u>,

11   162 F.R.D. at 610.  Thereafter, the party opposing discovery has the burden of showing that the

12   discovery should be prohibited, and the burden of "clarifying, explaining, and supporting its

13   objections." <u>DIRECTV, Inc. v. Trone</u>, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing <u>Blankenship</u>

14   <u>v. Hearst Corp.</u>, 519 F.2d 418, 429 (9th Cir. 1975)).

15                                   **DISCUSSION**

16          Defendant asks the Court to compel Plaintiffs' responses and document production, in

17   response to Interrogatory No. 1 and RFP Nos. 1-3.  Mot. at 2, 5-7.  Defendant also seeks

18   document production in response to its ESI requests without further culling for relevance.  <u>Id.</u>

19   at 2, 5, 7-9.  The Court will address each category of requests below.

20   **I.     Revival Discovery Requests**

21          Defendant seeks information and documents concerning the abandonment and expiration

22   of Plaintiffs' Asserted Patents ("revival discovery").  <u>Id.</u> at 2.  Defendant asserts that the revival

23   discovery is relevant to the inequitable conduct and revival counterclaims and defenses that it

4

seeks to add [see ECF No. 50],[2] and to the laches and equitable estoppel defenses asserted in

its Answer and Counterclaims.  Mot. at 2, 6-7; see also ECF No. 13 at 1, 7-8.  Defendant alleges

that Plaintiffs intentionally permitted the Asserted Patents to expire, and that the revival

discovery is thus relevant to its laches defense element that "patentee does not intend to enforce

its patent against the alleged infringer," and could establish that Plaintiffs' delay was

"unreasonable and inexcusable," which is required to establish its equitable estoppel defense.

See Mot. at 6-7 (citing A.C. Aukerman Co. v. R.L. Chaides Const. Co., 960 F.2d 1020, 1028 (Fed.

Cir. 1992)).  Defendant further argues that whether or not Plaintiffs intentionally allowed the

Asserted Patents to expire is relevant to the "misleading conduct" showing of its defense.  Id.

at 7.  Defendant also states that Plaintiffs refused to disclose the revival discovery on the basis

of privilege, but have not produced a privilege log, thereby foreclosing Defendant's ability to

challenge Plaintiffs' assertion of privilege.  Id.  Finally, Defendant asks the Court, in case it

compels the production of the revival discovery, to also compel Plaintiffs to conduct ESI searches

for the following terms: "reviv*," "abandon*," "expire*," "maintenance fee," "late fee," and

"patent fee."  Id. at 2 n.1.

Plaintiffs argue in their opposition that Defendant's discovery requests seek irrelevant and

privileged documents and information.  Oppo. at 5-6, 17-22.  Plaintiffs initially claim that the

---

[2]   On June 22, 2016, Defendant filed a "Motion for Leave to File its First Amended Answer and Counterclaim," which is currently pending in front of the District Judge.  See ECF No. 50. Specifically, Defendant seeks to "amend its Answer and Counterclaims to add defenses and an inequitable conduct claim related to the improper revival of both [A]sserted [P]atents in this case," and alleges that Plaintiffs "purposefully and knowingly allowed [the Asserted Patents] to expire by failing to pay the requisite maintenance fees."  Id. at 2.  Defendant alleges that Plaintiffs revived the Asserted Patents, and represented that the entire period of delay in the payment of maintenance fees was unintentional.  Id. at 3.  Defendant argues that it "has reason to believe" that such statements were false and that, therefore, the Asserted Patents are unenforceable.  Id.

1    revival discovery is premature and ask the Court to postpone its ruling on Defendant's motion

2    to compel the revival discovery until the Court's ruling on Defendant's pending motion to amend.

3    Id. at 18.  Plaintiffs assert that Defendant's equitable estoppel and laches defenses are based

4    on Plaintiffs' dismissal of their initial infringement suits against Defendant, and not on their

5    maintenance fee payments.  Id. at 5, 18-19.  Plaintiffs also contend that even if Defendant's

6    equitable estoppel and laches defenses could be broadly interpreted to encompass Defendant's

7    new allegations regarding patent revival, those defenses do not permit Defendant to investigate

8    Plaintiffs' and their counsel's internal activities regarding the maintenance fee payments.  Id. at

9    5, 19-20.  In support, Plaintiffs argue that the Federal Circuit indicated that courts cannot inquire

10   into the procedural minutiae of the PTO, including its acceptance of late maintenance fee

11   payments.  Id. at 5-6, 19-20 (citing Aristocrat Techs. Australia PTY Ltd. v. Int'l Game Tech., 543

12   F.3d 657, 663 (Fed. Cir. 2008) and Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co.,

13   731 F.3d 1239, 1243-44 (Fed. Cir. 2013)).  Plaintiffs further assert that equitable estoppel is

14   assessed by looking at the prejudice to Defendant based on what Defendant knew at the time

15   of the alleged infringing act, and claim that Plaintiffs' intent and internal activities are therefore

16   irrelevant.   Id. at 20-21 (citing A.C. Aukerman Co., 960 F.2d at 1028).  With respect to

17   Defendant's laches claim, Plaintiffs state that there was an eight-month delay from the time the

18   tolling agreement expired to the time that they reinitiated suit against Defendant, and that

19   consequently, the only relevant inquiry is whether an eight-month delay in reinitiating suit was

20   reasonable or excusable.   Id. at 20-21.  Finally, Plaintiffs assert that the revival discovery

21   improperly seeks information protected by the attorney-client privilege and work-product

22   doctrine.  Id. at 6, 21.  Plaintiffs explain that the discovery requests at issue seek not only the

23   underlying facts regarding the patent revival, but also documents and information from Plaintiffs'

1   counsel regarding the investigation into the cause for the delayed maintenance fee payments,

2   as well internal communications regarding the patent revival.  Id. at 21.  Plaintiffs thus ask the

3   Court to deny Defendant's motion to compel the revival discovery.  Id. at 22.

4          Defendant replies that it is entitled to *broad* discovery under equitable estoppel, laches,

5   or any other claim or defense.  Reply at 2.  Defendant acknowledges that it did not initially use

6   revival as a basis for its equitable estoppel and laches defenses, but claims that based on the

7   discovery conducted to date it now believes that the facts surrounding the revival of the Asserted

8   Patents are relevant to those defenses.  Id. at 3.  Defendant alleges that the '016 Patent expired

9   after it filed its Answer and Counterclaims, that Plaintiffs produced the '589 Patent revival

10  application two weeks after the amended pleading deadline, and that, consequently, it could not

11  have used the revival as a basis for its laches and equitable estoppel defenses.  Id. at 3-5.

12  Defendant reiterates its arguments that the revival discovery is relevant to its defenses.  Id. at

13  5.  Finally, Defendant argues that facts and circumstances relevant to how the Asserted Patents

14  were abandoned, which person(s) made the realization, why maintenance fees were not paid,

15  and when the decision to revive the patents were made, are not privileged, and that Plaintiffs'

16  attorney's investigations into those facts and signing of a petition stating that the delay was

17  unintentional do not render the underlying facts privileged.  Id. at 6.

18          **a.  Applicable Law**

19          Patent applicants have a duty to prosecute patents in the PTO with candor and good

20  faith, including a duty to disclose information known to the applicants to be material to

21  patentability, and patent applicant's breach of this duty may result in a finding of inequitable

22  conduct.  See 37 C.F.R. § 1.56; Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir. 1995).

23  "To prove inequitable conduct, the challenger must show by clear and convincing evidence that

the patent applicant (1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO." Network Signatures, Inc., 731 F.3d at 1242 (quoting In re Rosuvastatin Calcium Patent Litig., 703 F.3d 511, 519 (Fed. Cir. 2012)). "Materiality and intent must be separately established." Id. Materiality is established when "the PTO would not have allowed the claim but for the nondisclosure or misrepresentation." Network Signatures, Inc., 731 F.3d at 1242 (quoting In re Rosuvastatin Calcium Patent Litig., 703 F.3d 511, 519 (Fed. Cir. 2012)). To establish intent, intent to deceive the PTO must be "the single most reasonable inference able to be drawn from the evidence." Id.

Laches and equitable estoppel are cognizable under 35 U.S.C. § 282 as equitable defenses to a claim for patent infringement. A.C. Aukerman Co., 960 F.2d at 1028 (citing 35 U.S.C. § 282). The equitable defense of laches requires a showing of the following two elements: "(a) the patentee's delay in bringing suit was unreasonable and inexcusable, and (b) the alleged infringer suffered material prejudice attributable to the delay." Id. The period of delay is defined as the time from when the patentee knew or reasonably should have known of the alleged infringing acts until the date of suit. Id.; Lucent Techs. Inc. v. Getaway, Inc., 470 F. 2d 1187, 1190 (S.D. Cal. 2007) ("[f]or laches to apply, a defendant must prove that plaintiff unreasonably delayed in filing suit from the time plaintiff knew or should have known of the infringement . . . ."). The resulting prejudice may be evidentiary, affecting the defendant's ability to put on a full and fair defense, or the prejudice may be economic. Id. (citing A.C. Aukerman Co., 960 F.2d at 1033).

The equitable estoppel defense requires the showing of the following elements:

8

a.   The patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer.  "Conduct" may include specific statements, action, inaction, or silence where there was an obligation to speak.

b.  The alleged infringer relies on that conduct.

c.  Due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.

A.C. Aukerman Co., 960 F.2d at 1028.  Where the alleged infringer establishes all three elements of the equitable estoppel defense, the court must consider "any other evidence and facts respecting the equities of the parties in exercising its discretion and deciding whether to allow the defense of equitable estoppel to bar suit."  Id. at 1043.

Acceptance of late payment of maintenance fees is authorized and implemented by statute.  See 35 U.S.C. § 41(c)(1); 37 C.F.R. § 1.378(a); Network Signatures, Inc., 731 F.3d at 1242.  The PTO Director

may accept the payment of any maintenance fee due on a patent after expiration of the patent if, upon petition, the delay in payment of the maintenance fee is shown to the satisfaction of the Director to have been unintentional.  If the Director accepts payment of the maintenance fee upon petition, the patent shall be considered as not having expired . . . .

37 C.F.R. § 1.378(a).  The PTO provides a standard form for late payment, and "unintentional" delay is sufficient ground for acceptance of late payment.  Network Signatures, Inc., 731 F.3d at 1243.  "Absent proof of inequitable conduct, the examiner's or the applicant's absolute compliance with the internal rules of patent examination becomes irrelevant after the patent has issued."  Aristocrat Techs. Australia PTY Ltd., 543 F.3d at 663.  The court reasoned that

[o]nce a patent has issued, the procedural minutia of prosecution have little relevance to the metes and bounds of the patentee's right to exclude.  If any prosecution irregularity or procedural lapse, however minor, became grist for a later assertion of invalidity, accused infringers would inundate the courts with arguments relating to every minor transgression they could comb from the file

9

1  wrapper.  This deluge would only detract focus from the important legal issues to
2  be resolved—primarily, infringement and invalidity.

3  Id.

4  "The attorney-client privilege exists where: '(1) [ ] legal advice of any kind is sought
5  (2) from a professional legal adviser in his capacity as such, (3) the communications relating to
6  that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently
7  protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be
8  waived.'"  United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011) (quoting United States v.
9  Graf, 610 F.3d 1148, 1156 (9th Cir. 2010)).  "Because it impedes full and free discovery of the
10  truth, the attorney-client privilege is strictly construed."  United States v. Martin, 278 F.3d 988,
11  999 (9th Cir. 2002) (quotation omitted).  The privilege "protects only those disclosures necessary
12  to obtain informed legal advice which might not have been made absent the privilege," and
13  applies "only when necessary to effectuate its limited purpose of encouraging complete
14  disclosure by the client."  See Fisher v. United States, 425 U.S. 391, 403 (1976); Griffith v. Davis,
15  161 F.R.D. 687, 694 (C.D. Cal. 1995) (quoting Tornay v. United States, 840 F.2d at 1428).  The
16  party asserting the attorney-client privilege bears the burden to establish that the privilege
17  applies to the requested documents.  Griffith, 161 F.R.D. at 694 (quoting Tornay, 840 F.2d at
18  1426).  "[A]ttachments which do not, by their content, fall within the realm of the [attorney-
19  client] privilege cannot become privileged by merely attaching them to a communication with
20  the attorney."  Our Children's Earth Found. V. Nat'l Marine Fisheries Serv., 85 F. Supp. 3d 1074,
21  1088 (N.D. Cal. 2015); see also Hanson v. Wells Fargo Home Mortg., Inc., 2013 WL 5674997,
22  at *4 (W.D. Wash. Oct. 17, 2013) ("Documents attached to or included in an attorney[-]client

23

communication are not automatically privileged, and the party asserting privilege must prove that each attachment is protected by privilege.")).

"[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).   Nevertheless, those materials may be discovered if "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Id.  However, even when substantial need for work product has been shown, the court must still "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).

### b.  Analysis

Defendant's Interrogatory No. 1 requests the following:

State all facts relating to Your payment and/or failure to pay maintenance fees for the Asserted Patents including, without limitation, the dates on which all maintenance fee payments were made and the Person(s) involved in making such payments, the cause(s) of the entire delay in paying any maintenance fee, date(s) on which the failure to timely pay any maintenance fee was discovered and the Person(s) who discovered or had knowledge of such failure, the nature of any investigation into the cause of any delay in the payment of a maintenance fee and the Person(s) who conducted such investigation, the basis for any conclusion that the entire delay in paying a maintenance fee was unintentional or unavoidable, and all efforts to revive the Asserted Patents and the Person(s) involved in such efforts.

Shah Decl., Exh. A at 5.  Defendant's RFP Nos. 1-3 seek the following:

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 1**:
All Documents relating to Your Petition To Revive the '589 Patent Under 37 CFR 1.378 dated February 20, 2015 or Your Renewed Petition To Revive the '589

15cv1879-BEN (BLM)

1   Patent Under 37 CFR 1.378 dated August 11, 2015 and their preparation and
2   submission, including any investigation into the cause of the entire delay in
    payment of maintenance fees for the '589 Patent.

3   **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 2**:
        All Documents relating to Your payment or failure to pay any maintenance
4   fee for any of the Asserted Patents, including documents relating to any delay in
    payment, regardless of whether such delay was intentional or unintentional.
5
6   **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 3**:
        All Documents relating to any inquiry made by You to ascertain whether the
    delay in paying any maintenance fee(s) was unintentional or intentional.
7

8   Id. at 12.  Plaintiffs objected, *inter alia*, that the discovery requests at issue sought information

9   protected by the attorney-client privilege and/or the work product doctrine, that Defendant had

10  not alleged inequitable conduct with respect to the Patents-in-Suit, and that circumstances

11  regarding the expiration of and/or Plaintiffs' revival of the '589 Patent were not relevant to any

12  claim or defense in this case.  Id., Exh. B at 6-7, 10-12.

13      Plaintiffs sued Defendant for infringement of the Asserted Patents on May 1, 2014 [see

14  FlowRider Surf., Ltd. v. Alleshouse, et al., 14cv1110-GPC (BLM); Surf Waves Ltd. v. Pacific Surf

15  Design, Inc., et al., 14cv1108-BEN (JMA)], and dismissed the suits without prejudice on June 30,

16  2014, pursuant to the parties' tolling agreement pending their settlement discussions.  See id.

17  The parties were unable to reach a settlement, the tolling agreement expired on December 31,

18  2014, and Plaintiffs initiated the instant action reasserting their claims against Defendant for

19  infringement of the Asserted Patents on August 24, 2015.  See Oppo. at 7; ECF No. 1.

20      Both Asserted Patents expired for failure to pay maintenance fees.  Specifically, the '589

21  Patent expired on January 2, 2015, Plaintiffs' counsel petitioned the PTO to pay its

22  unintentionally delayed maintenance fee payment on February 20, 2015, and the PTO granted

23  the petition on August 24, 2015.  See Declaration of Shaun Hoting ("Hoting Decl.") at 2-3; id.,

1    Exhs. 2-3.  The '016 Patent expired after this suit was filed, on January 29, 2016, Plaintiffs'

2    counsel filed a petition to pay its unintentionally delayed maintenance fee payment on

3    February 10, 2016, and the PTO granted the petition on the same day.  Hoting Decl. at 2-3; id.,

4    Exh. 4.

5         Defendant has alleged in its answer and counterclaim defenses of laches and equitable

6    estoppel.  See ECF No. 13 at 1, 7-8.  In support of its equitable estoppel defense, Defendant

7    alleges that "[t]hrough their affirmative statements, conduct and/or silence in the course of

8    dismissing [the initially filed] complaints, Plaintiffs misled [Defendant] to reasonably infer that

9    Plaintiffs did not intend to enforce the [Asserted Patents] or allege that any of [Defendant's]

10   actions to date have infringed those patents."  Id. at 7-8.  In support of its laches defense,

11   Defendant alleges that Plaintiffs knew or reasonably should have known of its alleged acts of

12   infringement of the Asserted Patents since at least May 1, 2014, when they initially sued

13   Defendant, and that Plaintiffs' delay in re-filing suit was unreasonable and prejudicial because

14   Plaintiffs gave no indication that they intended to re-file suit and Defendant continued to market

15   and sell the allegedly infringing products in the interim.  Id. at 7.

16        The Court initially notes that Plaintiffs ask the Court to defer its ruling on the instant

17   motion to compel until the District Judge's ruling on Defendant's pending motion to amend.  See

18   Oppo. at 18. The Court **DENIES** Plaintiffs' request and will address Defendant's motion to

19   compel at this time.  Both parties agree that the revival discovery is relevant to Defendant's

20   inequitable conduct defenses and counterclaims asserted in the pending "Motion for Leave to

21   File [Defendant's] First Amended Answer and Counterclaims."  See id.; Reply at 2-3; see also

22   ECF No. 50.  As such, if the District Judge grants Defendant's motion to amend, Plaintiffs will

23   need to produce the requested revival discovery.

The remaining issue is whether the requested revival discovery is relevant to Defendant's current laches and equitable estoppel defenses.  See ECF No. 13.  The Court finds that it is as to the '589 Patent, but not as to the '016 Patent.  With regard to both defenses, Defendant must establish that Plaintiffs' conduct was either "unreasonable and inexcusable" or misleading in a way that led Defendant to infer that Plaintiffs did not intend to enforce its patents against Defendant.  The '589 Patent expired on January 2, 2015, three days after the tolling agreement ended, and Plaintiffs did not petition the PTO until February 20, 2015.  The requested discovery seeks to determine whether Plaintiffs intentionally allowed the patent to expire.  If Plaintiffs intentionally failed to renew the patent, Defendant could use that evidence to argue that the delay in filing this action was unreasonable and/or inexcusable.  Evidence of an intentional failure to renew the patent also could be relevant to whether Plaintiffs misled Defendant regarding their intent to enforce the patent.  As such, the revival discovery as to the '589 Patent is relevant to Defendant's current defenses and claims.  On the other hand, the '016 Patent did not expire until after Plaintiffs filed the instant case and therefore evidence relating to its expiration and renewal is not relevant to Defendant's current defenses and claims.

Plaintiffs rely on Network Signatures, Inc., 731 F.3d at 1243, and Aristocrat Techs. Australia PTW Ltd., 543 F.3d at 663, to argue that the requested discovery is irrelevant and impermissible since the decision to accept late maintenance fee payments is given to the PTO Director and once the Director accepts the late payment and revives the patent, any rule violations are irrelevant.  Oppo. at 19-20. The Court disagrees with Plaintiffs' interpretation of the cases and finds that while they are instructive on the type and amount of evidence required to establish inequitable conduct, they do not prohibit discovery on the issues of patent expiration, late payment of maintenance fees, and revival.  In fact, the Aristocrat Techs. Australia

<u>PTW Ltd.</u> court specifically tempered its strong statement that "compliance with the internal rules of patent examination becomes irrelevant after the patent has issued" by stating that the statement was true only "absent proof of inequitable conduct." <u>Aristocrat Techs. Australia PTW Ltd.</u>, 543 F.3d at 663 ("[w]e wish to stress, however, . . . that where the procedural irregularity involves an 'affirmative misrepresentation of a material fact, failure to disclose material information or submission of false material, coupled with an intent to deceive,' it may rise to the level of inequitable conduct").   The court also noted the difference between "prosecution irregularities" and "prosecution laches" and opined that prosecution laches remains a viable defense.  <u>Id.</u> at 663 n.4.  As such, Defendant must have the opportunity to conduct discovery to determine whether there is such inequitable conduct and/or whether Plaintiffs intentionally failed to renew the '589 Patent.  The Court therefore **GRANTS** Defendant's motion to compel responses to Interrogatory No. 1 and RFP Nos. 1-3 as to the '589 Patent and **DENIES** Defendant's motion as to the '016 Patent.  Plaintiffs asserted the attorney-client privilege and the work-product doctrine with respect to the revival discovery requests, but did not provide a privilege log.  If Plaintiffs continue to withhold responsive documents on the basis of privilege, they must produce a privilege log to Defendant specifying which documents/communications they are withholding and the basis on which they are being withheld.

Defendant also asks the Court to compel Plaintiffs to conduct ESI searches for the terms: "reviv*," "abandon*," "expire*," "maintenance fee," "late fee," and "patent fee."  Mot. at 2 n.1.  Plaintiffs do not specifically address this aspect of Defendant's motion.  Oppo.  The Court **DENIES** Defendant's request as the requested search terms are overbroad, especially given the scope of this order.  Rather, the Court requires Plaintiffs to produce responsive documents, including electronic documents, as directed in this order.

15

## II.   **ESI Discovery Requests**

Defendant seeks to compel the production of all documents that "hit" on the parties' agreed-upon ESI search terms without further relevance review by Plaintiffs.  Mot. at 2, 5, 7-9. In support, Defendant argues that each search term is narrowly-tailored to specific issues in this case and thus any resulting "hits" are presumptively relevant and responsive.  Id. at 2. Defendant asserts that Plaintiffs' culling based on relevance is not contemplated by the ESI Order, and that Plaintiffs waived any arguments that the search terms are overly broad because they agreed to those search terms.  Id. at 7-8.  Defendant thus expresses a "concern" that Plaintiffs' culling for relevance would not produce the full scope of materials anticipated by Fed. R. Civ. P. 26 and the ESI protocol.  See id. at 2-3, 8.

Plaintiffs argue in their opposition that Defendant's interpretation of the parties' ESI Order is contrary to law and the purposes of the ESI Order.  Oppo. at 22-29.  Plaintiffs allege that Defendant's requests conflict with the plain language of Fed. R. Civ. P. 26(b)(1), and that the parties' ESI Order does not require the production of irrelevant documents or documents that "hit" on a particular search term regardless of relevance.  See id.  Plaintiffs further contend that Defendant's interpretation of the ESI Order as permitting discovery into irrelevant documents renders the Order in violation of the FRCP 83 and conflicts with the Federal Circuit advisory Council's purpose in creating the ESI Order.  Id. at 6-7, 24.  Plaintiffs also maintain that they have not waived objections to Defendant's search terms and assert that they have produced all documents in their possession responsive to Defendant's requests.  Id. at 7, 26-28.  Finally, Plaintiffs allege that the volume of their document production is appropriate, and ask the Court to deny Defendant's motion to compel.  Id. at 28-29.

1    Defendant replies that each agreed-upon search term in their ESI Order is narrowly-

2    tailored to the issues in this case, and that any resulting hits therefore are presumptively

3    relevant.  Reply at 7-9.  Defendant claims that because Plaintiffs' production included *only* 1,537

4    pages of documents, such "limited" production is not possible "unless either Plaintiffs have been

5    taking an overly restrictive definition of 'relevant' or . . . have not maintained any documents

6    over the last thirty years."  Id. at 6 n.3.  Defendant thus asks the Court to grant its motion to

7    compel.  Id. at 9.

8    Rule 26 permits "discovery regarding any nonprivileged matter that is *relevant* to any

9    party's claim or defense and *proportional* to the needs of the case."  Fed. R. Civ. P. 26(b)(1)

10   (emphasis added).  The parties agreed to produce "all electronically stored documents and

11   information" in accordance with the Southern District's Order Governing Discovery of

12   Electronically Stored Information.  See ECF No. 19 at 4.  The ESI Order states that it is intended

13   to streamline ESI production to "promote a 'just, speedy, and inexpensive determination'" of the

14   action.  ESI Order ¶1.  The ESI Order further provides that "[e]mail production requests will only

15   be propounded for specific issues, rather than general discovery of a product or business."  Id.

16   ¶ 8.

17   Plaintiffs' search for the term "Proslide" resulted in approximately 6,400 hits, and the

18   search for the term "Lochtefeld" yielded approximately 38,000 hits.  See Oppo. at 16, 24; Hoting

19   Decl. at 8; id., Exh. 23.  Plaintiffs claim that that the above "hits" yield a substantial number of

20   irrelevant documents and provide a supporting declaration from Mr. Myrman, a Chief Operating

21   Officer of Plaintiff FlowRider.  See ECF No. 87-8, Declaration of Marshall Myrman ("Myrman

22   Decl.").  Mr. Myrman asserts that Mr. Lochtefeld is the named inventor of the '589 Patent and a

23   prolific inventor of other water-ride attraction technologies, which are unrelated to the issues in

1  this case. Id. at 2.  Mr. Myrman further declares that the history between Plaintiffs' parent

2  company, Whitewater, and Mr. Lochtefeld "extends more than a decade and goes well beyond

3  issues relating to the '589 Patent or any of the issues in this case." Id.  For example, Mr.

4  Lochtefeld served on FlowRider's Board of Directors from February 2014 through

5  November 2015, and performed "operational and ministerial activities at FlowRider having

6  nothing to do with the Asserted Patents." Id. Mr. Myrman also asserts that Proslide Technology

7  Inc. and Whitewater compete "across the globe for all types of projects, including bidding,

8  designing, manufacturing, and installing countless different water attractions involving

9  technologies not at issue in this litigation," and they have engaged in "numerous instances of

10  contentious confrontation," which included multiple cease and desist letters and reexamination

11  proceedings. Id. at 2-3.

12          Mr. Myrman's declaration demonstrates that despite the parties' efforts to tailor the

13  search terms to the issues in this case, the resulting "hits" contain many irrelevant and

14  unresponsive documents, and the Court therefore agrees with Plaintiffs that culling for relevance

15  is warranted. See id.; Fed. R. Civ. P. 26(b)(1).  The Court finds that Plaintiffs have not waved

16  their relevance and over breadth objections.  Plaintiffs' agreement to run a search using the

17  parties' agreed-upon terms does not constitute Plaintiffs' acquiescence to produce all resulting

18  documents.  Further, in light of the fact that Plaintiffs purchased the rights to the Asserted

19  Patents and certain assets *after* the Asserted Patents had been issued and associated products

20  had been designed [see Oppo. at 28], the Court also finds Defendant's objection based on the

21  allegedly insufficient number of produced documents unavailing. See Mot. at 2-3; Reply at 6

22  n.3.  The Court thus **DENIES** Defendant's motion to compel Plaintiffs to produce all documents

23

that "hit" on the parties' ESI search terms.  Plaintiffs may review the documents that "hit" on the parties' agreed-upon search terms for relevance before producing them to Defendant.

**SUMMARY AND CONCLUSION**

For the foregoing reasons, the Court:

   **(1)  GRANTS IN PART** and **DENIES IN PART** Defendant's motion compel Plaintiffs' responses and document production, in response to Interrogatory No. 1 and RFP Nos. 1-3.  Plaintiffs are **ORDERED** to respond to Interrogatory No. 1 and produce responsive documents to RFP Nos. 1-3 as to the '589 Patent by **November 18, 2016**;

   **(2)  DENIES** Defendant's motion to compel Plaintiffs to produce all documents that "hit" on the parties' ESI search terms without further culling for relevance.

   **IT IS SO ORDERED.**

Dated:  11/3/2016

                              _____
                              Hon. Barbara L. Major
                              United States Magistrate Judge