UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLOWRIDER SURF, LTD., et al., | Case No.:  15cv1879-BEN (BLM) |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL DEFENDANT'S DISCOVERY RESPONSES** |
| v. | |
| PACIFIC SURF DESIGNS, INC., | |
| Defendant. | **[ECF No. 77].** |
| AND RELATED COUNTERCLAIMS | |

Currently before the Court is Plaintiffs' September 9, 2016 "Motion to Compel Defendant's Discovery Responses" [ECF No. 77 ("Mot.")], Defendant's September 16, 2016 opposition to the motion [ECF No. 84 ("Oppo.")], and Plaintiffs' September 23, 2016 reply [ECF No. 92 ("Reply")].  Having considered the briefing submitted by the parties and having reviewed

1  all of the supporting exhibits, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs'

2  motion for the reasons set forth below.

3  ### FACTUAL AND PROCEDURAL BACKGROUND

4  On August 24, 2015, Plaintiffs FlowRider Surf Ltd. ("FlowRider") and Surf Waves, Ltd.

5  ("Surf Waves") filed this suit against Defendant Pacific Surf Designs ("PSD") for patent

6  infringement.  ECF No. 1.  FlowRider is the exclusive global licensee of U.S. Patent No. 6,491,589

7  (the "'589 Patent") entitled "Mobile Water Ride Having Sluice Slide-Over Cover," issued on

8  December 10, 2002.  Id. at 3.  The '589 Patent is "generally directed to a simulated wave water

9  ride attraction having one or more water covers for ensuring the safety of riders and lowering

10 the risk of injury or interference with ride operation."  Id.  Plaintiff Surf Waves owns the U.S.

11 Patent No. 8,088,016 (the "'016 Patent"), entitled "Half-Pipe Water Ride," issued on January 3,

12 2012.  Id.  The '016 Patent is "generally directed to a half-pipe water ride including a substantially

13 flat middle section, a first curved sidewall, and a second curved sidewall opposite to the first

14 curved sidewall."  Id.

15 Defendant competes with Plaintiffs in the waterpark rides industry.  Plaintiffs accuse

16 Defendant PSD of making and selling infringing waterpark rides.  Specifically, Plaintiffs assert

17 that Defendant "makes, has made, imports, uses, offers for sale and/or sells products that

18 infringe one or more claims" of the patents-in-suit, including "ProFlow Single," "ProFlow Double,"

19 "ProFlow Triple," "ProFlow Quad," "ProFlow Mini Single," "ProFlow Mini Double," "ProFlow

20 Quarterpipe," "ProFlow Halfpipe," "Supertube," and PSD's unnamed refurbishment of surfing

21 rides (the "Accused Products.").  Id. at 4.  On October 22, 2015, Defendant counter-claimed

22 denying infringement of the '589 Patent and '016 Patent, and alleging that both patents are

23 invalid.  ECF No. 13 at 8-10.

On December 21, 2015, Plaintiffs[1] propounded their first set of interrogatories and requests for production ("RFPs").  ECF No. 77-1, Declaration of Shaun A. Hoting ("Hoting Decl.") at 2; id., Exhs. A-B.  Plaintiffs claim that Defendant's initial and supplemental responses consisted of boilerplate objections and lacked substance.  Mot. at 8-9.  Plaintiffs filed the instant motion asking the Court to compel the production of information regarding Defendant's foreign sales (RFP Nos. 44-45 and Interrogatory Nos. 2-3), refurbishment of surf rides (RFP Nos. 21, 44-45 and Interrogatory Nos. 2-3), and patent applications (RFP No. 41 and Interrogatory No. 9).  Id. at 13-23.

## **LEGAL STANDARD**

The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes.  See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).  District courts also have broad discretion to limit discovery to prevent its abuse.  See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the

---

[1] FlowRider and Surf Waves are wholly owned subsidiaries of Whitewater West Industries, Ltd. ("Whitewater").  See ECF No. 88 at 1.  Although Plaintiffs' motion to compel states that Whitewater is the entity that propounded discovery, for clarity, the Court will refer to "Whitewater" as "Plaintiffs."

information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Id. at 34(b)(2)(B). The responding party is responsible for all items in "the responding party's possession, custody, or control." Id. at 34(a)(1). Actual possession, custody or control is not required. Rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995).

An interrogatory may relate to any matter that may be inquired under Rule 26(b). Fed. R. Civ. P. 33(a)(2). "The grounds for objecting to an interrogatory must be stated with specificity," and any interrogatory not objected to must be answered fully in writing under oath. Fed. R. Civ. P. 33(b)(4).

Pursuant to Federal Rule of Civil Procedure 37, "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The party seeking to compel discovery has the burden of establishing that its request satisfies the relevance requirement of Rule 26. Soto, 162 F.R.D. at 610. Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of "clarifying, explaining, and supporting its objections." DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)).

4

**DISCUSSION**

**I.    Foreign Sales (RFP Nos. 44-45 and Interrogatory Nos. 2-3)**

Plaintiffs seek to compel information regarding Defendant's foreign sales, sought in RFP Nos. 44-45 and Interrogatory Nos. 2-3. See Mot. at 7, 13-15. Plaintiffs argue that the requested information is relevant to Defendant's infringement because under 35 U.S.C. § 271(a), offers made within the United States to sell an infringing product to an overseas buyer constitutes direct infringement. Id. at 13-14. Plaintiffs further argue that 35 U.S.C. § 271(f) imposes liability for supplying a patented invention's components from the United States, even if the patented product is made and sold in another country. Id. at 14. Plaintiffs also contend that the requested information is relevant to determine a reasonable royalty and to rebut a prima facie showing of obviousness. Id. at 15.

Defendant argues in its opposition that Plaintiffs ignore the territorial limits of patent law because "[a]n 'offer to sell' made *within* the United States that contemplates a 'sale' of goods *outside* of the United States is not within the permissible scope of liability for 35 U.S.C. § 271(a)." Oppo. at 5 (citing Cybiotronics, Ltd. v. Golden Source Elecs., Ltd., 130 F. Supp. 2d 1152, 1171 (C.D. Cal. 2001) (emphasis in original)). Defendant asserts that Plaintiffs' allegations are limited to direct infringement under 35 U.S.C. § 271(a), that Plaintiffs have not alleged infringement under 35 U.S.C. § 271(f) in their complaint and infringement contentions, and that therefore Plaintiffs cannot seek discovery regarding infringement theories they have not raised. Id. at 5, 10-11. Defendant also maintains that because *Plaintiffs'* patented products are at issue, its sales are not relevant to secondary considerations of non-obviousness, and that Plaintiffs already possess information concerning its U.S. sales. Id. at 11-12. Defendant thus asks the Court to

1  deny Plaintiffs' motion to compel documents and information concerning its foreign sales.  Id.

2  at 12.

3  In their reply, Plaintiffs argue that 35 U.S.C. § 271(f) creates liability for foreign sales and

4  that information concerning those sales is relevant.  Reply at 3.   Plaintiffs maintain that their

5  complaint contains allegations regarding Defendant's potential liability for indirect infringement

6  of the Asserted Patents, and argue that their infringement claims are not limited to direct liability

7  under 25 U.S.C. § 271(a).  Id. at 2-4.  Plaintiffs further allege that depending on the nature of

8  Defendant's foreign sales activity, such sales could also be found to infringe the Accused Patents

9  under 35 U.S.C. § 271(a), because offers made within the U.S. to sell an infringing product to

10  an overseas buyer could constitute direct infringement.  Id. at 2, 4 (citing CLS Bank Int'l v. Alice

11  Corp. Pty., 667 F. Supp. 2d 29, 37 (D.D.C. 2009)).  Finally, Plaintiffs  reassert their argument

12  that Defendant's foreign sales are relevant to determining a reasonable royalty and rebutting a

13  showing of obviousness.  Id. at 6-7.

14  **a.  <u>Applicable Law</u>**

15  35 U.S.C. § 271(a) provides in relevant part that "whoever without authority makes, uses,

16  offers to sell, or sells any patented invention, within the United States or imports into the United

17  States any patented invention during the term of the patent therefore, infringes the patent."  35

18  U.S.C. § 271(a).  "It is the general rule under United States patent law that no infringement

19  occurs when a patented product is made and sold in another country," and "[t]he presumption

20  that United States law governs domestically but does not rule the world applies with particular

21  force in patent law."  Microsoft Corp. v. AT & T Corp., 550 U.S. 437, 441, 454-55 (2007); see

22  also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 711 F.3d 1348, 1371 (Fed.

23  Cir. 2013) ("It is axiomatic that U.S. patent law does not operate extraterritorially to prohibit

6

infringement abroad."). However, 35 U.S.C. § 271(f)(1) provides an exception to the general rule that no infringement occurs when a patented product is made and sold in another country by providing the following:

> (1) Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

> (2) Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

35 U.S.C. § 271(f)(1).

United States patent laws "do not [ ] provide compensation for a defendant's foreign exploitation of a patented invention, which is not infringement at all." Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 711 F.3d 1348, 1371 (Fed. Cir. 2013). "Patent infringement damages . . . must compensate only for the consequences of domestic activities." Oracle Am., Inc. v. Google Inc., 798 F. Supp. 2d 1111, 1118 (N.D. Cal. 2011).

Commercial success is a "secondary consideration" relevant to the obviousness or non-obviousness of the patent, because "the law presumes an idea would successfully have been brought to market sooner, in response to market forces, had the idea been obvious to persons skilled in the art." Murata Mfg. Co., Ltd. v. Bell Fuse, Inc., 422 F. Supp. 2d 934, 936 n.1 (citing Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 17-18 (1966) and Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc., 395 F.3d 1364, 1376 (Fed. Cir. 2005)).

> The theory underlying the doctrine is that an invention enjoys commercial success because a need for the invention existed.  From the existence of this need and the readily available rewards, courts have been urged to conclude that a plaintiff's invention must be patentable, since the need would have been filled by others, at a much earlier date, if the solution was obvious.  Put another way, courts are urged to conclude that an invention which enjoys commercial success is nonobvious for, if the invention were obvious to make, it would have been discovered and exploited in the marketplace, long before plaintiff came along.

Murata Manufacturing Co., Ltd., 422 F. Supp. 2d at 936 n.1 (citation omitted).  As a limit on evidence of commercial success, a nexus is required between the merits of the patented invention and the evidence offered.  In re Paulsen, 30 F.3d 1475, 1482 (Fed. Cir. 1994).  This nexus ensures that evidence of commercial success is attributable to the inventions of the claims at issue, and not to "extraneous factors such as advertising and marketing," or to the features outside the claim.  Id.

**b.  Analysis**

RFP No. 44 seeks "[a]ll invoices, bills of lading, order forms, or purchase orders for Accused Product sold by PSD between December 10, 2002 to the present date."  Hoting Decl., Exh. A at 15.  Defendant responded that the request was overbroad, not proportional to the needs of the case and unduly burdensome, and that it would "produce non-privileged and non-work product invoices and purchase orders for sales of the Accused Products in the U.S. dating back to August 24, 2009, to the extent such documents exist and are in [its] possession, custody, or control."  Id., Exh. C at 63.

Plaintiffs' RFP No. 45 requests:

> All Documents constituting, referring or relating to the purchase, sale, and/or distribution of the Accused Products, including, without limitation, sales and return records, accounting and financial records, product pricing information, customer lists, purchase orders, advertising, website pages, and marketing materials from December 10, 2002 to present.

8

<u>Id.</u>, Exh. A at 15-16.  Defendant asserted the same objection as it did to RFP No. 44 and stated that it would "produce non-privileged and non-work product sales documents showing revenues, U.S. sales, profits, costs, and expenses for the Accused Products dating back to August 24, 2009, to the extent such documents exist and are in [its] procession, custody, or control." <u>Id.</u>, Exh. C at 64.

Interrogatory No. 2 requests the following:

> Identify and describe each and every Accused Product (past and present, chronologically, by name, model and serial number, if applicable), including without limitation each PSD surfing or other attraction having curved sidewalls or a cover associated with a fluid emitting element, that has been made, imported, sold, used, manufactured, or offered for sale by PSD between December 10, 2002, to the present date.  In providing an answer to this Interrogatory, list the number of units sold of each Accused Product, and identify each and every Person or entity PSD sold or offered for sale an Accused Product, and identify any other products sold in conjunction with any of the Accused Products.

<u>Id.</u>, Exh. B at 27-28.  Defendant objected in its initial and supplemental responses that the interrogatory was vague, ambiguous, compound, premature, sought information protected by the attorney-client privilege or the work product doctrine, and attempted to improperly shift Plaintiffs' burden of proof to Defendant.  <u>Id.</u>, Exh. D at 84-85; Exh. E at 110-11.  Defendant also objected that the interrogatory was overbroad and unduly burdensome because it sought information about products that had not been accused of infringement, and products that were "neither made, imported, sold, used, manufactured, nor offered for sale in the United States." <u>Id.</u>, Exh. D at 84-85; Exh. E at 111.  Defendant further stated that:

> [t]he installation of a Mahaka Double product was completed by approximately November 10, 2014 at The Barracks in College Station, Texas pursuant to an agreement dated December 18, 2013 between Pacific Surf Designs, Inc. and HMH Aquatic Enterprises, LLC. No other Accused Products have been sold or installed within the United States.

Id., Exh. D at 85; Exh. E at 111.   In its subsequent supplemental responses to the interrogatory, Defendant ███████████████████████████████████████████████████████████████████████████████████████████████████

Interrogatory No. 3 seeks the following:

For each Accused Product identified and/or described in response to "INTERROGATORY NO. 2:" as having been sold or offered for sale by PSD, identify and describe the full and complete sales detail information for the Accused Products, including but not limited to:

(a) the date each Accused Product was first offered for sale or sold and last offered for sale or sold;
(b) the historic retail sales price of each Accused Product;
(c) the date of any contract covering such sale or offer for sale;
(d) the name, principal contact Person(s), address, and telephone number of each customer to whom you sold or offered to sell each Accused Product;
(e) the name of the PSD Persons involved in and the circumstances surrounding the supplying, advertising, marketing, and sales of the Accused Products[;]
(f) the date and purchase order number of each purchase order from that customer made pursuant to the contract;
(g) the date(s) of each shipment of the Accused Products to that customer and the number of units shipped on each shipment date;
(h) the total number of units of Accused Products sold or offered for sale by PSD;
(i) the total dollar revenues for such sales;
(j) the average price per unit charged for such sales;
(k) PSD's income and expenses attributable to its sales of the Accused Products; and
(l) the gross profit and net incremental profit for each sale.

In providing an answer to this Interrogatory, with respect to the revenue, gross profit, and net incremental profit information, describe in detail how these were calculated, including without limitation the fixed and variable costs of manufacturing and selling each Accused Product and the type and manner of each calculation of each deduction used to arrive at net profits.

10

Id., Exh. B at 28-29.  Defendant objected in its original and supplemental responses that that the interrogatory was vague and ambiguous, compound, overboard, unduly burdensome, and sought information not proportional to the needs of the case.  Id., Exh. D at 86-87; Exh. E at 112-13.  Defendant further stated that:

> [t]he installation of a Mahaka Double product was completed by approximately November 10, 2014 at The Barracks in College Station, Texas pursuant to an agreement dated December 18, 2013 between Pacific Surf Designs, Inc. and HMH Aquatic Enterprises, LLC. No other Accused Products have been sold or installed within the United States.

Id., Exh. D at 87; Exh. E at 113.  In its supplemental responses to the interrogatory, Defendant

In this motion to compel, Plaintiffs assert that Defendant produced only two documents relating to its two sales in the U.S., but "no documents relating to any foreign sales or offers for sale of the Accused Products."  ECF No. 77-2, Declaration of Leanna C. Costantini ("Costantini Decl.") at 2.  The Court initially notes that Defendant provides no facts indicating what it construes as "foreign sales" and how it interprets "offers to sell."  See Oppo; see also Shah Decl.  Section 271(a) provides that "whoever without authority makes, uses, *offers to sell*, or *sells* any patented invention, within the United States . . . infringes the patent."  35 U.S.C. § 271(a) (emphasis added).  An "offer to sell" is to be interpreted by resorting to traditional contract analysis of what constitutes a commercial offer for sale.  Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1254-55 (Fed. Cir. 2000).  An "offer to sell" requires an "offer," whereby a party "communicate[s] a manifestation of willingness to enter into a

1    bargain, so made as to justify another person in understanding that his assent to that bargain

2    is invited and will conclude it."  MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,

3    420 F.3d 1369, 1376 (Fed. Cir. 2005) (quotation omitted) (finding that an e-mail which

4    described the accused product without price terms could not be construed as an offer to sell).

5    The alleged offer must also contemplate a commercial transaction that rises to the level of a

6    "sale" of the patented invention that would infringe the patent.  See Cybiotronics, Ltd. v.

7    Golden Source Electronics Ltd., 130 F. Supp. 2d 1152, 1170 (C.D. Cal. 2001) ("[L]iability under

8    Section 271(a) does not extend to 'offers to sell' which do not contemplate actual 'sales' of

9    goods to be consummated within the United States.").

10          "It is well-established that the reach of section 271(a) is limited to infringing activities

11   that occur within the United States."  MEMC Elec. Materials, Inc., 420 F.3d at 1375 (emphasis

12   added).  The Federal Circuit's recent opinions indicate that the location analysis for "offer for

13   sale" should look to the location of the future sale that would occur pursuant to that offer.

14   See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc., 617 F.3d

15   1296, 1309-10 (Fed. Cir. 2010); Halo Elec., Inc. v. Pulse Elec., Inc., 831 F.3d 1369 (Fed. Cir.

16   2016).  In Transocean Offshore Deepwater Drilling, Inc., the court stated that "[t]he focus

17   should not be on the location of the offer, but rather the location of the future sale that would

18   occur pursuant to the offer."  Id., 617 F.3d at 1309.  The court held that a "contract between

19   two U.S. companies for performance in the U.S. may constitute an offer to sell within

20   § 271(a)," and noted that the "fact that the offer was negotiated or a contract signed while

21   the two U.S. companies were aboard does not remove the case from statutory liability."  Id.

22   at 1310.  In Halo Elec., Inc., 831 F.3d at 1380, the court held that the alleged contract

23

negotiations in the U.S. regarding a product made and delivered outside of the U.S. was not an offer for sale within the United States.  Id.  The court reasoned as follows:

> We adopt the reasoning of *Transocean* and conclude here that Pulse did not directly infringe the Halo patents under the "offer to sell" provision by offering to sell in the United States the products at issue, because the locations of the contemplated sales were outside the United States.  Cisco outsourced all of its manufacturing activities to foreign countries, and it is undisputed that the locations of the contemplated sales were outside the United States.  Likewise, with respect to other Pulse customers, there is no evidence that the products at issue were contemplated to be sold within the United States.
>
> An offer to sell, in order to be an infringement, must be an offer contemplating sale in the United States. Otherwise, the presumption against extraterritoriality would be breached.  If a sale outside the United States is not an infringement of a U.S. patent, an offer to sell, even if made in the United States, when the sale would occur outside the United States, similarly would not be an infringement of a U.S. patent.  We therefore hold that Pulse did not offer to sell the products at issue within the United States for purposes of § 271(a).

Id.

Further, a "sale" within the meaning of 35 U.S.C. § 271(a) is "not limited to the transfer of tangible property; a sale may also be the agreement by which such a transfer takes place." Transocean Offshore Deepwater Drilling, 617 F.3d at 1311.  The court in Transocean Offshore Deepwater Drilling held that a contract between two U.S. companies for the sale of the patented invention with delivery and performance in the U.S. constituted a "sale" under 35 U.S.C. § 271(a).  Id.

The Court therefore finds that Defendant does not have to provide discovery regarding its foreign sales and offers to sell that result in foreign sales as those phrases are interpreted by the Federal Circuit in Transocean Offshore Deepwater Drilling, Inc., 617 F.3d at 1309-11 and Halo Elec., Inc., 831 F.3d at 1380.  If any of Defendant's sales or offers to sell do not

constitute foreign sales as interpreted by the Federal Circuit in the cited cases, then Defendant must provide supplemental responses as to any such sales.[2]  As previously noted, Defendant has not provided any evidence establishing how it is defining foreign sales and offers to sell. Accordingly, Plaintiffs may conduct focused discovery to determine whether the sales and offers to sell that Defendant is labeling as foreign sales constitute foreign sales under the applicable law set forth in this order.

Defendant also asserts that Plaintiffs' allegations are limited to direct infringement under 35 U.S.C. § 271(a), that Plaintiffs have not alleged infringement under 35 U.S.C. § 271(f) in their complaint and infringement contentions, and that therefore Plaintiffs cannot seek discovery regarding infringement theories that they have not raised.  Oppo. at 5, 10-11. Plaintiffs' complaint alleges the following:

> Plaintiffs are informed and believe that Defendant has and continues to infringe, contributory infringe, and/or induce infringement of one or more of the Patents-in-Suit by knowingly and actively (making, having made, importing, using, offering for sale and/or selling products that infringe one or more claims of the Patent-in-Suit, including, but not limited to the Accused Products, (2) inducing others to do the same, and (3) contributing to the manufacture, import, use sale, or offer for sale of products that infringe one or more claims of the Patents-in-Suit.

---

[2]  The Court notes that Plaintiffs' RFP Nos. 44-45 and Interrogatory No. 3 seek documents and information dating back to December 10, 2002.  See Hoting Decl., Exh A at 15-16, Exh. B at 27-28.  Defendant objected to RFP Nos. 44-45 and Interrogatory No. 3 stating, inter alia, that they were overly broad and unduly burdensome because they sought financial documents dating back more than six years prior to the filing date of this action.  Exh. C at 63-64; D at 85.  With respect to RFP Nos. 44-45, Defendant offered to produce certain responsive documents dating back to August 24, 2009.  Id., Exh. C at 63-64.  Neither party raised the issue of the temporal scope of the above discovery requests in their briefs.  See Mot.; Oppo.; Reply. The Court therefore uses the date suggested by Defendant and implicitly accepted by Plaintiffs, and limits the temporal scope of the above requests to the time period beginning on August 24, 2009.

ECF No. 1 at 5, <u>see also</u> <u>id.</u> at 6-7.  Plaintiffs' infringement contentions specifically reserve the right to amend or supplement.  ECF No. 70-4, Exh. A at 3, 6-8.  Plaintiffs contentions also state that "[t]o the extent it is later learned in discovery that Defendant has induced other entities or individuals or otherwise contributed to the infringement by other entities or individuals by selling, ordering to sell, and/or importing material *components* of the asserted claims that have no substantial non-infringing uses, Plaintiffs reserve the right to contend that Defendant indirectly infringes those asserted claims."  <u>Id.</u> at 5.  As such, Plaintiffs have alleged not only direct infringement under 35 U.S.C. § 271(a), but also indirect infringement in violation of other provisions of 35 U.S.C. § 271, and infringement involving component sales in violation of 35 U.S.C. § 271(f).  <u>See id.</u>; ECF No.1; <u>see also</u> Reply at 3-4; <u>Microsoft Corp.</u>, 550 U.S. at 449 ("Section 271(f) applies to the supply abroad of the "components of a patented invention, where *such components* are uncombined in whole or in part, in such manner as to actively induce the combination of *such components*.") (emphasis in original).  The Court therefore finds that, under the discovery standard set forth in Rule 26(b), Defendant must provide supplemental responses regarding component sales that are relevant to Plaintiffs' allegations of violations of 35 U.S.C. § 271(f).

## II.   **Information Relating to Defendant's Refurbishment of Surf Rides (RFP Nos. 21, 44-45 and Interrogatory Nos. 2-3)**

Plaintiffs move to compel documents and information relating to Defendant's refurbishment of surf rides, in response to RFP Nos. 21, 44-45 and Interrogatory Nos. 2-3. Mot. at 15-20.  In support, Plaintiffs argue that Defendant's surf ride refurbishments are an accused product in this case, and that Defendant is potentially liable for direct or contributory

infringement based on Flow Services Inc.'s ("Flow Services")[3] refurbishments.  See id. at 16-17.  Plaintiffs assert that the bounds of discovery are not circumscribed by their infringement contentions, and that they have alleged in their complaint that Defendant's infringement conduct included not only direct, but also indirect[4] infringement.  Id. at 16.  Plaintiffs also claim that Defendant and Flow Services appear to be "in all material respects the same entity" because both companies were founded by Defendant's CEO Yong Yeh and share the same business address, and that, consequently, Flow Services' direct infringement should be imputed to Defendant.  See id. at 17 (citing Hoting Decl. at 5; id., Exhs. P-R).

Defendant alleges in its opposition that Plaintiffs are improperly seeking refurbishment documents that are maintained by a third party, Flow Services.  Oppo. at 5.  Defendant asserts that because Flow Services has not been named as a defendant and has not been subpoenaed, Plaintiffs cannot use this motion to compel "as an end-run around" the Court's Patent Local Rules.  See id. at 6, 12-13.  Defendant further alleges that Flow Services claims on its website that it is responsible for refurbishment services, and that despite this publicly available information, Plaintiffs have not alleged in their infringement contentions that Flow Services infringed any claims, and/or that Defendant induced Flow Services to infringe any claims.  Id. at 12-13 (citing Exh. 5).  Defendant also argues that Plaintiffs have not alleged an alter ego theory sufficient to pierce the corporate veil and are improperly seeking to impose vicarious liability upon Defendant for alleged actions of Flow Services.  Id. at 6, 13.

---

[3]  Plaintiffs contend that Flow Services is the company through which Defendant refurbishes surf rides.  Id. at 16.

[4]  Plaintiffs reference their complaint allegations that Defendant was "inducing others to do the same" and "contributing to the manufacture, import, use, sale, or offer for sale of products that infringe one or more claims of the Patents-in-Suit."  Id. (citing ECF No. 1 at 5).

16

1    Plaintiffs reply that Defendant's surf ride refurbishments are an accused product in this

2  case and that Defendant fails to justify withholding information regarding the refurbishments.

3  Reply at 2.   Plaintiffs claim that the surf ride refurbishments at issue are relevant to

4  Defendant's liability, and that because Defendant does not argue that it lacks possession,

5  custody, or control over Flow Services' sales information, the Court should compel the

6  production of documents and information relating to the refurbishment activities, regardless

7  of whether the contracting party for those sales was Defendant or Flow Services.  Id. at 2, 7-

8  10.   Plaintiffs also claim that it is unclear whether Defendant is alleging that none of its

9  refurbishment activities are subject to disclosure or whether it is withholding information

10  regarding Flow Services' refurbishment activities only, and argue that both positions lack

11  merit.   Id. at 8.   Plaintiffs maintain that Defendant should be compelled to produce

12  refurbishment contracts it entered into directly.  Id.  Plaintiffs further assert that Defendant is

13  required to produce responsive information in its "possession, custody, or control" pursuant

14  to Fed. R. Civ. P. 34, and that Defendant owns and controls Flow Services because both

15  companies were founded by Defendant's CEO Yong Yeh and share the same business address.

16  Id. at 9; Hoting Decl., Exhs. P-R.   Finally, Plaintiffs allege that if discovery establishes that

17  Defendant and Flow Services are separate entities, they will amend their complaint to add

18  Flow Services as a party; and if discovery establishes that Flow Services is a shell company

19  through which Defendant refurbished surf rides, such amendment is not necessary.  Reply at

20  9.

21

22

23

### a. __Applicable Law__

With regard to discovery requests, the responding party is responsible for all items in "the responding party's possession, custody, or control."  Fed. R. Civ. P. 34(a)(1).  "A party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document."  Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995); see also Bryant v. Armstrong, 285 F.R.D. 596, 603 (S.D. Cal. 2012) (stating that the term "control" is broadly construed, and includes documents that the responding party has the legal right to obtain from third parties); In re Citric Acid Litig., 191 F.3d 1090, 1107 (9th Cir. 1999) ("Control is defined as the legal right to obtain documents upon demand.").  "Common relationships between a party and its related nonparty entity are particularly important to the determination of control . . . [and] include the ownership of the nonparty, any overlap of directors, officers, and employees, and the financial relationship between the two entities."  Stella Sys., LLC v. MedeAnalytics, Inc., 2015 WL 1870052, at *3 (N.D. Cal. Apr. 22, 2015) (quoting Steele Software Sys., Corp. v. DataQuick Info. Sys., Inc., 237 F.R.D. 561, 564 (D. Md. 2006)).  In determining whether a responding party has the requisite control within the meaning of Rule 34, courts have considered the corporate structure of the party and nonparty, the nonparty's connection to the transaction at issue in the litigation, the degree that the nonparty will benefit from the outcome of the case, whether the related entities exchange documents in the ordinary course of business, and whether the nonparty has participated in the litigation at issue.  See id.  The party seeking production of the documents bears the burden of proving that the opposing party has control.  Quintero–Perez v. U.S., 2016 WL 705904, at *2 (S.D.

1  Cal. Feb. 23, 2016) (citing <u>U.S. v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO</u>, 870

2  F.2d 1450, 1452 (9th Cir. 1989)).

3      **b.**   <u>**Analysis**</u>

4      Plaintiffs' Interrogatory Nos. 2 & 3, RFP Nos. 44-45, and Defendant's responses to those

5  interrogatories and requests are discussed in detail *supra*, Section I.  The remaining request

6  at issue, Plaintiffs' RFP No. 21, seeks "[a]ll Documents relating to Flow Services and the

7  relationship between PSD and Flow Services." Hoting Decl., Exh. A at 11.  Defendant objected

8  that the interrogatory was vague, ambiguous, overboard, unduly burdensome, sought

9  documents protected by the attorney-client privilege or work product doctrine, was not

10 proportional to the needs of the case, and refused to produce any responsive documents.  <u>Id.</u>,

11 Exh. C at 48.

12     As discussed above, Plaintiffs allege in their complaint direct and contributory

13 infringement by Defendant.  <u>See</u> ECF No. 1 at 5-7.  Because Plaintiffs claim that Defendant's

14 surf ride refurbishments are an accused product in this case [<u>see</u> <u>id.</u> at 4-5], such

15 refurbishments are relevant to Defendant's alleged liability for direct and/or contributory

16 infringement.  Accordingly, Defendant is **ORDERED** to produce responsive documents and

17 information regarding its surf ride refurbishments, including refurbishment contracts it directly

18 entered into with third parties, subject to the Court's guidance provided *supra* in Section I.

19     Turning to responsive refurbishment documents and information maintained by

20 nonparty Flow Services, Plaintiffs, as the party seeking production, bear the burden of proving

21 that Defendant has control over the requested documents and information.  <u>See</u> <u>Int'l Union</u>

22 <u>of Petroleum and Indus. Workers, AFL-CIO</u>, 870 F.2d at 1452 (providing that "[t]he party

23

seeking production of the documents . . . bears the burden of proving that the opposing party has such control.").  Based on the evidence before the Court, Plaintiffs have not met this burden.  Although Defendant's CEO founded Defendant and Flow Services and both companies share the same business address, such factors, without more, are insufficient to establish the requisite control.  See Stella Sys., LLC, 2015 WL 1870052, at *3; Steele Software Sys. Corp., 237 F.R.D. at 564.  The Court thus **DENIES WITHOUT PREJUDICE** Plaintiffs' motion to compel the production of documents and information regarding Flow Services' surf ride refurbishments maintained by nonparty Flow Services.

However, Plaintiffs are entitled to conduct discovery to determine the relationship between Defendant and Flow Services.  The Court finds Plaintiffs' request in RFP No. 21 for "all documents relating to Flow Services" overbroad and not proportional to the needs for the case.  See Fed. R. Civ. P. 26(b)(1).  Accordingly, the Court **GRANTS IN PART** Plaintiffs' motion to compel further production in response to RFP No. 21 and **ORDERS** Defendant to provide documents relating to "the relationship between PSD and Flow Services."  Plaintiffs also may conduct additional discovery designed to determine whether Defendant has possession, custody and control over the refurbishment documents created and maintained by Flow Services.

III.    **Pending Patent Applications (RFP No. 41 and Interrogatory No. 9)**

Plaintiffs ask the Court to compel Defendant to produce information relating to its pending patent applications.  Mot. at 7-8, 20-23.  Plaintiffs argue that Defendant's pending patent applications are relevant to infringement, invalidity, claim construction, willfulness, prior art, and equivalency.  Id. at 7-8.  Plaintiffs claim that the requested information is

1  relevant because Defendant's products, the ProFlow line and the Supertube, are alleged to

2  infringe the Asserted Patents, and because Defendant advertises the products as practicing

3  its issued or pending patents.[5]  Id. at 20 (citing Hoting Decl. at 6; id., Exhs. V-W).  Plaintiffs

4  also assert that Defendant's opinions about whether the Accused Products are covered by

5  such products are not privileged.  See Mot. at 23 (citing Fed. R. Civ. P. 33(a)(2) ("[A]n

6  interrogatory is not objectionable merely because it asks for an opinion or contention that

7  relates to fact or the application of law to fact."); Notes of Advisory Committee on Rules (1970)

8  Amendment to Subdivision (b) ("As to requests for opinions or contentions that call for the

9  application of law to fact, they can be most useful in narrowing and sharpening the issues,

10  which is a major purpose of discovery.")).   Plaintiffs further assert that Defendant's

11  confidentiality objections are waived, because Defendant did not raise them in its responses,

12  and that the parties' Protective Order adequately addresses Defendant's confidentiality

13  concerns.  Id. at 7-8, 21-22.

14      Defendant argues that Plaintiffs' request for pending, unpublished patent applications

15  is overbroad and seeks irrelevant information, because such applications are not related to

16  the asserted patents and are not directed to the two types of products it manufactures.  See

17  Oppo. at 14-15.   Defendant alleges that companies routinely seek patent protection on

18

_____

19

20  [5] Plaintiffs allege that the requested information will help them "[u]nderstand[] how [Defendant]
uses terms and technology with respect to its patents in comparison to its statements and
characterizations of the exact same products accused of infringement in this case."  Id. at 20-
21.  Plaintiffs also argue that because Defendant identified in its invalidity contentions prior art

21  that it contends renders the Asserted Patents invalid, "[t]o the extent that any such prior art is
mentioned in [Defendant's] patent applications for the accused products, how [Defendant]

22  characterizes them is highly relevant to the scope of the prior art–particularly if such admissions
contradict [Defendant's] statements in this case."  Id. at 21.

23

15cv1879-BEN (BLM)

products that they "anticipate are coming to market" or believe to be novel, and that, consequently, such patent applications are not always relevant.  See id. at 14.  Defendant contends that it offered to produce unpublished, pending patent applications that "cite or discuss either of the [A]sserted [P]atents" or "mention the inventors of the [A]sserted [P]atents, or any prior art references relied upon by [Defendant] in its invalidity contentions or inter partes review positions."  Id.  Defendant also claims that its counsel's advice concerning whether the Accused Products are covered by its patents and applications [see Interrogatory No. 9] is privileged under the work-product doctrine.  Id. at 15.  In support, Defendant claims that the interrogatory seeks "opinions of counsel regarding the scope of the patents and the operation of the products" and requires its attorneys "to perform an analysis that they have not already made."  Id.  Defendant states that it offered to disclose the following non-privileged responsive information: (1) whether it marked any of its accused products with a patent number pursuant to 35 U.S.C 287(a)" (which it claims it did not), and (2) "whether either of its two employees have an understanding of Interrogatory No. 9 outside of discussions with counsel" (which they did not).  Id. (emphasis omitted) (citing Hoting Decl., Exh. F).

Plaintiffs reply that they only seek the production of Defendant's "patent applications that relate to the subject matter in this case—water rides."  Reply at 10.  Plaintiffs assert that Defendant has not produced any requested responsive documents, and that Defendant's proposed production may exclude "applications related to the subject matter of this case . . . that fail to disclose . . . the relevant prior art."  Id. at 10-11.  Plaintiffs also assert that Defendant's response to Interrogatory No. 9 is insufficient, and that Defendant's unverified

1  statement made for the first time in its opposition does not satisfy Rules 26 and 33.  Id. at

2  11.

3          a.  **Applicable Law**

4        Courts have recognized an important interest in preserving the secrecy of pending or

5  abandoned patent applications.  See Tristrata Tech., Inc. v. Neoteric Cosmetics, Inc., 35 F.

6  Supp. 2d 370, 372 (D. Del. 1998); Caliper Techs. Corp. v. Molecular Devices Corp., 213 F.R.D.

7  555, 562 (N.D. Cal. 2003).  In order to determine whether to order the disclosure of pending

8  or abandoned patent applications, courts apply a balancing test and consider the following

9  factors: the relevancy of the requested information, the availability of the information absent

10  disclosure, the potential harm resulting from disclosure, and the availability of means to reduce

11  the potential harm.  Id.  "Many courts have concluded that [pending and abandoned patent

12  applications that are related to the patent-in-suit] are relevant because they may contain

13  information or admissions that clarify, define or interpret the claims of the patent in suit."

14  Caliper Techs. Corp., 213 F.R.D. at 561 (internal quotation marks and citation omitted); see

15  also Zest IP Holdings, LLC v. Implant Direct Mfg., LLC, 2011 WL 5525990, at *1 (S.D. Cal.

16  Nov. 14, 2011) ("Relevant evidence regarding willful infringement, prior art, and equivalency

17  may be present within [defendant's] patent applications."); Morvil Tech., LLC, 2012 WL

18  1965385, at *2 (finding that defendant's pending patent applications that mentioned the

19  inventor of the patent at issue or any prior art reference relied on by defendant in its invalidity

20  contentions were relevant).

21        "[A] party may not discover documents and tangible things that are prepared in

22  anticipation of litigation or for trial by or for another party or its representative (including the

23

1   other party's attorney, consultant, surety, indemnitor, insurer, or agent)."   Fed. R. Civ. P.

2   26(b)(3)(A).   Nevertheless, those materials may be discovered if "(i) they are otherwise

3   discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the

4   materials to prepare its case and cannot, without undue hardship, obtain their substantial

5   equivalent by other means."   Id.   However, even when substantial need for work product has

6   been shown, the court must still "protect against disclosure of the mental impressions,

7   conclusions, opinions, or legal theories of a party's attorney or other representative concerning

8   the litigation."   Fed. R. Civ. P. 26(b)(3)(B).

9        **b.   Analysis**

10            **(1)   RFP No. 41**

11        Plaintiffs' RFP No. 41 requests: "[a]ll PSD issued patents, pending patent applications,

12   abandoned, or otherwise inactive patent applications (U.S. and foreign), including any related

13   patent file histories, that relate to any waterslides, including but not limited to waterslides that

14   utilize a nozzle cover and/or curved sidewalls."   Hoting Decl., Exh. A at 15.   Defendant objected

15   that the request was vague, ambiguous, overbroad, unduly burdensome, not proportional to

16   the needs of the case, sought documents protected by the attorney-client privilege or work

17   product doctrine, and requested "documents and things that [wer]e publicly available and

18   accessible to Plaintiffs."   Id., Exh. C at 61-62.   Plaintiffs subsequently offered to narrow the

19   scope of the request to Defendant's pending patent applications, which are not publicly

20   available, but Defendant refused to produce the documents asserting relevancy objections.

21   See Mot. at 20; Hoting Decl., Exh. H at 132 (containing the parties correspondence in which

22   Plaintiffs asked Defendant to produce "any pending patent applications, abandoned, or

23

otherwise inactive patent applications (U.S. and foreign) that relate to any waterslides."); id., Exh. J at 144.  Because Plaintiffs offered to narrow the scope of RFP No. 41, the Court will analyze the request as limited by Plaintiffs.

When determining whether to order disclosure of pending or abandoned patent applications courts balance the objecting party's interest in secrecy with the requesting party's interest in disclosure.  See Tristrata Tech., Inc., 35 F. Supp. at 372; Caliper Techs. Corp., 213 F.R.D. at 562.  Both parties seem to agree that unpublished, pending patent applications that cite or discuss either of the asserted patents or mention the inventors of the asserted patent, or any prior art references relied upon by Defendant in its invalidity contentions or *inter partes* review petitions are relevant.  See Oppo. at 14; Mot. at 20-21, 23; Reply at 10-11.  However, Plaintiffs seek broader production of "all [Defendant's] patent applications that relate to the subject matter in this case."  Reply at 11.  The Court finds that Plaintiffs' suggested limitation to the "subject matter of this case" is too broad.  The Court therefore limits the scope to pending patent applications that mention the Asserted Patents, the inventors of the Asserted Patents, and any prior art identified in Defendant's invalidity contentions and finds that with such limitations any such applications would be relevant to this case.  See Caliper Techs. Corp., 213 F.R.D. at 561 (pending and abandoned patent applications related to the patent-in-suit are relevant because they "may contain information or admissions that clarify, define or interpret the claims of the patent in suit."); Zest IP Holdings, LLC, 2011 WL 5525990, at *1 ("[r]elevant evidence regarding willful infringement, prior art, and equivalency may be present within [defendant's] patent applications."); Morvil Tech., LLC, 2012 WL 1965385, at *2 (finding that pending patent applications that mention the inventor of the patent at issue or

1    any prior art reference relied on by defendant in its invalidity contentions were "directly

2    relevant" to the case)).  As limited, this factor weighs in favor of disclosure.  <u>See</u> <u>id.</u>

3       Turning to the availability of the information absent disclosure, Defendant's pending

4    patent applications are likely not publicly available and accessible to Plaintiffs.  <u>See</u>, <u>e.g.</u>, 35

5    U.S.C. § 122(b)(1)(A) (providing in relevant part that "each application for a patent shall be

6    published . . . after the expiration of a period of *18 months* from the earliest filing date for

7    which a benefit is sought); 35 U.S.C. § 122(b)(2) (providing that patent applications are not

8    published if they fall within listed exceptions).  Accordingly, this factor also weighs in favor of

9    disclosure.

10       The Court recognizes that Defendant has an important interest in maintaining the

11    secrecy of its pending and abandoned patent applications and that any harm resulting from

12    unauthorized disclosure of such applications may be significant.  This factor therefore weighs

13    against disclosure.  However, the parties have negotiated a Protective Order, which the Court

14    entered in this case [ECF No. 24], and the Court finds that disclosure pursuant to the parties'

15    Protective Order significantly reduces any potential harm from disclosure.  <u>See</u> <u>Morvil Tech.,</u>

16    <u>LLC</u>, 2012 WL 1965385, at *2 (finding that protective order addressed confidentiality concerns

17    regarding the disclosure of pending patent applications); <u>Zest IP Holdings</u>, 2011 WL 5525990,

18    at *1-2 (same); <u>Caliper Techs. Corp.</u>, 213 F.R.D. at 562 (same).

19       After balancing the above factors, the Court finds that the disclosure of Defendant's

20    pending patent applications that mention the Asserted Patents, the inventors of the Asserted

21    Patents, or any prior art identified in Defendant's invalidity contentions, or inter partes review

22    positions, is warranted in this case.  Defendant is **ORDERED** to produce such documents to

23

15cv1879-BEN (BLM)

Plaintiffs.   See Morvil Tech., LLC, 2012 WL 1965385, at *2 (ordering the production of defendant's abandoned patent applications that defendant agreed to produce, pending patent applications or their relevant portions that mentioned the inventor of the patent at issue or any prior art reference relied on by defendant in its invalidity contentions); Caliper Techs. Corp., 213 F.R.D. at 562 (ordering the production of the objecting party's patents and pending patent applications, U.S. and foreign, that related to the invention in the patent at issue).

### (2)   Interrogatory No. 9

Interrogatory No. 9 requests the following:

> If PSD contends or believes that any of the Accused Products are covered by or related to issued patents (U.S. and foreign) or pending, abandoned, or otherwise inactive patent applications (U.S. and foreign), identify such patents and patent applications, and identify what aspect of the Accused Products are covered by or related to said patents and patent applications.

Hoting Decl., Exh. B at 30.   Defendant refused to answer claiming in its initial and supplemental responses that the interrogatory was vague, ambiguous, compound, sought information not proportional to the needs of the case, and attempted to shift Plaintiffs' burden of proof.   See id., Exh. D at 94-95; id., Exh. E at 121-22.   Plaintiffs subsequently narrowed the scope of the interrogatory to patent applications "belonging or assigned" to Defendant,[6] but Defendant refused to respond asserting that the information was privileged and/or

---

[6]   The full text of the Interrogatory No. 9, as limited by Plaintiffs stated:

> If PSD contends or believes that any of the Accused Products are covered by or related to issued patents (U.S. and foreign) or pending, abandoned, or otherwise inactive patent applications (U.S. and foreign) **belonging or assigned to PSD**, identify such patents and patent applications, and identify what aspect of the Accused Products are covered by or related to said patents and patent applications.

Id., Exh. O at 164 (emphasis in original).

irrelevant, and could be obtained through a deposition.  Id., Exh. O at 161, 163-64.  Defendant offered to disclose the following non-privileged responsive information: (1) whether it marked any of its accused products with a patent number pursuant to 35 U.S.C 287(a), and (2) "whether either of its two employees have an understanding of Interrogatory No. 9 outside of discussions with counsel."  See Oppo. at 15; Hoting Decl., Exh. F; Id., Exh. O at 161 (Defendant offered to ask its two employees "if they have [] personal opinions about patents or applications covering the accused products that are not based on the advice of counsel.").

Defendant provided supplemental responses to Interrogatory No. 9 stating that ███

███████████████████████████████████████████████████████

███████████████████████████████ In its reply to the instant motion to compel Defendant appears to represent that its two employees did not have an understanding of Interrogatory No. 9 outside of discussion with counsel, but Defendant did not disclose this information in its interrogatory responses.  See id.  Defendant's purported interrogatory answer provided for the first time in its opposition to Plaintiffs' motion to compel is insufficient.  See Fed. R. Civ. P. 33(b)(3) (stating that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."); Fed. R. Civ. P. 26(g)(1) (providing that "[e]very discovery . . . response, or objection must be signed by at least one attorney of record in the attorney's own name. . . .").  As such, Defendant must provide a supplemental response that complies with the applicable Federal Rules of Civil Procedure.

However, the Court agrees with Defendant that Interrogatory No. 9 seeks privileged information implicating Defendant's counsel's opinions "regarding the scope of the patents and the operation of the products" and requires its attorneys "to perform an analysis that they

have not already made." <u>See</u> Oppo. at 15-16; <u>see also</u> Fed. R. Civ. P. 26(b)(3)(A) (providing that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . ."). Defendant is therefore **ORDERED** to supplement its response to Interrogatory No. 9 with non-privileged responsive information, indicating the knowledge of its two employees outside of discussions with counsel, but Plaintiffs' motion to compel further responses to this interrogatory is **DENIED**.

### SUMMARY AND CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion compel Defendant's responses and document production. Defendant is **ORDERED** to provide further responses and produce responsive documents, as directed in this Order, by **November 18, 2016**.

**IT IS SO ORDERED.**

Dated:  11/3/2016

Hon. Barbara L. Major
United States Magistrate Judge

29