1  TROUTMAN SANDERS LLP
   Charanjit Brahma, CA Bar No. 204771
2  charanjit.brahma@troutman.com
   Mark C. Mao, CA Bar No. 236165
3  mark.mao@troutman.com
   580 California Street, Suite 1100
4  San Francisco, CA 94104
   Telephone: 415.477.5700
5  Facsimile:  415.477.5710

6  TROUTMAN SANDERS LLP
   Christopher Franich, CA Bar No. 285720
7  chris.franich@troutman.com
   11682 El Camino Real, Suite 400
8  San Diego, CA 92130-2092
   Telephone: 858.509.6000
9  Facsimile:  858.509.6040

10 Attorneys for Defendant
   Pacific Surf Designs, Inc.

11

12              UNITED STATES DISTRICT COURT

13              SOUTHERN DISTRICT OF CALIFORNIA

14

15 FLOWRIDER SURF, LTD., a          Case No. 3:15-CV-01879
   Canadian corporation; and SURF
16 WAVES, LTD., a company           **MEMORANDUM OF POINTS AND**
   incorporated in the United Kingdom,  **AUTHORITIES IN SUPPORT OF**
17                                   **DEFENDANT'S RENEWED**
                Plaintiffs,          **MOTION FOR ATTORNEYS' FEES**
18
   v.                               Date:
19                                  Time:
   PACIFIC SURF DESIGNS, INC., a    Judge:    Hon. Roger T. Benitez
20 Delaware corporation,

21              Defendant.

22

23

24

25

26

27

28

TROUTMAN SANDERS LLP
11682 El Camino Real, Suite 400
San Diego, CA 92130-2092

# TABLE OF CONTENTS

TABLE OF EXHIBITS ............................................................................................ iv

TABLE OF ABBREVIATIONS............................................................................. vi

I.  INTRODUCTION ......................................................................................... 1

II.  FACTS ESTABLISHING THE EXCEPTIONAL NATURE OF THIS CASE ................ 2

    A.  The '016 Patent ................................................................................... 2

        1.  Plaintiffs Broadly Interpreted Claim Elements In This Court Despite PSD Identifying the '589 Patent as Prior Art ................ 2

        2.  Plaintiffs Take Inconsistent Positions in the IPR Proceeding And the PTAB Finds All of the Asserted '016 Patent Claims Unpatentable ................................................................................. 4

        3.  Federal Circuit Summarily Affirms Plaintiffs' Appeal From the PTAB Decision Based Solely on Waived Arguments ................. 6

        4.  PSD Attempted to Reduce the Needless Expenditure of Fees in Light of Plaintiffs' Frivolous and Contradictory Positions....... 7

        5.  Plaintiffs Waited Until After the Parties Prepared Expert Reports Before Informing PSD That They Were Not Seeking Damages on the '016 Patent ............................................................................. 9

    B.  The '589 Patent ................................................................................... 9

        1.  "Whitewater" Represents That All Responsive Documents Were Produced................................................................................. 9

        2.  Plaintiffs Conceal That Plaintiff Flowrider Ceased to Exist for Eight Months, Forcing PSD to File a Motion to Dismiss ........ 10

III.  LEGAL STANDARD .................................................................................. 12

    A.  Attorneys' Fees Pursuant to 35 U.S.C. § 285 .................................... 13

    B.  Attorneys' Fees Pursuant to 28 U.S.C. § 1927 .................................. 13

    C.  Court's Inherent Powers to Sanction Misconduct.............................. 14

IV.  ARGUMENT ............................................................................................. 14

    A.  PSD Should Be Awarded Its Fees Related to Plaintiffs' Exceptionally Weak '016 Patent Claim Under 35 U.S.C. § 285 ................................ 15

        1.  Plaintiffs' Position Was Exceptionally Weak ......................... 15

        2.  Plaintiffs Litigated This Case in an Unreasonable Manner ..... 18

    B.  Plaintiffs and Their Counsel Acted in Bad Faith with Regard to the '589 Patent, so PSD Should Be Awarded Its Fees Under 28 U.S.C. § 1927 ............... 19

    C.  The Court Should Exercise Its Inherent Power to Award PSD Its Attorneys' Fees, Expert Fees, and Non-Taxable Costs ........................ 23

    D.  PSD Is Reasonably Entitled to an Award of All of Its Fees Expended in This Case, Including the IPR and Related Appeal ................................ 23

V.  CONCLUSION ........................................................................................... 25

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amsted Indus. v. Buckeye Steel Castings Co.*,
   23 F.3d 374 (Fed. Cir. 1994)....................................................................14

*B.K.B. v. Maui Police Dep't*,
   276 F.3d 1091 (9th Cir. 2002)..................................................................14

*Beckman Instruments, Inc. v. LKB Produkter AB*,
   892 F.2d 1547 (Fed. Cir. 1989).................................................................18

*Carlock v. Collins Motor Co.*,
   No. 04cv0370-J-RBB, 2008 WL 943037 (S.D. Cal. Apr. 7, 2008) ..........15

*Deep Sky Software, Inc. v. Southwest Airlines Co.*,
   No. 10-cv-1234-CAB-KSC, 2015 WL 11202634 (S.D. Cal. June 1, 2015)......................20, 25

*Deep Sky Software, Inc. v. Southwest Airlines Co.*,
   No. 3:10-cv-1234-CAB-KSC, 2015 WL 10844231 (S.D. Cal. Aug. 19, 2015) ................24, 25

*Digital Empire Ltd. v. Compal Elecs. Inc. Grp.*,
   No. 14cv1688-DMS-KSC, 2015 WL 1570939 (S.D. Cal. Dec. 11, 2015),
   *recon. denied*, 2016 WL 4385190 (S.D. Cal. Mar. 1, 2016)........................14, 20, 23

*Drone Techs., Inc. v. Parrot S.A.*,
   No. 2:14-cv-00111-AJS, 2015 WL 4545291 (W.D. Pa. July 21, 2015) ..................24

*Fagundes v. Charter Builders, Inc.*,
   No. C 07-1111, 2008 WL 268977 (N.D. Cal. Jan. 29, 2008) ....................20

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001).....................................................................14

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
   876 F.3d 1372 (Fed. Cir. 2017).................................................................15

*Kilopass Tech., Inc. v. Sidense Corp.*,
   738 F.3d 1302 (Fed. Cir. 2013)............................................................13, 24

*Kilopass Tech. Inc. v. Sidense Corp.*,
   No. C 10-02066 SI, 2014 WL 3956703 (N.D. Cal. Aug. 12, 2014) ..........19

*Lahiri v. Universal Music & Video Distrib. Corp.*,
   606 F.3d 1216 (9th Cir. 2010)...................................................................14

*MarcTec, LLC v. Johnson & Johnson*,
   664 F.3d 907 (Fed. Cir. 2012) ................................................................................14, 23

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   134 S. Ct. 1749 (2014) ............................................................................................13, 15

*Oplus Techs., Ltd. v. Vizio, Inc.*,
   782 F.3d 1371 (Fed. Cir. 2015) .....................................................................................17

*Phonometrics, Inc. v. Westin Hotel Co.*,
   350 F.3d 1242 (Fed. Cir. 2003) .....................................................................................21

*Primus Auto Fin. Servs. v. Batarse*,
   115 F.3d 644 (9th Cir. 1997) .........................................................................................15

*Raymond v. Blair*,
   No. 09-5507, 2012 WL 1135911 (E.D. La. Apr. 4, 2012) .......................................16, 17

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
   402 F.3d 1198 (Fed. Cir. 2005) .........................................................................20, 22, 23

*SPH Am., LLC v. AT&T Mobility LLC*,
   No. 3:13-cv-2318-CAB-KSC, 2017 WL 3021025 (S.D. Cal. July 14, 2017) .............19

*Sub Zero Franchising, Inc. v. Frank NYE Consulting, LLC*,
   No. 2:15-cv-821-BSJ, 2018 WL 1999093 (D. Ut. Apr. 27, 2018) ...............................22

*Takeda Chem. Indus. v. Mylan Labs.*,
   549 F.3d 1381 (Fed. Cir. 2008) .....................................................................................14

*Tech. Props. Ltd. LLC v. Canon Inc.*,
   No. C 14-3640 CW, 2017 WL 2537286 (N.D. Cal. Jan. 26, 2017) ...............................16

*Therasense, Inc. v. Becton, Dickenson & Co.*,
   745 F.3d 513 (Fed. Cir. 2014) .......................................................................................24

**Statutes**

28 U.S.C. § 1927 ........................................................................14, 15, 19, 20, 21, 23, 26

35 U.S.C. § 285 ..............................................................................13, 14, 15, 19, 23, 26

**Other Authorities**

Fed. R. Civ. P. 54 .....................................................................................................13, 26

Local Rule 3.2 ...........................................................................................................11, 12

Local Rule 5.4 ...................................................................................................................1

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092

# TABLE OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---|---|
| A | Appendix G to Plaintiffs' Disclosure of Asserted Claims and Infringement Contentions Pursuant to Patent Local Rules 3.1 & 3.2, dated December 16, 2015 |
| B | Exhibit B-3 to PSD's Invalidity Contentions pursuant to Patent Local Rule 3-3, dated February 19, 2016 |
| C | Transcript of the Claim Construction Hearing on September 1, 2016 |
| D | PSD's IPR Petition of U.S. Patent No. 8,088,016, dated July 18, 2016 |
| E – Filed Under Seal | "Intellectual Property Sublicense Agreement" (FRSW0001623–FRSW0001649) |
| F | Plaintiff Surf Waves, Ltd.'s Response to PSD's IPR Petition, dated April 17, 2017 |
| G | PTAB's Record of Oral Hearing on November 8, 2017 |
| H | Transcript of the deposition of Glen Stevick, Ph.D., dated June 15, 2017 |
| I | PTAB's Final Written Decision, dated January 17, 2018 |
| J | Email from PSD's counsel to Plaintiffs' counsel, dated July 15, 2016 |
| K | Email from Plaintiffs' counsel to PSD's counsel, dated July 16, 2016 |
| L | Email from PSD's counsel to Plaintiffs' counsel, dated July 18, 2016 |
| M | "Certificate of Amalgamation" (FRSW0001617) |
| N | Email from Plaintiffs' counsel to German counsel, dated May 12, 2015 |
| O | Statutory Declaration of Tim |

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092

| | |
|---|---|
| | Kwasnicki filed with the German Patent Office on July 15, 2015 |
| P | Email from Plaintiffs' counsel to PSD's counsel, dated February 3, 2016 |
| Q | Declaration by Tim Kwasnicki filed with the UK Patent Office on March 31, 2016 |
| R | Verification of Plaintiffs' Supplemental Responses to Defendant's Second Set of Interrogatories (Interrogatory No. 9), dated June 30, 2016 |
| S | Verification of Second Plaintiffs' Supplemental Responses to Defendant's Second Set of Interrogatories (Interrogatory Nos. 3, 13-14), dated August 23, 2016 |
| T | Email from PSD's counsel to Plaintiffs' counsel, dated April 4, 2017 |
| U | Email from Plaintiffs' counsel to PSD's counsel, dated April 5, 2017 |

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092

### TABLE OF ABBREVIATIONS

| ABBREVIATION | REFERENCE |
|---|---|
| PSD | Defendant Pacific Surf Designs, Inc. |
| Flowrider | Plaintiff Flowrider Surf, Ltd. |
| Surf Waves | Plaintiff Surf Waves, Ltd. |
| '016 Patent | U.S. Patent No. 8,088,016 |
| '589 Patent | U.S. Patent No. 6,491,589 |
| IPR | *Inter Partes* Review |
| PTAB | Patent Trial and Appeal Board |
| FWD | Final Written Decision |

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092

## I.   **INTRODUCTION**

Defendants Pacific Surf Designs, Inc. and Flow Services, Inc. (collectively, "PSD") respectfully resubmit this motion for attorney's fees and costs pursuant to the Court's order (D278).

When this case was filed in 2015, both of Plaintiffs' causes of action for '016 and '589 patent infringement were fundamentally flawed. At various points, Plaintiffs frivolously extended the litigation by concealing facts that would have ended this case. For the '016 patent, Plaintiff took inconsistent claim construction positions to hide the fact that the overly broad constructions it needed for infringement doomed it on invalidity. Those inconsistencies were exposed when PSD was required to file an *inter partes* review petition—leading Plaintiffs to make an about-face and advance narrower constructions—under the PTAB's "broadest reasonable interpretation" standard—than it had successfully argued in this Court. The IPR ended with the PTAB canceling all asserted claims of the '016 patent based in part on Plaintiffs' own asserted '589 patent. On appeal, the weakness of Plaintiffs' argument was shown by their need to rely on completely new, waived arguments, leading to a summary affirmance by the Federal Circuit (Fed. Cir. 18-1680; D74).

Plaintiffs' and their counsel's actions with respect to their '589 patent cause of action are similarly worthy of sanction. Plaintiff Flowrider never had standing, having licensed away all of its rights on the same day it received them and had been "amalgamated" into nonexistence. Plaintiffs' counsel's statements show that it knew of this license arrangement from the outset and of Flowrider's nonexistence for eight months before they were forced to confess it. Instead of promptly disclosing these facts, and Flowrider's defective standing, Plaintiffs deliberately misled PSD and this Court by selectively disclosing only some relevant license agreements (while representing that production was complete), filing false declarations stating that Flowrider employed individuals after it ceased to exist, and claiming that contrary statements in license agreements were "inadvertent errors." All of these actions

demonstrate bad faith and counsel's abuse of their role as officers of the Court.

Sanctions are needed to deter such exceptional and egregious misconduct.

## II.   FACTS ESTABLISHING THE EXCEPTIONAL NATURE OF THIS CASE

Plaintiffs filed this action—their second suit against PSD—on Aug. 24, 2015, alleging infringement of the '016 Patent and '589 Patent. D1.

On July 18, 2016, PSD filed an IPR petition seeking to invalidate all asserted claims of the '016 Patent, which the PTAB did on Jan. 17, 2018. The Court entered final judgment on May 8, 2018, finding that "Plaintiff's patent is unenforceable and judgment is entered for Defendant for the entire action." D240. On May 17, 2019, the Federal Circuit affirmed the PTAB's invalidation of the '016 Patent. (Fed. Cir. 18-1680; D74.) On July 1, 2019, the Federal Circuit dismissed Plaintiffs' appeal from this Court's judgement as moot. (Fed. Cir. 18-1983; D52).

The Court also granted PSD's motion (D102) to dismiss Plaintiffs' cause of action asserting the '589 Patent for lack of standing. D222.

### A.   The '016 Patent

#### 1.   Plaintiffs Broadly Interpreted Claim Elements In This Court Despite PSD Identifying the '589 Patent as Prior Art

The '016 Patent is entitled "Half-pipe Water Ride," and, requires "a second curved sidewall extending substantially upwardly from another edge of the middle section opposite the first curved side." Plaintiffs' original infringement contentions (Dec. 16, 2015), accused PSD's Supertube product of infringement, taking a broad view of the term "opposite" sidewalls. Ex. A, 13. But a side-by-side comparison with '589 Patent Fig. 4A—prior art to the '016 Patent—confirm that Plaintiff's interpretation of "opposite" sidewalls read directly on the prior art:

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092



**PSD's Supertube (Ex. A, 13)**          **'589 Patent, Fig. 4A**

In light of Plaintiffs' broad infringement contentions, PSD identified in its Feb. 19, 2016 invalidity contentions how the '589 Patent disclosed every single element of the asserted claims of the later-filed '016 Patent. Ex. B.

PSD then argued for constructions of '016 Patent claim terms "opposite," "sidewall," and "middle section" that were consistent with the patent's narrow teachings and, if adopted, would have confirmed noninfringement. Specifically regarding "opposite," PSD argued:

> Plaintiffs' … have a distorted view of that "plain meaning," [of "opposite"] because they allege that connected, adjacent walls of PSD's accused Supertube product are "opposite" each other.

D38, 21:20–23. *See also* D47, 7:18–20. Similarly, PSD argued that the '016 Patent specification required that the "sidewall" "is a wall extending along ***an entire side*** of the activity section." D38, 16:8–10 (emphasis added). Thus, PSD contended that "middle section" be rectangular because it was bounded on four sides by two opposite sidewalls (extending along an entire side) and a water delivery section opposite a dewatering section. *Id.* at 16:16–25.

Plaintiffs continued to argue vehemently against PSD's constructions despite the clear invalidity issues. For example, Plaintiffs argued that the sidewalls had ***"[n]o other limitations"*** beyond being traversable, *see* D39, 18:22–26, and that "[t]he Applicant never require[d] sidewalls to extend the entire side. . ." D43, 7:20–22. *See*

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092

*also* Ex. C, 44:5–24. Regarding "middle section" and "opposite," they argued that "non-parallel sidewalls are explicitly illustrated in the '016 Patent, contrary to Defendant's proposed construction," (D43, 9:15–28) and accordingly, the "middle section" need not be rectangular because sidewalls do not have to be parallel to one another. *Id.* at 7:23–8:2.

The Court construed the claims on Sept. 19, 2016, largely adopting Plaintiffs' broad claim interpretations. The Court rejected PSD's contention that the sidewalls needed to extend along the entire edge, finding that edges are not strictly defined. D88, 13:21–23 (emphasis in original; citation omitted).

### 2. Plaintiffs Take Inconsistent Positions in the IPR Proceeding And the PTAB Finds All of the Asserted '016 Patent Claims Unpatentable

PSD prepared an IPR petition addressing all '016 Patent asserted claims before the Court construed the claims. Ex. D. Therein, PSD proposed constructions of "opposite," "middle section," and "the first curved side" consistent with *Plaintiffs'* proposed constructions here—even noting for "opposite" that the "interpretation also is consistent with [Plaintiffs'] infringement contentions in which it takes the position that alleged sidewalls need not be parallel to be opposite, merely on the other side." *Id.* at 153. PSD sought a finding of invalidity based in part on the '589 Patent. *Id.* at 138. Its remaining grounds of invalidity also included two other patents listing Thomas Lochtefeld as inventor—U.S. Patent Nos. 6,676,530 and 5,738,590—**both of which were purportedly licensed to Plaintiff Flowrider**. *Id.*; Ex. E, 214.

In the IPR, Plaintiff Surf Waves took narrow claim construction positions that were diametrically opposed to its positions here.[1] In particular, Plaintiffs suddenly

---

[1] Although Plaintiff Surf Waves never formally asked the PTAB to construe claim terms, they read in extra, narrowing limitations when they analyzed the prior art for invalidity. Ex. F, 236–40. Because Surf Waves did not preserve its claim construction arguments before the PTAB, PSD contended that Surf Waves has waived the right to raise such issues on appeal of the FWD in the IPR. *See* D236. The CAFC apparently agreed, in entering its summary affirmance. *See supra*.

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092

alleged that the '589 Patent does not disclose an "activity section including . . . a first curved sidewall extending substantially upwardly from an edge of the middle section" and "a second curved sidewall extending substantially upwardly from another edge of the middle section" as required in the '016 Patent claims because those terms had narrow meanings. Ex. F, 236.

For example, beyond being traversable, Surf Waves now alleged that "sidewalls" of the '016 Patent required that there be no downward or horizontal portions—a position that directly contradicts its infringement contentions. *Id.* Surf Waves furthered this "downward or horizontal" portion theory by "strictly defining" the edge—contrary to its position here, and this Court's construction, that the edge not be strictly defined—as shown in the diagram below:



FIG. 4A

*Id.* Surf Waves' counsel admitted this in the IPR trial:

> JUDGE MELVIN: . . . [Y]our argument regarding curved substantially upwardly, it is that the side walls must be curved upwardly *from all points along the edge. Not just some points along the edge.*
>
> MR. SCHINDLER [Surf Waves' Counsel]: Correct. That's exactly what we are arguing.

Ex. G, 20:5–10 (emphasis added). *See also id.* at 26:1–6. Surf Waves also adopted PSD's claim construction argument—which it opposed here and this Court

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092

rejected—that the sidewalls needed to extend along the entirety of the edge:

> JUDGE MELVIN:  . . . [D]oes the entire edge have to be curved substantially upwardly?
>
> MR. SCHINDLER:  … Our argument would be because it says substantially upward from an edge and it says a side wall, *it doesn't say a portion of the side wall, it would be our position that you also can't take just a portion of it. Again, if you go back to our figures, our figures all show not a portion. All of it rises.*

*Id.* at 27:19–28:2 (emphasis added). Moreover, further contradicting Plaintiffs' infringement contentions, Surf Waves' proffered expert took the position that the sidewalls shown in Fig. 4A of the '589 Patent—which are not parallel to each other—*are not* "opposite." Ex. H, 91:16–22.

In its FWD dated Jan. 17, 2018, the PTAB rejected Surf Waves' belated attempt to narrow the construction of these key claim terms of the '016 Patent, explaining that:

> [W]e construe "extending substantially upwardly" as encompassing a sidewall that, at some point, extends above the edge of middle section corresponding to the side wall. Because the sidewalls identified by Petitioner [PSD] in Lochtefeld 589 each have a portion that rises up from the plane of the middle portion, they extend substantially upwardly from the middle portion as claimed.

Ex. I, 534. Consequently, the Board found all of the claims of the '016 Patent that were asserted in this litigation unpatentable as anticipated and/or obvious in light of the '589 patent. *Id* at 572

### 3.   Federal Circuit Summarily Affirms Plaintiffs' Appeal From the PTAB Decision Based Solely on Waived Arguments

Plaintiff Surf Waves appealed the PTAB's Decision. But realizing that its IPR arguments were fatally flawed, Surf Waves instead mounted its appeal based on arguments that were frivolous, untimely and/or waived. (Surf Waves Op. Br., Fed. Cir. Appeal No. 2018-1680 D34). For example, for the first time on appeal, Surf

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092

Waves argued for a construction of "curved sidewall extending substantially upwardly from [an/another] edge of the middle section," and alleged, without any proper citation or support, that the Board's construction of that term was inconsistent with the '016 Patent's prosecution history. (Op. Br., ECF No. 34 at 12-17.) PSD was then required to dedicate several pages of its Response appeal brief to detailing and identifying all of the waived arguments upon which Surf Waves relied as well as the flaws in its new, meritless claim construction arguments. (Resp. Br., D48 at 30-35.) At oral argument, the Federal Circuit recognized that Surf Waves had failed to raise any of the claim construction arguments it was advancing on appeal as the basis for reversal.

### 4.   PSD Attempted to Reduce the Needless Expenditure of Fees in Light of Plaintiffs' Frivolous and Contradictory Positions

On numerous occasions throughout the litigation, PSD sought Plaintiffs' cooperation to mitigate fees in view of the clear invalidity of the '016 Patent. Prior to filing the IPR petition, PSD sent a courtesy copy to Plaintiffs' counsel, hoping to "spar[e] the parties and the PTAB the time and resources necessary for deciding this issue" and noting that "any alleged damages in this case are trivial." Ex. J. Plaintiffs refused, complaining that they did not have time to consider the references—*even though all cited references were assigned to Plaintiff Flowrider*, and most had been included in PSD's invalidity contentions served five months earlier. Ex. K, 575. From the outset, PSD informed Plaintiffs that it would seek fees if it was forced to expend additional costs and file the IPR. Ex. L, 577.

After Plaintiffs refused to drop the '016 Patent, thereby forcing PSD to file its IPR petition, PSD concurrently filed a motion to stay, arguing that the case was at an early stage, the IPR would simplify the case, and Plaintiffs would not be prejudiced:

> The truth is that PSD has made a single U.S. sale in its existence, for a sum that constitutes a fraction of what it will cost to continue litigating this case. *Plaintiffs are plainly using this litigation to exert settlement pressure*

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092

> *on a small, two-person company*. . . . Meanwhile, Plaintiffs voluntarily dropped a previous lawsuit against PSD two years ago, and then allowed the asserted patents to go abandoned thereafter, demonstrating a wholesale indifference to PSD, the patents, and litigation in general.

D64, 2:3–11 (emphasis added). Moreover, PSD explained how Plaintiffs' infringement theories formed the basis of PSD's IPR petition:

> [T]he main invalidity ground in the '016 patent petition is the '589 patent, *the other patent in suit*. . . . And really, that is the crux of how we find ourselves here. Plaintiffs have taken egregious infringement positions, attempting to contort the patents into something resembling what PSD sells. In the process, Plaintiffs set forth overly broad claim construction positions to a degree that—if their constructions are meritorious—their own patents and other prior art invalidate those claims. This is exactly what PSD has argued in both petitions, citing Plaintiffs' own positions, and how those positions render the patents so broad as to sweep in numerous prior art references invalidating the claims. . . . [Plaintiffs] also do not dispute that the '589 patent is the main invalidity reference in the '016 patent petition.

D73, 5:13–6:3 (emphasis in original).

Plaintiffs opposed the stay, and the Court denied the motion, noting that the PTAB had not yet decided whether to implement an IPR. D80, 5:3–4.

PSD reiterated its request for a stay on Jan. 31, 2017, after the PTAB instituted IPR of all asserted claims of the '016 Patent. D142, D142-1. Plaintiffs once again opposed, forcing PSD to again brief the issue. *Id.* And as PSD again explained, "*Plaintiffs' opposition also seeks to continue litigating the '016 patent—through trial no less—while implicitly conceding all that work (depositions, expert depositions, pre-trial, trial) will be for naught if the '016 patent is cancelled by the PTAB.* This is a tremendous amount of unnecessary resources to expend, particularly where the PTAB's Final Written Decision is required by Jan. 30, 2018." D180, 9:7–

16 (emphasis added; citation omitted). But during the four months between when PSD filed its renewed stay request (Jan. 30, 2017) and the Court granted it (May 26, 2017), PSD was forced to finish fact discovery and begin expert discovery on the '016 Patent. And the lingering '016 Patent cause of action, even though stayed, was the basis for the Court's denial of PSD's motion for partial final judgment back in June 2017. (D228 at 2.)

### 5. Plaintiffs Waited Until After the Parties Prepared Expert Reports Before Informing PSD That They Were Not Seeking Damages on the '016 Patent

Despite forcing PSD to expend resources on the '016 Patent, including an invalidity expert report, Plaintiffs *for the first time in their damages expert report informed PSD that they were not seeking any damages on the '016 Patent*, finally acknowledging—as PSD had said all along—that "PSD has not yet sold any products accused of infringing the '016 Patent." D220, 2:1–5. As PSD explained:

> . . . *[T]he patent that PSD has consistently argued is figuratively worthless has now been confirmed as literally worthless. Yet Plaintiffs want to continue litigating the patent nonetheless, just to force PSD to incur costs.*

*Id.* at 2:11–21 (emphasis added).

### B. The '589 Patent

In addition to the '016 Patent, Plaintiffs also brought suit in the name of Flowrider, alleging infringement of the '589 Patent. As set out in PSD's briefing on its motion to dismiss for lack of standing (D112, D123), Plaintiffs obfuscated discovery and made material misrepresentations, thereby dragging out an improper suit brought by an improper entity.

### 1. "Whitewater" Represents That All Responsive Documents Were Produced

In a Sept. 2016 Joint Case Management Statement, PSD explained Plaintiffs' recent references to "Whitewater" and its concern that Plaintiffs were playing a corporate shell game:

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092

Plaintiffs recently stated that the dearth of documents is because **non-party "Whitewater**, as an acquiring party, has few documents related to this issue." It is unclear why Whitewater's documents are being referenced rather than Plaintiffs' documents, but to the extent Plaintiffs' lack of production is based on a corporate shell game, this is another issue that will need to be addressed in discovery.

D94, 11:15–19 (emphasis in original). Yet, Plaintiffs represented having "produced *all* **[responsive]** *documents* in its possession." *Id.* at 9:3 (emphasis added).

### 2.   Plaintiffs Conceal That Plaintiff Flowrider Ceased to Exist for Eight Months, Forcing PSD to File a Motion to Dismiss

More than a month later on Oct. 28, 2016—after forcing PSD to make additional, repeated demands—Plaintiffs revealed that Plaintiff Flowrider *had ceased to exist as a functional entity on Feb. 1, 2016*. Ex. M. As a result, PSD moved to dismiss for lack of standing in Nov. 2016. D102. In response, Plaintiffs concocted a new story, devoid of any legal support, this time alleging that Whitewater had been the plaintiff all along and was merely (and improperly) using Flowrider for its "name." D117, 16:17–19.[2] With that new story came a trove of other documents, *months after "all" documents had supposedly been produced*—including the Intellectual Property Sublicense Agreement used to make Plaintiff's "party in name only" argument. *See* Ex. E. The Court based its dismissal of Flowrider's claim on that Sublicense Agreement, as it showed that on the very same day Flowrider purportedly received rights to the '589 Patent (well before Plaintiffs initiated the lawsuit), it immediately sublicensed all rights to Whitewater. *Id.*; D222, 15:8–17.

Plaintiffs misrepresented ownership and obfuscated resolution of the standing issue on numerous occasions throughout this case, including:

- **<u>May 12, 2015</u>**—Counsel for Plaintiffs, Mr. Squier, contacted counsel in Germany on April 21, 2015 regarding "Whitewater EU IP Matters", including the counterpart German Patent, and that German counsel responded on April 24, 2015 stating "please inform us how Whitewater is

---

[2] Plaintiffs also filed a motion to substitute parties, forcing PSD to respond. D106.

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092

involved in these cases since all patents are owned by Mr. Thomas Lochtefeld or Light Wave, Ltd." Mr. Squier wrote on May 12, 2015 that "**Whitewater has become involved in these cases via an acquisition / licensing agreement** …" (emphasis added) (Ex. N)

- **July 15, 2015**—Following the discussions with Mr. Squier, German counsel prepared and submitted a petition to reinstate the counterpart German patent for failure to pay maintenance fees including a declaration by Mr. Kwasnicki (then the VP of Whitewater) stating in relevant part: "I note that on or about 31 Jan. 2014, **an agreement between the Patentee of record of the Patent — Light Wave, Ltd. (hereinafter referred to as "Light Wave") —and Whitewater transferred beneficial ownership of the Patent to Whitewater**, as well as a large portfolio of intellectual property[1] in various countries…"; ." (emphasis added) (Ex. O)

- **Aug. 24, 2015**—Plaintiffs submitted a pleading identifying the "Intellectual Property License Agreement" between Flowrider and Surf Park PTE, Ltd., and alleged that based on it, "Plaintiff FlowRider has standing to sue for infringement of the '589 Patent" (D1), all the while withholding the Intellectual Property Sublicense Agreement showing that all of Flowrider's rights had been transferred to Whitewater;

- **Dec. 15, 2015**—Plaintiffs failed to produce the Intellectual Property Sublicense Agreement with its standing-related documentation pursuant to Patent L.R. 3.2(d);

- **Feb. 3, 2016** (two days after the amalgamation)—Plaintiffs failed to reference the amalgamation in correspondence with PSD concerning PSD's request for information that should have been produced pursuant to Patent L.R. 3.2(d) so that PSD could "evaluate whether Plaintiffs have standing to sue," and instead produced a single license agreement purporting to "evidence FlowRider's patent rights" (Ex. P);

- **Mar. 31, 2016** (several weeks after the amalgamation)——Plaintiffs submitted a petition to reinstate the counterpart U.K. patent for failure to pay maintenance fees including a declaration by Mr. Kwasnicki (then the VP of Whitewater) stating that "the patent was assigned to another company, Surf Park PTE Ltd which subsequently granted an exclusive license to Flowrider Surf Ltd. **Flowrider Surf Ltd then merged with**

---

[1]  The IP License Agreement between Surf Park and FSL and the sublicense agreement between FSL and Whitewater (i.e. the only agreement purportedly passing rights in the '589 patent to Whitewater) include the German, the UK patent, the '589 Patent, and each agreement was executed on Jan. 31, 2014.

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092

**Whitewater West Industries Ltd. The exclusive licensee of the patent was thus Whitewater West Industries Ltd (Whitewater) as of the date of the merger**." Whitewater also stated that "[a]n assignment from Light Wave Ltd to Surf Park PTE Ltd dated 15 Oct. 2012; and an agreement between Surf Park PTE Ltd and Flowrider Surf Ltd on 31 Jan. 2014 which granted an exclusive license of the patent from Surf Park PTE Ltd to Flowrider Surf Ltd. **Flowrider Surf Ltd then merged on 1, Feb. 2016 with and into Whitewater West Industries Ltd.**" (emphasis added) (Ex. Q)

- **June 30 & Aug. 23, 2016**—Plaintiffs submitted sworn interrogatory verifications on behalf of non-existent Flowrider (Exs. R and S);

- **Aug. 29 & Sept. 16, 2016**—Plaintiffs submitted sworn declarations from their own witnesses, Andrew Thatcher and Marshall Myrman, who declared under penalty of perjury that they were "currently employed" by non-existent entity Flowrider (D70-1, D87-8);

- **Sept. 19, 2016**—Plaintiffs represented to PSD and this Court that they had "produced ***all documents*** in its possession responsive to PSD's requests" (D94, 9:3), despite not having produced the IP Sublicense Agreement;

- **Dec. 5, 2016**—Plaintiffs submitted a sworn declaration on behalf of Thomas Lochtefeld, '589 Patent inventor, who declared that representations and warranties made in multiple license agreements "were inadvertent errors" (D117-3); and

- **Dec. 12, 2016**—Plaintiffs submitted sworn declarations on behalf of Andrew Thatcher and Marshall Myrman who stated that their sworn statements on Sept. 16 were "inadvertent error[s]" (D126-2; D126-3).

- **June 11, 2018**—Plaintiff submitted a declaration (D258 of FSL Action) that on Aug. 24, 2015 (three months after the May 2015 email to German counsel), "the only applicable license agreement for the '589 Patent known to Plaintiffs' counsel [which includes Mr. Squier] was the Jan. 31, 2014 license between Surf Park PTE, Ltd. and Flowrider Surf, Ltd."

In short, throughout this case in dealing with standing and ownership issues and related discovery, Plaintiffs showed a cavalier disregard for the truth and retracted their misrepresentations only when PSD exposed the inconsistencies in their story.

## III.   LEGAL STANDARD

Courts retain jurisdiction after final judgment to decide issues not subject to

TROUTMAN SANDERS LLP
11682 El Camino Real, Suite 400
San Diego, CA 92130-2092

appeal such as attorneys' fees and costs. *Accord* Fed. R. Civ. P. 54(d).

### A.    Attorneys' Fees Pursuant to 35 U.S.C. § 285

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "[T]he aim of § 285 is to compensate a defendant for attorneys' fees it should not have been forced to incur." *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* Such circumstances may include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6.

The prevailing party need only show entitlement to attorneys' fees by a preponderance. *Octane Fitness*, 134 S. Ct. at 1758. "Section 285 demands a simple discretionary inquiry: it imposes no specific evidentiary burden." *Id.* PSD is the prevailing party with regard to the '016 Patent. The Court entered judgment in favor of PSD finding that "Plaintiff's ['016] patent is unenforceable and judgment is entered for Defendant for the entire action." D240. Plaintiff Surf Waves voluntarily dismissed its appeal (Fed. Cir. 18-1983; D51), but only after full briefing and the Federal Circuit's affirmance of the underlying PTAB decision in PSD's favor.

### B.    Attorneys' Fees Pursuant to 28 U.S.C. § 1927

The Court may also award fees pursuant to 28 U.S.C. § 1927 when an attorney "multiplies the proceedings in any case unreasonably and vexatiously." Sanctions may be imposed upon "'a finding of subjective bad faith' which 'is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious

claim for the purpose of harassing an opponent.'" *Digital Empire Ltd. v. Compal Elecs. Inc. Grp.*, No. 14cv1688-DMS-KSC, 2015 WL 11570939, at *8 (S.D. Cal. Dec. 11, 2015), *recon. denied*, 2016 WL 4385190 (S.D. Cal. Mar. 1, 2016) (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002)). "Recklessness suffices for § 1927 sanctions." *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010).

### C.   Court's Inherent Powers to Sanction Misconduct

The Court may also award attorneys' fees and costs that may not otherwise be available under §§ 285 and 1927—such as expert witness fees— pursuant to its inherent authority. *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (stating that courts have the inherent power to "levy sanctions, including attorneys' fees, for willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."); *Amsted Indus. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378 (Fed. Cir. 1994) (an award of expert fees is proper upon a "finding of fraud or abuse of the judicial process."). Such an award is proper "where the district court makes a 'finding of fraud or bad faith whereby the very temple of justice has been defiled'". *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921 (Fed. Cir. 2012). Even where a litigant's conduct does not "amount to fraud, courts may use sanctions in cases involving bad faith that cannot be otherwise reached by rules or statutes." *Takeda Chem. Indus. v. Mylan Labs.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008). Bad faith must be found where an attorney "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Carlock v. Collins Motor Co.*, No. 04cv0370-J-RBB, 2008 WL 943037, at *2 (S.D. Cal. Apr. 7, 2008) (quoting *Primus Auto Fin. Servs. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997)).

### IV.   <u>ARGUMENT</u>

Plaintiff's bad faith litigation tactics—filing and maintaining frivolous '016 patent claims, and concealing Plaintiff Flowrider's amalgamation and lack of '589

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092

patent standing—are plainly exceptional and sanctionable. Accordingly, PSD is entitled to its reasonable attorneys' fees expended in addressing the '016 Patent pursuant to 35 U.S.C. § 285, its reasonable attorneys' fees expended in addressing the '589 Patent pursuant to 28 U.S.C. § 1927, and its attorneys' fees, expert fees, and non-taxable costs for this action pursuant to the Court's inherent authority.

### A. PSD Should Be Awarded Its Fees Related to Plaintiffs' Exceptionally Weak '016 Patent Claim Under 35 U.S.C. § 285

Plaintiffs' case with respect to the '016 Patent underscores their exceptionally weak positions and sanctionable behavior warranting fees under § 285. Courts need only find *either* a lack of "substantive strength of a party's litigating position" *or* the "unreasonable manner in which the case was litigated" to deem a case "exceptional." *Octane Fitness*, 134 S. Ct. at 1756. Here, both grounds are met.

### 1. Plaintiffs' Position Was Exceptionally Weak

Courts often find that plaintiff patentees' cases are exceptionally weak when their patents have been invalidated. *See, e.g.*, *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372 (Fed. Cir. 2017) (affirming award of fees after asserted patent invalidated). The presumption that a patent is valid does not excuse Plaintiffs from their obligation to investigate the weaknesses in their case. As set forth above, Plaintiffs' assertion of the '016 Patent was objectively unreasonable and frivolous from the start given that *it was invalidated in view of Plaintiffs' own licensed patents and related infringement theories*.

Plaintiffs were aware of the '589 Patent from the outset of the case, and undoubtedly were also aware of the other two patents used to invalidate the '016 Patent given that they were purportedly licensed to Plaintiff Flowrider in the same agreement. Ex. E, 214. *See Raymond v. Blair*, No. 09-5507, 2012 WL 1135911, at *4 (E.D. La. Apr. 4, 2012) (awarding fees where plaintiffs "knew or should have known from the inception of this litigation that the patent was invalid.").

Despite Plaintiffs' awareness of invalidating prior art (at least the '589 Patent,

below left), they raised overbroad infringement theories, including theories stating that Plaintiff's Supertube (below right) included "opposite" first and second curved sidewalls extending substantially upwardly from edges of a middle section.



| '589 Patent, Fig. 4A | PSD's Supertube (Ex. A, 13) |

Even if they did not initially understand the invalidating import of their broad infringement contentions, they should have by the time PSD served its invalidity contentions in Feb. 2016, which identified how the '589 Patent purportedly assigned to Plaintiff Flowrider invalidated the '016 Patent claims. Ex. B.

Nonetheless, Plaintiffs posited broad claim constructions (tracking their broad infringement contentions) that any reasonable attorney would have realized read on the prior art. *See Tech. Props. Ltd. LLC v. Canon Inc.*, No. C 14-3640 CW, 2017 WL 2537286, at *2 (N.D. Cal. Jan. 26, 2017) (holding that "[t]he merits of Plaintiffs' lawsuit were exceptionally weak" in part because "***Plaintiffs' infringement theory essentially lay claim to prior art***.") (emphasis added). Nothing better evidences Plaintiffs' own realization that their proposed claim constructions were unreasonably broad than the fact that they offered ***narrower*** constructions before the PTAB, which applied a "broadest reasonable interpretation" standard.

Moreover, Plaintiffs' conduct was sanctionable because they attempted to frustrate PSD's mitigation efforts. Although Plaintiffs' unreasonable contentions forced PSD to prepare its IPR petition, even after doing so, PSD attempted to reach resolution and avoid incurring additional costs by ***sending the draft petition to***

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092

***Plaintiffs' counsel and asking them to drop the '016 Patent***. Ex. J. PSD made another attempt several months later in April 2017, but Plaintiffs once again refused. Ex. T, 579; Ex. U, 584. *See Raymond*, 2012 WL 1135911, at *4 (awarding fees where plaintiffs continued to litigate claims despite the fact that they knew or should have known that its validity theories were unreasonable based on prior art).

Plaintiffs refused to discuss the merits because their position was meritless and thus, frivolous. Plaintiff Surf Waves confirmed this fact by taking positions diametrically opposed to its own infringement and claim construction arguments. *See Oplus Techs., Ltd. v. Vizio, Inc.*, 782 F.3d 1371, 1374–76 (Fed. Cir. 2015) (reversing denial of fees under §§ 285 and 1927, and court's inherent power where plaintiff's "litigation positions . . . were a constantly moving target, 'a frustrating game of Whac-A[-]Mole throughout the litigation'"). As detailed in § II.A.2, examples of Plaintiff Surf Waves' and/or its expert's inconsistent IPR allegations include that:

1) beyond being traversable, the '016 Patent sidewalls had to extend upward from all points on an edge (Ex. G, 20:5–10 & 26:1–6), despite previously representing that the sidewalls had "[n]o other limitations" (D39, 18:22–26), and the Court's admonishment that "the edges are not strictly defined" (D88, 13:21–23);

2) the claimed sidewalls had to extend along the entirety of the edge (Ex. G, 27:19–28:2), despite previously arguing against that very same construction (Ex. C, 44:5–24); and

3) the '589 Patent does not show "opposite" sidewalls (Ex. H, 91:16–22), despite Plaintiffs' infringement contentions concerning PSD's Supertube product (Ex. A, 13).

The PTAB ultimately agreed with PSD, invalidating all asserted claims in Jan. 2018, and confirming PSD's contention from the outset:

Plaintiffs … egregious infringement positions, attempting to contort the patents into something resembling what PSD sells. ***In the process, Plaintiffs set forth overly broad claim construction positions to a degree that—if their constructions are meritorious—their own patents and other prior art invalidate those claims.***

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092

D73, 5:13–6:3 (emphasis added). The PTAB's Final Decision—affirmed by the Federal Circuit—confirms that Plaintiffs' litigation positions regarding the '016 Patent were exceptionally weak, and that Plaintiffs' case was frivolous in view of the prior art. *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989) (holding that an exceptional case finding can be based on a frivolous suit). Plaintiffs implicitly agreed, since they abandoned their IPR arguments in favor of completely new (but waived) arguments in futilely appealing the PTAB's decision.

### 2.     Plaintiffs Litigated This Case in an Unreasonable Manner

In addition to their disregard of the merits, Plaintiffs litigated the '016 Patent case in an unreasonable manner. PSD repeatedly pointed to its low number of actionable U.S. sales to explain that potential damages were minimal. *See* D64, 2:3–11 ("… PSD has made a single U.S. sale in its existence, for a sum that constitutes a fraction of what it will cost to continue litigating this case. Plaintiffs are plainly using this litigation to exert settlement pressure on a small, two-person company."); Ex. J.

But Plaintiffs continued to push a meritless case with regard to the '016 Patent to drive up PSD's cost of litigation and exert settlement pressure. Despite PSD's July 2016 invitation to discuss the '016 Patent on the merits, Plaintiffs never did so. Ex. K, 575. Instead, they opposed both PSD's motions to stay. D70, D174. As a result, PSD was forced to engage in needless discovery concerning the '016 Patent, including depositions, documents, and written discovery.

Particularly egregious and unreasonable was Plaintiffs' decision to ***wait until the eleventh hour (expert reports)—over 20 months after bringing suit—before revealing that they were not claiming any damages relating to the '016 Patent***. D220. Accordingly, Plaintiffs forced PSD to engage unnecessarily in fact discovery and expert reports related to the '016 Patent.

Plaintiffs' tactics confirm their unreasonableness and bad faith, thereby warranting sanctions. *See Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2014 WL 3956703, at *14 (N.D. Cal. Aug. 12, 2014) (granting fees for "failing to

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092

conduct an adequate pre-filing investigation, shifting its theories of infringement late in the litigation . . ., and engaging in conduct that at times amounted to gamesmanship"). Far beyond simply losing the IPR and having the patent invalidated, both the frivolous nature of asserting an obviously invalid patent and the contradictory positions taken in this litigation and the IPR as well as Plaintiffs' deliberate delay in withdrawing meritless arguments and informing PSD that it sought no damages that qualify this case as exceptional.

**B.  Plaintiffs and Their Counsel Acted in Bad Faith with Regard to the '589 Patent, so PSD Should Be Awarded Its Fees Under 28 U.S.C. § 1927**

PSD seeks its attorneys' fees related to the '589 Patent from Plaintiffs and their counsel pursuant to 28 U.S.C. § 1927, because Plaintiffs' attempt to obfuscate the standing issue followed by their frivolous standing arguments "multiplie[d] the proceedings . . . unreasonably and vexatiously."[3] Plaintiffs knew or should have known that Plaintiff Flowrider lacked standing to bring suit from the very beginning of the case, if not before. Plaintiffs' affirmative misrepresentations and omissions regarding standing are "plainly sanctionable." *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1205 (Fed. Cir. 2005) (citing counsel's failure to promptly correct false statements in pleadings as sanctionable conduct).

The Court determined that Plaintiff Flowrider lacked standing to assert the '589 Patent due to a Jan. 2014 IP Sublicense Agreement—prior to the Complaint—that transferred Plaintiff Flowrider's purported '589 Patent rights to Whitewater ***on the exact same day that Flowrider received them***. D222, 15:8–17. Plaintiffs' choice to produce the License Agreement showing Flowrider received rights while at the same time withholding the Sublicense Agreement showing Flowrider gave those

---

[3] Courts in this District have found that prevailing on a motion to dismiss for lack of subject matter jurisdiction does not entitle movant to "prevailing party" status pursuant to 35 U.S.C. § 285. *See SPH Am., LLC v. AT&T Mobility LLC*, No. 3:13-cv-2318-CAB-KSC, 2017 WL 3021025, at *9–10 (S.D. Cal. July 14, 2017).

TROUTMAN SANDERS LLP
11682 El Camino Real, Suite 400
San Diego, CA 92130-2092

rights away *on the same day* cannot reasonably be interpreted as anything but a deliberate attempt to mislead PSD and the Court as to standing. At the very least, Plaintiffs' and their counsel's failure to consider the Sublicense Agreement's impact on standing or to disclose it point to recklessness and bad faith warranting sanctions. *See Digital Empire*, 2015 WL 11570939, at *8 (awarding fees pursuant to 28 U.S.C. § 1927 where "Plaintiff's pre-filing investigation was inadequate."); *Fagundes v. Charter Builders, Inc.*, No. C 07-1111, 2008 WL 268977, at *4 (N.D. Cal. Jan. 29, 2008) (imposing sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent authority because counsel's failure to produce a document forced defendant "to relitigate an issue that easily could have been resolved"); *Deep Sky Software, Inc. v. Southwest Airlines Co.*, No. 10-cv-1234-CAB-KSC, 2015 WL 11202634, at *4 (S.D. Cal. June 1, 2015) (awarding sanctions because plaintiff's "failure to identify [a document] and produce it violated the good faith requirements of the local patent rule. Early disclosure of this reference in accordance with the rules could have substantially impacted and shortened the litigation . . .").

Plaintiffs' counsel previously sought to excuse its behavior by claiming they were not aware of the Sublicense Agreement until mid-Oct. 2016. That argument contradicts various other statements Plaintiffs' counsel has already made. In opposing PSD's motion to dismiss for lack of standing, Plaintiffs argued Whitewater was always involved and suing in the name of Plaintiff Flowrider from the Aug. 2015 start of the case *because the Sublicense Agreement required them to do so*. D117, 6:9–11 (citing § 5.3 of the Sublicense Agreement); D222, 18:16–19:19. That position cannot be squared with Plaintiff's counsels' relatively new claim that they supposedly *were not aware of the very same agreement until over a year later*. It also strains credulity that Plaintiffs' counsel—the same counsel that prepared a "Case Strategy Memorandum," a "bound volume including more than 80 pages of analysis and 14 exhibits"—was aware of the Jan. 31, 2014 license agreement that purportedly gave Plaintiff Flowrider standing, but was *not aware of the Sublicense (giving*

Troutman Sanders LLP
11682 El Camino Real, Suite 400
San Diego, CA 92130-2092

*Flowrider's rights to Whitewater) executed on the exact same day by the exact same person (Mr. Geoff Chutter) for each party, and prepared by the same law firm*.

Such frivolous and internally inconsistent arguments are also sanctionable under § 1927. *See Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1248 (Fed. Cir. 2003) ("a determination of bad faith is warranted where an attorney knowingly or recklessly pursues a frivolous claim") (internal quotation omitted). The measures Plaintiffs and their counsel took to conceal Plaintiff Flowrider's Feb. 1, 2016 amalgamation also exemplify bad faith. Rather than informing PSD, Plaintiffs intentionally obfuscated the point, submitting sworn interrogatory verifications and declarations on behalf of individuals "currently employed" by a non-existent entity. *See* § II.B.2. Plaintiffs then attempted to avoid producing any documents revealing Flowrider's lack of patent rights by falsely telling the Court and PSD that all documents had been produced. *Id.*

At a minimum, as early as May 12, 2015 Plaintiff's counsel was aware of the sublicense agreement [4] and mere weeks after amalgamation on Mar. 31, 2016, Plaintiffs submitted a petition to reinstate the counterpart U.K. patent for failure to pay maintenance fees declaring that "Flowrider Surf Ltd [] merged on 1, Feb. 2016 with and into Whitewater West Industries Ltd." (Ex. Q). Accordingly, these facts belie Plaintiffs' claim that counsel was not actually aware of the IP sublicense agreement or amalgamation until Oct. 2016.

Plaintiffs' conduct is analogous to that in *Schreiber Foods*—which Plaintiffs cited in opposing PSD's motion to dismiss. In *Schreiber Foods*, the plaintiff patentee failed to inform the defendant or the court that it had assigned away the asserted patent to another entity during litigation, thereby losing standing. 402 F.3d at 1200.

[4] For example, Plaintiff's counsel wrote in an email on May 12, 2015 that "Whitewater has become involved in these cases [including the '589 Patent] via an acquisition / licensing agreement" (Ex. N), and the only applicable agreement purportedly conferring such rights in Whitewater is the Intellectual Property Sublicense Agreement Ex. E.

Plaintiff's counsel learned of the assignment after the trial and favorable jury verdict, but also did not disclose the assignment. *Id.* at 1201. The Court found that the conduct of both was sanctionable:

> [T]he conduct of Schreiber and its counsel after Sept. 1998, when counsel became aware of the assignment of the '860 patent, ***was plainly sanctionable. Once counsel became aware that highly material false statements had been made by a witness, in pleading submitted to the court and in response to discovery requests, and that highly material documents had not been produced as required, Schreiber and its counsel were under an obligation to promptly correct the record***.

*Id.* at 1205 (emphasis added). *See also Sub Zero Franchising, Inc. v. Frank NYE Consulting, LLC*, No. 2:15-cv-821-BSJ, 2018 WL 1999093, at *2–3 (D. Ut. Apr. 27, 2018) (awarding sanctions under § 1927 because counsel "improperly withheld the purported assignment documents" that "show [plaintiff's] lack of standing to assert the claim for infringement of the [patent]" and "[s]uch documents were subject to mandatory disclosure . . . and were improperly withheld [for a year].")

As in *Schreiber Foods*, Plaintiffs' and their counsel's deliberate concealment of facts showing Flowrider's lack of standing dragged out this action and forced PSD to incur significant additional expenses in numerous ways, including briefing on PSD's motion to dismiss and opposing Whitewater's motion to substitute, depositions, and additional time and effort in terms of correspondence and meet and confers to get to the bottom of Plaintiffs' falsehoods and misrepresentations regarding their document production. This is precisely the type of "unreasonabl[e] and vexatious[]" "multipl[ying of] the proceedings" that § 1927 is intended to deter. *See also* 10 C. Wright et al., Federal Practice and Procedure, § 2670 (3d ed. 2015) (explaining the purpose of § 1927 is "to place directly on attorneys a sanction that should encourage them to refrain from the frivolous, to weigh considerations of relevancy and privilege carefully when participating in discovery proceedings, and

Troutman Sanders LLP
11682 El Camino Real, Suite 400
San Diego, CA 92130-2092

to advise their clients in accordance with their best legal judgment rather than in terms of securing tactical advantage through the manipulation of the process."). Accordingly, the Court should award fees related to the '589 Patent under § 1927.

### C. The Court Should Exercise Its Inherent Power to Award PSD Its Attorneys' Fees, Expert Fees, and Non-Taxable Costs

Consistent with Federal Circuit case law, this Court can and should award PSD its attorneys' fees, including expert fees and non-taxable costs pursuant to the Court's inherent authority. *See MarcTec*, 664 F.3d at 921. Plaintiffs' bad faith is evidenced by the overwhelming misconduct described above. *See Digital Empire*, 2015 WL 11570939, at *8 n.7 (finding that the same conduct warranting fees under §§ 285 and 1927 also warranted sanctions under the court's inherent power).

In *MarcTec*, the Federal Circuit affirmed an award of expert fees where defendant "was forced to incur witness expenses" and "the amount [defendant] was required to expend on experts was not compensable under § 285." *MarcTec*, 664 F.3d at 921. Similarly, PSD was forced to incur significant expense to hire experts to rebut Plaintiffs' arguments about the invalid '016 Patent, despite the fact that Plaintiffs apparently were not claiming ***any damages*** related it. Consequently, the Court should invoke its inherent authority to sanction Plaintiffs—and make PSD whole—for the full amounts of its attorneys' fees, including expert fees and non-taxable costs.

### D. PSD Is Reasonably Entitled to an Award of All of Its Fees Expended in This Case, Including the IPR and Related Appeal

An award for the full amount of PSD's attorneys' fees is warranted here. The Federal Circuit has explained that "a case should be viewed more as an 'inclusive whole' rather than as a piecemeal process" when awarding fees. *Therasense, Inc. v. Becton, Dickenson & Co.*, 745 F.3d 513, 516 (Fed. Cir. 2014) (citation omitted). Consequently, courts have the power to award fees "for the entire case, including any subsequent appeals," rather than only for particular phases of litigation. *Id.* at 517.

Courts routinely exercise this power to award full fees in cases where, as here, one party advances claims that it knows to be baseless. For example, in *Drone Techs.,*

*Inc. v. Parrot S.A.*, the court awarded fees covering "all stages of the litigation" because the defendant had "advanced presumably false positions," "engaged in tactical and pervasive defiance of the Court," and lost. No. 2:14-cv-00111-AJS, 2015 WL 4545291, at *3 (W.D. Pa. July 21, 2015). Similarly, in *Kilopass Tech., Inc. v. Sidense Corp.*, the court awarded defendant its full fees because the plaintiff had engaged in litigation misconduct and lost on all of its claims of infringement, which the court deemed "objectively baseless." 82 F. Supp. 3d 1154, 1166 (N.D. Cal. 2015).

In particular, in addition to its fees and non-taxable costs spent on the litigation itself, PSD should be awarded its fees and non-taxable costs incurred in the *inter partes* review proceeding on the '016 Patent. Judge Bencivengo in this District previously determined that such fees are recoverable in *Deep Sky Software, Inc. v. Southwest Airlines Co.*, No. 3:10-cv-1234-CAB-KSC, 2015 WL 10844231, at *2–3 (S.D. Cal. Aug. 19, 2015). In awarding defendant's fees for an *inter partes* reexamination, Judge Bencivengo explained:

> [T]he legal services counsel performed for defendant during reexamination of the '770 Patent were related to this suit. Reexamination was initiated during and in reaction to plaintiff's action here. Further, the PTO's cancellation of the asserted '770 Patent claims on grounds of invalidity disposed of plaintiff's complaint here and made defendant the prevailing party. . . . Thus, under the unique circumstances of this case, defendant may recover fees for the reexamination proceedings.

*Id.* at *2 (internal citations omitted). The same circumstances exist here as PSD's *inter partes* review was initiated in a similar time frame to the reexamination request in *Deep Sky*, was "related to this suit," was "initiated during and in reaction to plaintiff's action here," and "disposed of plaintiff's complaint here and made defendant the prevailing party." *Id.* Indeed, by petitioning for the IPR and promptly seeking to stay the portion of this litigation related to the '016 patent, PSD did all it reasonably could have to avoid wasting not only its own resources, but also Plaintiffs'

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092

and this Court's.

Even beyond the Board's final written decision, Surf Waves filed an appeal from this Court's entry of judgment which it ultimately dismissed, but not until after PSD had to brief the appeal and prepare for oral argument. Through this motion, PSD seeks its fees for that appeal because Plaintiffs should have known that its related appeal from the PTAB (on which the district court appeal entirely depended) was completely meritless and based solely on new arguments that were waived.(18-1680 D34 at 12–17, 19–31). The CAFC's summary affirmance confirms that there was no merit to Plaintiffs' appeal from the PTAB, and they subsequently dismissed their appeal from this Court's judgment.

PSD's request for fees and costs incurred in this litigation, as well as in the related IPR for the '016 patent and the recently dismissed appeal from this Court's judgment (D240, Fed. Cir. Appeal No. 2018-1983), is reasonable. PSD fairly estimates that such fees amount to $1,987,000, of which $115,000 is attributable to the appeal and $197,000 to the '016 patent IPR.  Rather than seeking all of its costs for these matters, PSD seeks reimbursement of two of the larger cost items—$21,975 in expert expenses and $25,000 in PTAB filing fees for the IPR.[5]

## V.     **CONCLUSION**

For the foregoing reasons, the Court should award PSD all of its attorneys' fees, expert fees, and non-taxable costs for this litigation, pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927, and the Court's inherent power.

---

[5] "The court may decide issues of liability for fees before receiving submissions on the value of services." Fed. R. Civ. P. 54(d)(2)(C). Accordingly, if the Court grants the requested relief, PSD requests that the Court set a briefing schedule so that it may submit evidence regarding the amount and reasonableness of its hourly rates and fees (per the *Lodestar* method) to begin 30 days after the Court's order.

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092

Dated:        July 15, 2019                Respectfully submitted,

                                            TROUTMAN SANDERS LLP


                                            By: */s/ Charanjit Brahma*
                                            Charanjit Brahma, CA Bar No. 204771
                                            charanjit.brahma@troutman.com
                                            Mark Mao, CA Bar No. 236165
                                            mark.mao@troutman.com
                                            Christopher Franich, CA Bar No. 285720
                                            chris.franich@troutman.com

                                             Attorneys for Defendant Pacific Surf
                                             Designs, Inc.

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 15, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any counsel of record who have not consented to electronic service through the Court's CM/ECF system will be served by electronic mail, first class mail, facsimile and/or overnight delivery.

*/s/ Charanjit Brahma*
Charanjit Brahma

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2092