FILED
SEP 22 2020
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY           DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLOWRIDER SURF, LTD., a Canadian corporation; and SURF WAVES, LTD., a company incorporated in the United Kingdom,<br><br>Plaintiffs,<br><br>v.<br><br>PACIFIC SURF DESIGNS, INC., *a Delaware corporation*,<br><br>Defendant. | Case No.: 3:15-cv-01879-BEN-BLM<br><br>**ORDER SETTING AWARD OF FEES AND COSTS**<br><br>[Doc. 309] |

The Court has held that Defendant Pacific Surf Designs, Inc. ("PSD" or "Defendant") is entitled to attorney fees under 35 U.S.C. section § 285, as interpreted by the Supreme Court in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). In *Octane*, the Supreme Court eased the requirements to get such fees under section § 285. Having found this matter suitable for decision without oral argument pursuant to Civil Local Rule 7.1(d)(1), the Court now calculates the amount of fees to be awarded, the appropriate costs, and determines whether expert fees are recoverable in this case. Supplemental briefing, objections, and voluminous documentation was submitted by the Defendant and Plaintiffs Flowrider Surf, Ltd. and

Surf Waves, Ltd. (collectively "Plaintiffs"). The calculations and issues presented underscore uncertainty about how to determine attorney fees under section § 285.

The Court begins with a global fee analysis that properly balances all interests, and then engages in a more granular analysis.

## I. BACKGROUND

### A. GLOBAL FEE ANALYSIS

Some have become concerned about wasted effort focused on the recovery of fees under section § 285. The calculation of actual fees awarded are a significant part of the time and energy dedicated to section § 285 motions.

Authorities vary on how to establish attorney fees in the different areas where fees are recoverable. These include fees under a contract clause, *see, e.g., Becker v. Wells Fargo Bank, N.A.*, 2014 WL 7409447 at *6, 2014 U.S. Dist. LEXIS 178462 at *20 (E.D. Cal. Dec. 29, 2014) ("The starting point for determining reasonable attorneys' fees under Section § 1717 is the 'lodestar.'"); the recovery of fees in some class action settlements under a common fund theory, *see, e.g. Staton v. Boeing Co.*, 327 F.3d 938, 967-68 (9th Cir. 2003) ("As in a statutory fee-shifting case, a district court in a common fund case can apply the lodestar method to determine the amount of attorneys' fees to be drawn from the fund by employing a 'percentage' method."); *Resnick v. Frank (In re Online DVD— Rental Antitrust Litig.)*, 779 F.3d 934, 949 (9th Cir. 2015) ("The district court did not err in approving the fee award. Plaintiffs' class counsel asked for attorneys' fees in the amount of 25% of the overall settlement fund of $27,250,000 and the district court granted class counsels' request."); and the recovery of fees in a case under 28 U.S.C. section § 1983, *see, e.g., McCown v. City of Fontana*, 711 F. Supp. 2d 1067, 1072 (C.D. Cal. 2010) (stating that "[o]verall, considering all that it observed in this case, this Court makes an equitable finding that the legal services provided that support recoverable fees should be reasonably valued at $150,000," and then awarding $148,250 under the traditional mathematical lodestar analysis) (Guilford, J.), *aff'd*, 2011 WL 6778482, 2011 U.S. App. LEXIS 25841 (9th Cir. Dec. 27, 2011). Of course, different factors are

involved in the different areas where fees can be recovered, and they raise various issues. A victorious 1983 plaintiff may be enforcing important constitutional principles, while a fee award in a class action common fund situation may be enforcing statutory regulations. One purpose of section § 285 is to deter bad faith litigation by imposing the cost of a bad decision on the decision-maker.

There is a growing trend that District Court judges should award fees based on an overall global understanding and review of a case, rather than on a tedious review of voluminous time entries and hourly rates. Former Supreme Court Justice Sandra Day O'Connor, sitting by designation, has emphasized the overall equitable nature of fee analysis. She has written that "[t]he net result of fee-setting jurisprudence ... is that the district courts must engage in an equitable inquiry of varying methodology while making a pretense of mathematical precision." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of Albany*, 522 F.3d 182, 189 (2d Cir. 2007) (O'Connor, J., sitting by designation, joining in the opinion) (citation omitted). Justice Elena Kagan has echoed these sentiments in *Fox v. Vice*.

> [T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So, trial courts may take into account their overall sense of a suit and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of "the district court's superior understanding of the litigation."

*Fox v. Vice*, 563 U.S. 826, 838 (2011). The statements of Justices O'Connor and Kagan reflect what is happening in the legal profession as hourly billing has become increasingly unpopular and clients prefer to look at aggregate, global numbers.

As noted, and reflecting the modern trend described by two Supreme Court Justices, this Court will begin by generally reviewing this case to determine a reasonable aggregate global amount for fees. After all, this Court has dealt with this case and the

3

attorneys involved for a significant time, has an overall sense of the suit, and has the experience to determine a reasonable fee in the context of this litigation.

Here, the Defendant is seeking $2,826,858 in fees and costs, or $2,108,440 if the Court deems apportionment is necessary. (*See* Doc. Nos. 309 and 313.) Taking a global perspective of this case, the Court awards Defendant $556,233 in attorney's fees and costs. Considering the fact that the Court found this case to be exceptional, as well as all the other circumstances, this is the proper award. Moreover, it reflects the "rough justice" that Justice Kagan says should be sought. *Fox*, 131 S. Ct. at 2216. The Court now turns to a more granular analysis to provide further detail.

## B. GRANULAR FEE ANALYSIS

The Court held that the Defendant was entitled to fees for the portions of this case attributable to the '016 Patent. Defendant's submissions however seek fees and costs attributable to both the '016 and '589 Patents. In response, Plaintiffs' argue the Defendant is not entitled to recover on anything attributable to '589 Patent. (*See* Doc. No. 310.) Plaintiffs further argue that certain billing rates submitted by Defendant's counsel were too high, that they handled the case inefficiently, that certain expenses sought are not awardable under section § 285, and that certain non-taxable costs were sought. *Id.*

As discussed *supra*, Defendant sought $2,826,858 in attorney fees and costs/expenses, or $2,108,440 if the Court determined that an apportioned award was necessary. While many would consider such award to be excessively high, in complex cases such as this, large awards are not uncommon. In determining the appropriate award, the Court found that this litigation was at least in part motivated by Plaintiffs' desire for 'payback' for Defendant's ongoing competition in the global water attraction market. Moreover, the fact that the Plaintiffs' failed to adequately review their own materials (*regarding the validity of the '016 Patent*) before filing suit, engaged in discovery gamesmanship as well as other "troubling" acts involving disclosure of information did not bode well for them either. (*See* Doc. No. 308.) Ultimately, the Court

4

held that Defendant was only entitled to a partial award. As calculated, itemized, etc., in the following, the Court awards attorney fees in the amount of $525,093 and the cost/expenses awarded shall be $31,140, for a total award of $556,233.

## II. LEGAL STANDARD

"35 U.S.C. § 285 permits a district court to award reasonable attorneys' fees in an exceptional case." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983). The "purpose of § 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit." *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (emphasis and quotation omitted). "Section 285's requirement that the fees awarded be 'reasonable' is a safeguard against excessive reimbursement." *Id.* at 754.

"The methodology of assessing a reasonable award under 35 U.S.C. § 285 is within the discretion of the district court." *Id.* (citing *Lam*, 718 F.2d at 1068). The methodology preferred by this Court is the Global Fee Analysis already undertaken. But *Lam*, written in 1983, also stated that "[i]n determining the reasonableness of the award, there must be some evidence to support the reasonableness of, *inter alia*, the billing rate charged, and the number of hours expended." *718 F.2d at 1068 (internal citations omitted)*. In this regard, the following has been considered.

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983).

This framework relates primarily to contingency fee cases and does not map perfectly on to cases—like this one—where a party has actually paid the fees. Indeed, in

the contingency fee context, the Ninth Circuit has explained the "[t]he number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).

Yet whether a client is willing to pay a fee is not determinative of whether courts will compel an adversary to pay them. The statute only allows the award of "reasonable" attorney fees. 35 U.S.C. § 285. Reasonableness "is assessed at the discretion of the district court." *Lam*, 718 F.2d at 1068 (citing *Am. Safety Table Co. v. Schreiber*, 415 F.2d 373, 380 (2d Cir. 1969), *cert. denied*, 396 U.S. 1038 (1970); *Purer & Co. v. Aktiebolaget Addo*, 410 F.2d 871, 880 (9th Cir. 1969), *cert. denied*, 396 U.S. 834 (1969)).

Beyond attorney fees, "[t]he award of expenses [is also] properly within the scope of § 285." *Cent. Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983); *accord Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008) (citing *Mathis*, 857 F.2d at 759). But expert fees are only allowable if there is "fraud on the court or abuse of judicial process." *Amsted Ind. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 379 (Fed. Cir. 1994).

### III. DISCUSSION

### A. PREVAILING PARTY

Plaintiffs contend that Defendant is not entitled to fees related to the '589 Patent because Defendant is not the prevailing party. (Doc. No. 310 at 3.) Plaintiffs base their argument on the fact that Defendant prevailed on only the '016 Patent, not the '589 Patent. *Id.* Plaintiffs' '589 Patent claims were dismissed without prejudice for lack of subject matter jurisdiction.[1] *Id.* In response, Defendant argues that "[a] party who wins a

---

[1] "Under both Ninth Circuit and Federal Circuit law, a defendant is not considered the 'prevailing party' when dismissal is mandated by a lack of subject matter jurisdiction. *Miles v. State of Calif.*, 320 F.3d 986, 988 (9th Cir. 2003) (attorney's fees and costs 'may not be awarded where an underlying claim is dismissed for lack of subject matter

case by having the case dismissed for lack of subject matter jurisdiction is entitled to attorney's fees and costs 'because a party who wins a lawsuit on a non-merits issue is a 'prevailing party.'" *Amphastar Pharm. Inc. v. Aventis Pharma SA*, 856 F.3d 696, 711 (9th Cir. 2017) (overturning a decision by district court not to award fees and costs to the defendant after dismissing the case for lack of subject matter jurisdiction.) (Doc. No. 311 at 3.) It is also "nonsensical to delineate the fees allocated to the '016 Patent from the fees allocated to the '589 Patent, because the '589 Patent invalidated the '016 Patent." *Id.*

The Court notes that "'[P]laintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'" *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). This occurs when the plaintiff "obtain[s] an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement."[2] *Id.* at 111, 113 S. Ct. 566 (internal citations omitted). The situation at hand is much the same, however, the role of the prevailing party is reversed.

In this case, the Court found that the Defendant was the prevailing party, but only as to the '016 Patent. (*See* Doc. Nos. 308 at 5; 310 at 4.) The Court went on to deny Defendant's request for an award under section § 1927 or the Court's inherent power for fees and costs incurred with respect to the '589 Patent. *Id.* Having considered the parties submissions regarding attorney's fees and costs, the Court is not persuaded that its prior

---

jurisdiction, for in that case the dismissed party is not a 'prevailing party.'") (Doc. No. 310 at 3.)

[2] "In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 111-12. There can be only one prevailing party, but "[a] party is not required ... to prevail on all claims in order to qualify." *Shum v. Intel Corp.*, 629 F.3d 1360, 1367-68 (Fed. Cir. 2010).

holding regarding the '589 Patent was in error.[3] Therefore, Defendant is entitled to recover fees on the '016 Patent, but not the '589 Patent.

## B. FEES

Now that the Court has addressed which fees are attributable to Plaintiffs' misconduct, the Court must now determine whether the amount of fees claimed is reasonable.[4]

### 1. Rates

Determining whether an award of attorneys' fees is reasonable, the lodestar method is the fundamental starting point. *Christensen v. Stevedoring Servs. of Am*, 557 F.3d 1049, 1053 (9th Cir. 2009). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.'" *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (citation and quotations omitted). The party seeking attorneys' fees bears the burden of "submitting evidence of the hours worked," the rate charged, and that "the rate charged is in line with the prevailing market rate of the relevant community." *Carson v. Billings Police Dep't.*, 470 F.3d 889, 891 (9th Cir. 2006) (internal quotation omitted).

Defendant's fee request is based upon the some of the following rates for *Troutman Sanders LLP* counsel: $675 for *Michael F. Heafy, Charanjit Brahma, Justin M. Barnes*; $600 for *Timothy Heaton*; $470 for *Stacy Houan*; $45 for *Anup M. Shah*; $440 for *Daniel Sharpe*; $405 to $440 for *Christopher Mark Franich*; $415 to $475 for *Gerald Porter*; $385 for *Hsiao (Mark) Chun Mao*; $330 to $415 for *Lauren Ulrich Baker*; and $345 to $475 for *Sarah Holland*. (*See* Doc. No. 309.) "In establishing the reasonable hourly rate, the Court may take into account: (1) the novelty and complexity of the issues;

---

[3] There is no reason for the Court to amend its February 25, 2020 Order to reflect that Defendant is the prevailing party as to the '589 Patent.

[4] Plaintiffs argue that Defendant's requested figure is well above "reasonable." Plaintiffs request several deductions from the requested amount, insinuating that the "lodestar" figure should be the product of reasonable hours and reasonable rates.

8

(2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained." *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1170 (N.D. Cal. 2015). Though this case did not present particularly complex issues, the *Troutman Sanders* attorneys all have specialized experience in intellectual property cases, represented their client with quality, and obtained a favorable result. Much the same can be said for Defendant's *Kaufman Dolowich* attorneys. Moreover, these rates are reasonably comparable to rates the Southern District has previously approved for attorneys with similar skill and experience working at large San Diego law firms. (Doc. No. 217 at 6-8 (finding an hourly rate of $750 reasonable for opposing counsel's lead partner and noting that an hourly rate between $505 and $625.50 was found reasonable for a partner with twenty years of experience in *Deep Sky Software, Inc. v. Southwest Airlines Co*, 2015 WL 10844231, at *1-2 (S.D. Cal. Aug. 9, 2015) and an hourly rate of $775 was found reasonable for a partner in *Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, 2014 WL 6851612, at *6 (S.D. Cal. Dec. 3, 2014)). The Court finds that—though certainly on the higher end—the rates charged by Defendant's *Troutman Sanders LLP* and *Kaufman Dolowich* attorneys are reasonably in line with those charged by comparable attorneys in this district.

2. Hours

Next, the Court must determine whether the number of hours Defendant's attorneys expended on the '016 Patent litigation was reasonable. Counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). In demonstrating that their hours are reasonable, counsel "should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity, so the district court can assess the time claimed for each activity." *Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

In this case, Defendant included billing records and voluminous documentation describing the work performed by counsel.[5] (*See* Doc. Nos. 309-1 and 311.) Having reviewed the aforementioned records dealing specifically with the '016 Patent, the Court finds them sufficiently detailed to enable it to conclude the hours expended by *Troutman Sanders* and *Kaufman Dolowich*[6] were not "excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (citation omitted). Therefore, the Court finds the hours incurred to investigate and litigate the '016 Patent by *Troutman Sanders* and *Kaufman Dolowich* were reasonable. *See ROAR, LLC v. ROAR Glob. Ltd.*, 2016 WL 7115902, at *8 (C.D. Cal. Dec. 5, 2016) (spending 130-hours to obtain a default judgment was reasonable).

The same cannot be said for Defendant's *Troutman Sanders* mixed-fees entries, or the *Thomas Whitelaw* accounting summary. "Requests for attorney's fees pursuant to Section § 285 are governed by the 'but for' standard." *Cave Consulting Grp., Inc. v. Truven Health Analytics, Inc.*, 239 F. Supp. 3d 1038, 1048-1949 (N.D. Cal. 2018) (finding "the 'but for' standard [set forth in *Fox v. Vice*, 563 U.S. 826, 836 (2011)] applies" to attorney's fees under Section § 285). "Under the 'but for' standard, '[t]he court's fundamental job is to determine whether a given legal fee—say, for taking a deposition or drafting a motion—would or would not have been incurred in the absence of the sanctioned conduct. The award is the sum total of the fees that, except for the

---

[5] Defendant provided descriptions of the hours expended by *Troutman Sanders* for work performed specifically on the '016 Patent. The same can be said for the *Kaufman Dolowich* work in the prior Surf Waves litigation. (*See* Exh. F1 to Doc. No. 309.)

[6] Plaintiffs assert the court does not have authority to award fees for the *Kaufman Dolowich* work under section § 285 because the Defendant should not be considered the prevailing party in the prior Surf Waves suit. However, Plaintiffs' reference to out-of-district case *T&M Inventions, LLC v. Acuity Brands Lighting, Inc.*, bares little resemblence or support to the case at hand. *See T&M Inventions, LLC v. Acuity Brands Lighting, Inc.*, No. 14-CV-947, 2016 WL 8290851, at *3 (E.D. Wis. Sept. 21, 2016).

misbehavior, would not have accrued." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187 (2017) (citing *Fox v. Vice*, 562 U.S. 826 at 837-838).

Plaintiffs argue that rather than attempt "to recover only fees that would not have been incurred 'but for' the assertion of the '016 Patent," Defendant "attempts to invert the standard by asserting it is entitled to recover all fees unless they would not have been incurred 'but for' Plaintiffs' assertion of the '589 Patent. In doing so, Defendant admits it is attempting to recover fees for 'activities and efforts that would have been incurred whether or not the '589 Patent was ever in the case." (Doc. No. 310 at 6-7.)

Defendant responds that the "but for" test does not apply, but even if it did, its [Defendant's] "line by line allocation" identifying each item allegedly attributable to the '016 patent under the "but for" test performs the exact actions which courts admonish.[7] (*See* Doc. No. 311 at 9.) Moreover, Defendant asserts that "[t]here simply is no rational application of the law and facts in this case that could lead to the conclusion that Plaintiffs are only accountable for $215k out of the nearly $3M" that Defendant spent. *Id*. Defendant's argument is unpersuasive.

To begin with, it bears noting that the Court granted Defendant's request for fees under section § 285 as to the '016 Patent but denied the request regarding the '589 Patent. (*See* Doc. No. 310 at 4.) Despite this, Defendant still block-billed the '589 invoices together with the '016 invoices, thereby preventing the Court and opposing counsel from determining if the '589 Patent fees would have been incurred, even if the '016 Patent had never been asserted.[8] As for the 536.5-hours the *Thomas Whitelaw* firm spent producing an accounting of fees in this matter, it is abundantly clear that the report was inefficiently

---

[7] Defendant argues "the 'But For' analysis does not apply because the Court correctly ruled that this case was exceptional because the assertion of both the '016 and '589 patents, without a proper pre-suit investigation, was frivolous." (Doc. No. 311 at 9.)

[8] Quite simply, "there is no credible argument that any of these fees were incurred because Plaintiff asserted the '016 Patent." *Id*. at 10.

11

produced, and excessively overbilled.[9] Therefore, the Court finds the mixed fees and costs as well as the *Thomas Whitelaw* fees and costs to be unreasonable.

4. Conclusion—Fees

The court awards Defendant $525,093 in fees.

## C. COSTS

Defendant next requests that the Court award costs.

1. Expert Costs

Expert witness fees are only awardable here if there is "fraud on the court or an abuse of the judicial process." *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 379 (Fed. Cir. 1994); *see also Kilopass Tech., Inc.*, 82 F. Supp. 3d at 1174-75 (continuing to cite *Amsted Indus., Inc.* post-*Octane* for the proposition that "[i]n the absence of fraud or abuse, a court may not award expert fees above the 28 U.S.C. § 1821 statutory cap"); *cf. Worldwide Home Prods. v. Bed, Bath & Beyond, Inc.*, 2015 WL 1573325, *5, 2015 U.S. Dist. LEXIS 46569* 11 (S.D.N.Y. Apr. 9, 2015) (citing *Amsted Indus., Inc.* and stating that expert fees are not authorized under section § 285). This limitation on the Court's ability to make prevailing parties whole in "regular" exception cases flows from the Supreme Court's decision in *West Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83 (1991). There, the Court held that 42 U.S.C. section 1988, which provided that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs," did not extend to expert fees beyond the paltry allowance of 28 U.S.C. section § 1821(b). *Id.* at 85, 111 S. Ct. 1138 n.1. While Congress moved quickly to fill that gap in 42 U.S.C. section § 1988, it did not do so for 35 U.S.C. section § 285. *Amsted*, 23 F.3d at 376; *see also* McDonald &

---

[9] "By way of comparison, PSD's prior counsel, *Troutman Sanders*, claims to have billed approximately $197,000 for the entirety of the IPR, including the handling of experts and an evidentiary hearing before the PTAB, and $115,000 to handle an entire appeal to the Federal Circuit.) (Doc. No. 310 at 16.)

Doscotch, *Why Aren't Expert Fees Recoverable In Patent Cases? Correcting an Anomaly in the Patent Fee Statutes*, 84 J. Pat. & Trademark Off. Soc'y 255 (2002) (proposing a legislative fix). A statutory amendment could allow the courts to further deter inappropriate patent litigation without micro-managing cases, but there has been none.

Of course, the Court may award expert witness fees as a sanction under the Court's inherent powers. *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008). But the circumstances outlined in *Amsted* must be present to award such sanctions. To do so otherwise would fail to honor the perhaps unintended distinctions in the United States Code identified in *West Virginia University Hospitals*. "Accordingly, not every case that qualifies as exceptional under § 285 will also qualify for sanctions under the court's inherent power." *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921 (Fed. Cir. 2012). And while the Court held that this case was exceptional, it did not conclude that it was "*Amsted* exceptional." *See Amsted*, 23 F.3d at 378 (noting that a court may invoke its inherent powers if "fraud has been practiced upon it, or that the very temple of justice has been defiled") (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)).

Accordingly, the Court does not award expert fees in this case.

2. Other Costs

Here, Defendant seeks $31,140 in costs *Troutman Sanders* incurred prosecuting the '016 Patent action and provides an itemized list explaining how those costs were incurred. Having reviewed the list, the Court finds that all the costs submitted were reasonable and awards Defendant the requested amount.

3. Conclusion

The Court awards costs of $31,140.

**D. AMOUNTS NOT TIMELY REQUESTED**

The Court ordered that "Defendant shall file all they deem necessary to support their fees no later than March 30, 2020." (Doc. No. 308 at 14.)

Defendant filed its motion for attorney's fees by the deadline. (Doc. No. 309.) Thereafter, Defendant filed additional supplemental briefing requesting an additional $67,672[10] in fees on May 15, 2020. (See Doc. No. 313.) Plaintiffs object to the additional amount of fees as not complying with the Court's Order. Specifically, Plaintiffs argue that the Defendant was required to file "all they deem necessary to support their fees" by the Court's specified deadline of May 15, 2020.

The Court denies the additional fees sought in the supplemental briefing for two reasons. First, Defendant's late submission failed to comply with the Court's Order. Second, the amount sought is clearly unreasonable for the weeks of work that occurred not only after the Defendant essentially won the case, but after Defendant had already briefed the exceptional case issue. While there is no indication that the Defendant incurred excessive fees on the hope of recovering fees, the discipline imposed by paying out of pocket disappears once a party knows that the other party is on the hook. That may be what happened here. But whatever the reason for the large post-victory bill, the Court declines to award more.

## IV. CONCLUSION

For the foregoing reasons, the Court awards Defendant $525,093 in attorney fees and $31,140 in costs. The total award is thus $556,233.

| ACTIVITY | **PSD** *Amount Requested* | *Amount Reduced by* | **COURT** *AWARDS* |
|---|---|---|---|
| *Fees* and *costs* directed only to '016 activities, allocated at 100% | $525,762<br><br>*Fees*: $494,622 + *Costs*: $31,140 = $525,762 | *$0.00* | $525,762 |
| Mixed *fees* and *costs* directed to '016 and '589 activities, before June 2017 and allocated at 67% | $1,091,081 | *$1,091,081* | $0.00 |

---

[10] Supplemental fees totaling $67,672 consisted of: $59,100 for *Thomas Whitelaw*, together with $8,572 for *Troutman Sanders*. (Doc. No. 313.)

| | | | |
|---|---|---|---|
| Mixed *fees* directed to '016 and '589 activities, after June 2017 and allocated at 67% | $168,106 | *$168,106* | $0.00 |
| *Troutman Sanders fees* and *costs* to respond to the Court Order | $18,495 | *$18,495* | $0.00 |
| Expert *costs* allocated | $12,969 | *$12,969* | $0.00 |
| *Thomas Whitelaw fees* and *costs* | $224,355 | *$224,355* | $0.00 |
| *Kaufman Dolowich fees* for prior Surf Waves litigation | $30,471 | *$0.00* | $30,471 |
| *Thomas Whitelaw* supplemental *fees* and *costs* | $59,100 | *$59,100* | $0.00 |
| *Troutman Sanders* supplemental *fees* and *costs* | $8,572 | *$8,572* | $0.00 |
| **TOTAL** | $2,138,911 | *$1,582,678* | **$556,233** |

**IT IS SO ORDERED.**

Dated: September 21, 2020

HON. ROGER T. BENITEZ
United States District Judge